UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ROBERT R. WEBSTER, JR.,
Plaintiff,

v. 6:26-cv-1236 (AJB/CBF)

RICK STEWART, *et al.*,
Defendants.

---

APPEARANCES:

ROBERT R. WEBSTER, JR.
*Plaintiff*, *pro se*
5370 State Route 233
Travel Inn, Room 10
Rome, NY 13440

**CARLA B. FREEDMAN**, United States Magistrate Judge

**REPORT-RECOMMENDATION AND ORDER**

## I. INTRODUCTION

The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Robert R. Webster, Jr. ("Plaintiff"). Dkt. No. 1. Plaintiff has been granted permission to proceed *in forma pauperis*. Dkt. No. 6. For the reasons set forth below, the undersigned recommends Plaintiff's complaint be dismissed.

## II. BACKGROUND

Plaintiff commenced this action using a form complaint for actions pursuant to 42 U.S.C. § 1983. *See generally*, Dkt. No. 1. The complaint lists three Defendants: (1) "Rick Stewart,

Mayor of Sylvan Beach," (2) "Oneida County 911," and (3) "Oneida County Sherrif's Department." *Id*. at 1-2.[1] The "facts" section of the complaint reads:

> A. Called off 911 rescue of Robert R. Webster, Jr. twice once on 3/17/2012 and 3/8/2012
> B. Neglect to get an ambulance to pick me up or send me police for gang assault at Sunset Grill in Sylvan Beach, NY 13157.
> C. Conspiracy to restrict my rights to reports, bodycams, to my posted property violations, and refusal to give proper badge #'s and actual true names. False afying reports from true 911 calls.

*Id*. at 2.

The complaint lists three causes of action: (1) "To prove state police had no right to call off my rescue. To prove neglect on the part of the Fire Chief Rick Stewart who is also the mayor of Sylvan Beach. I will prove mallace due to close proximity of rescue;" (2) "Prove 911 is neglectful, working with sherrif's not independently. Prove 911 refused to answer my request for U.S. Marshalls 5 times on 911 from 12/10/2021 - 1/24/2022 before fire;" (3) Third, "Kidnapping by Oneida County Sherrifs to Mid Hudson Psychiatric Prison 3/1/2016 - 10/14/2016. Kidnapping for a 941 call on 3/26/2022 – 3/7/2022. Kidnapping for a 941 on 4/17/2026 - 4/23/2026. Badge # 73595 Srgt Keith Wells." *Id*. at 3. Plaintiff seeks monetary relief. *Id*.

The Court takes judicial notice of another civil action Plaintiff commenced in this District against "Richard Stewart, Mayor of Sylvan Beach" and "Oneida County Sherrif's Department" asserting claims pursuant to 42 U.S.C. § 1983. *Webster v. Stewart* (hereinafter, "*Webster I*"), No. 6:21-cv-1141 (DNH/ATB) (N.D.N.Y. filed Oct. 10, 2021). In *Webster I*, Plaintiff also alleged, *inter alia*, that (1) Richard Stewart, as Chief of the Sylvan Beach Fire Department and Mayor of Sylvan Beach, "called off rescue on a 911 gang attack on 3/17/2012;" (2) the "Sherrif and

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

officers of the dept." were "withholding evidence" of Plaintiff's "reports and body cam's;" and (3) the defendants were engaging in a "neglect of duty" in violation of his civil rights. *Webster I*, Dkt. No. 1 at 1-3.

*Webster I* was referred to United States Magistrate Judge Andrew T. Baxter, who reviewed the complaint pursuant to 28 U.S.C. § 1915. On October 25, 2021, Magistrate Judge Baxter recommended dismissal of the complaint without leave to amend. *Webster I*, Dkt. No. 4 ("R&R"). As set forth therein, the complaint was subject to dismissal for a host of reasons including, *inter alia*, the pleading failed to comply with Rule 8 of the Federal Rules of Civil Procedure, "Oneida County's Sheriff's Department" was an improper party, the allegations failed to state a claim for relief under Section 1983, and any Section 1983 claims were likely barred by the applicable stature of limitations. *See id*. at 5-15. On February 7, 2021, United States District Judge David N. Hurd accepted and adopted the R&R in all respects. *Webster I*, Dkt. No. 12. Judgment was entered accordingly in favor of the defendants and Plaintiff's federal claims were dismissed with prejudice as frivolous and for failure to state a claim for relief and Plaintiff's state law claims were dismissed without prejudice and without leave to amend for lack of subject matter jurisdiction. *See Webster I*, Dkt. No. 13.

## III. STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when

the Court lacks subject matter jurisdiction. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555 (citation omitted).

In determining whether a complaint states a claim on which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## IV. ANALYSIS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

### A. Deficient Pleading

As a threshold issue, Plaintiff's complaint fails to meet the pleading requirements of the Federal Rules of Civil Procedure. *See Lewis v. New York State Bd. of Elections*, No. 8:24-CV-00849 (GTS/CFH), 2024 WL 4910561, at *4 (N.D.N.Y. Sept. 30, 2024) ("The [Second Circuit]'s 'special solicitude' for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure."), *report-recommendation adopted*, 2024 WL 4689022 (N.D.N.Y. Nov. 6, 2024). A complaint that fails to comply with the Federal Rules' pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352,

355 (N.D.N.Y. 1996); *see also, e.g.*, *Gosier v. Collins*, No. 6:23-CV-1485 (DNH/TWD), 2024 WL 1016392, at *2 (N.D.N.Y. Mar. 8, 2024), *report-recommendation adopted*, 2024 WL 1307035 (N.D.N.Y. Mar. 27, 2024).

First, Rule 8 of the Federal Rules of Civil Procedure requires a pleading contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "The purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'" *Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2 (N.D.N.Y. Nov. 21, 2024) (quoting Fed. R. Civ. P. 8(d)). In other words, allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Next, as relevant here, Rule 10 of the Federal Rules of Civil Procedure provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances . . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10. Rule 10 serves "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores*, 189 F.R.D. at 55 (internal quotations and citation omitted).

Here, Plaintiff's complaint does not provide a "short and plain statement of the claim showing that the pleader is entitled to relief" and lacks numbered paragraphs, limited as far as practicable to a single set of circumstances, such that the Court can discern the factual and legal basis of the allegations. Fed. R. Civ. P. 8(a), 10. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. Fed. R. Civ. P. 8(a). Accordingly, the undersigned recommends the complaint be dismissed. *See, e.g.*, *Levesque v. People of the United States*, No. 8:25-CV-1259 (MAD/PJE), 2026 WL 1660470, at *3 (N.D.N.Y. June 8, 2026) (recommending dismissal of the plaintiff's complaint which failed to "meet the pleading requirements of Rules 8 and 10" and amounted to "pages of indecipherable assertions that provide no factual or legal context, detail, support, or explanation of" the plaintiff's claims), *report and recommendation adopted*, 2026 WL 2227973 (N.D.N.Y. Aug. 3, 2026); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995).

**B. Improper Parties**

Plaintiff names "Oneida County 911" and "Oneida County Sherrif's Department" as Defendants. Dkt. No. 1 at 1-2. However, "[i]t is well-settled that municipal departments and offices which have no separate legal identity and cannot sue or be sued are not 'persons' under Section 1983." *Hill v. New York*, No. 9:18-CV-0005 (MAD/CFH), 2018 WL 10246976, at *5 (N.D.N.Y. Mar. 1, 2018) (collecting cases); *see*, *e.g.*, *Coleman v. Syracuse Police Dep't*, No. 5:16-cv-00836 (LEK/TWD), 2016 WL 4411339, at *5 (N.D.N.Y. July 22, 2016) (explaining that the Syracuse Police Department and its "911 Administrative Center" were not independent suable entities but rather administrative arms of a municipality), *report and recommendation adopted*, 2016 WL 4273215 (N.D.N.Y. Aug. 12, 2016); *see also Webster I*, Dkt. No. 4 at 5 ("[T]he Oneida County Sherrif's Department 'cannot sue or be sued because it does not exist

separate and apart from the municipality and does not have its own legal identify.'") (quoting *Leland v. Moran*, 100 F. Supp. 2d 140 (N.D.N.Y. 2000)). Accordingly, "Oneida County Sheriff's Department" and "Oneida County 911" are not proper parties to this action, therefore, Plaintiff's claims are also subject to dismissal on this basis.[2]

**C. Res Judicata**

Plaintiff's federal claims in *Webster I* were *sua sponte* dismissed with prejudice as frivolous and for failure to state a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B). *Webster I*, Dkt. No. 14.

"The doctrine of res judicata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir.2000) (internal quotation marks and citation omitted). Res judicata precludes a party from asserting a claim in subsequent litigation if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been raised in the prior action." *Id.*

"A district court may dismiss an action *sua sponte* on res judicata grounds provided it has before it all relevant data and legal records or is in the same district where the original action was

---

[2] Insofar as Plaintiff's complaint can be construed as asserting claims against Oneida County, any such claim should be dismissed for failure to state a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "'[T]o hold a municipality liable under § 1983 . . . a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Adams v. City of Syracuse*, 5:21-CV-0650, 2025 WL 2772081, at *28 (N.D.N.Y. Sept. 29, 2025) (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020)) (internal brackets omitted). Here, Plaintiff's complaint is entirely devoid of any allegations regarding the existence of a municipal policy or custom causing the alleged deprivation of his constitutional rights.

filed." *Vance v. ACCO Brands, Corp.*, No. 6:17-CV-0957 (GTS/TWD), 2017 WL 8751936, at *5 (N.D.N.Y. Nov. 1, 2017) (citing *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993)) (additional citations omitted), *report and recommendation adopted*, 2018 WL 1631312 (N.D.N.Y. Apr. 2, 2018), *aff'd*, No. 18-1258, 2018 WL 5603578 (2d Cir. Oct. 3, 2018).

From what the Court can discern, all three factors of *res judicata* appear to be implicated in the case at bar. *See generally*, *Webster I*. "When an *in forma pauperis* action is res judicata, it fails to state a claim upon which relief may be granted and thus [28 U.S.C.] § 1915(e)(2)(B) compels its dismissal." *Orr v. U.S. Air Force*, No. 6:15-CV-1132 (GTS/TWD), 2015 WL 6671559, at *5 (N.D.N.Y. Oct. 30, 2015) (internal quotations and citation omitted) (*sua sponte* dismissing plaintiff's complaint for failure to state a claim as barred under the doctrine of res judicata).

**D. Leave to Amend**

The Court advises Plaintiff that should he be afforded leave to amend, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended pleading should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into any amended pleading by reference. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (internal quotation marks omitted). Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the Defendant(s) and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant(s) which Plaintiff has a legal right to pursue and over

which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: October 8, 2026
Syracuse, New York

Carla B. Freedman
U.S. Magistrate Judge

[3] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2024 WL 4910561
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,
v.
NEW YORK STATE BOARD OF ELECTIONS, Defendant.
Scott Phillip Lewis, Plaintiff,
v.
New York State Board of Elections, Defendant.

No. 8:24-CV-00849 (GTS/CFH),
No. 8:24-CV-01036 (GTS/CFH)
|
Signed September 30, 2024

**Attorneys and Law Firms**

Scott Phillip Lewis, 1936 Saranac Avenue, #3, PMB 411, Lake Placid, New York 12946, Plaintiff pro se.

## REPORT-RECOMMENDATION AND ORDER

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

### I. In Forma Pauperis

***1** Plaintiff pro se Scott Lewis ("plaintiff") [1] purported to commence this action on July 4, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2]

1 The undersigned notes that plaintiff is a particularly litigious individual who has filed numerous other actions that are presently pending in this District, as well as others. See, e.g., Lewis v. Town of Elizabethtown, 8:24-CV-00535 (AMN/DJS) (N.D.N.Y. filed Apr. 18, 2024), Dkt. No. 9 (dismissing complaint with leave to amend); Lewis v. Adirondack Med. Ctr., 1:24-CV-00376 (BKS/TWD) (N.D.N.Y. filed Mar. 19, 2024), Dkt. No. 4 (Report-Recommendation recommending dismissal pending review); Lewis v. Paymaster Payroll Sys., Inc., 8:24-CV-00121 (MAD/DJS) (N.D.N.Y. filed Jan. 25, 2024), Dkt. No. 9 (dismissing complaint and entering judgment in favor of the defendants); Lewis v. Walsh, 8:24-CV-00098 (GTS/CFH) (N.D.N.Y. filed Jan. 21, 2024), Dkt. No. 5 (Report-Recommendation recommending dismissal pending review); Lewis v. Essex Cnty., 8:24-CV-00100 (MAD/CFH) (N.D.N.Y. filed Jan. 19, 2024), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. Despos, LLC, 8:24-CV-00079 (AMN/CFH) (N.D.N.Y. filed Jan. 17, 2024), Dkt. No. 12 (dismissing complaint without leave to amend); Lewis v. R. L. Vallee, Inc., 8:24-CV-00069 (AMN/DJS) (N.D.N.Y. filed Jan. 16, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Affiliated Enter. Sol., LLC, 8:24-CV-00061 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Redline Hockey, LLC, 8:24-CV-00068 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Citizens United, Inc., 8:24-CV-00029 (TJM/DJS) (N.D.N.Y. filed Jan. 8, 2024), Dkt. No. 25 (dismissing amended complaint); Lewis v. Adirondack Med. Ctr., 8:24-CV-00027 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Onondaga Cnty., 8:24-CV-00013 (GTS/DJS) (N.D.N.Y. filed Jan. 3, 2024), Dkt. No. 21 (dismissing complaint with leave to amend); Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 15 (partially dismissing complaint, permitting one claim to proceed); Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. State of Texas, 1:24-CV-00461 (ADA) (W.D. Tex. filed Apr. 25, 2024), Dkt. No. 3 (dismissing all claims with prejudice as malicious); Lewis v. Williamson Cnty., 1:24-CV-03092 (LTS) (S.D.N.Y. filed Apr. 20, 2024); Lewis v. Williamson Cnty., 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024), Dkt. No. 3 (dismissing all claims with prejudice as malicious); Lewis v. Williamson Cnty., 1:21-CV-00074 (ADA/

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

SH) (W.D. Tex. filed Jan. 25, 2021), Dkt. No. 152 (granting summary judgment in favor of the defendants and dismissing the plaintiff's claims with prejudice).

2 Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

## II. Consolidation

***2** "Rule 42(a) of the Federal Rules of Civil Procedure provides for the consolidation of actions pending before the court which involve 'a common question of law or fact.' " Boyde v. Uzunoff, No. 9:21-CV-0741 (TJM/ATB), 2021 WL 3185472, at *1 (N.D.N.Y. July 28, 2021) (quoting FED. R. CIV. P. 42(a)(2)). "As the Second Circuit has recognized, '[t]he trial court has broad discretion to determine whether consolidation is appropriate,' and may consolidate actions sua sponte." Id. (quoting Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990), and citing Devlin v. Transp. Commc'ns Intern. Union, 175 F.3d 121, 130 (2d Cir. 1999)); see Innovation Ventures v. Ultimate One Distrib. Corp., No. 12-CV-5354 (KAM/RLM), 2014 WL 824304, at *2 (E.D.N.Y. Mar. 3, 2014) ("A court may consolidate related cases sua sponte under Rule 42(a).") (citation omitted). "The Court must consider in each case the possible risks and benefits of consolidation." Boyde, 2021 WL 3185472, at *1; see Jacobs v. Castillo, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) ("Consolidation ... further[s] the goal of 'judicial economy' because discovery in each case is likely to be identical, motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law."). "The paramount concern is whether savings of expense and gains of efficiency can be accomplished without sacrifice of justice." Wolm v. Ahern, No. 14-CV-3978 (JFB/GRB), 2014 WL 5171763, at *1 (E.D.N.Y. Oct. 8, 2014) (citing Johnson, 899 F.2d at 1285).

Here, plaintiff commenced the instant case, 8:24-CV-00849, Lewis v. New York State Board of Elections (hereinafter "Lewis I"), on July 4, 2024. See Compl. (hereinafter "Compl. I"). Nearly seven weeks later, on August 21, 2024, plaintiff commenced a second action, 8:24-CV-01036, Lewis v. New York State Board of Elections (hereinafter "Lewis II"), with the filing of a separate complaint (hereinafter "Compl. II"). The undersigned has reviewed both complaints in each action, and has determined "that common questions of law and fact exist in these cases." Boyde, 2021 WL 3185472, at *1. "Plaintiff appears to name the same defendant[, the New York State Board of Elections,] and to the extent it can be determined, the cases arise out of the same facts and circumstances and raise the same claims in [both] of these ... actions." Lamothe v. Brown, No. 5:22-CV-161 (TJM/CFH), 2023 WL 316013, at *1 (D. Vt. Jan. 19, 2023), report and recommendation adopted, 2023 WL 3301220 (D. Vt. May 8, 2023). Notably, both of the complaints filed by plaintiff challenge the constitutionality of New York State's election laws,[3] and his claims derive from his "run to represent New York State's 21st Congressional District" in the upcoming November 2024 general election. Compl. I at 3; Compl. II at 5.[4] Thus, "[c]onsolidating these actions will avoid 'unnecessary repetition and confusion.' " Royal v. Shulkin, No. 1:17-CV-1251 (GTS/CFH), 2018 WL 1229701, at *1 (N.D.N.Y. Jan. 5, 2018) (quoting Miller v. U.S. Postal Serv., 729 F.2d 1033, 1036 (5th Cir. 1984)), report and recommendation adopted, 2018 WL 1229822 (N.D.N.Y. Mar. 8, 2018); see Morales v. Pallito, No. 1:13-CV-141, 2013 WL 3148411, at *1 (D. Vt. June 19, 2013) ("[The plaintiff] is bringing the same claim against the same [d]efendant in both cases. [The defendant] has not yet been served and, consequently, there has been no responsive pleading and no discovery. The Court thus finds that the interests of justice will be best served by consolidation, as carrying these two actions forward as one enhances judicial economy, with no prejudice to any party.").

3 In Lewis I, plaintiff challenges the constitutionality of sections 6-132, 6-134, 6-136, 6-140, 6-142, and 6-158 of the New York Election Law. See generally Compl. I. In Lewis II, plaintiff challenges the constitutionality of section 16-102 of the New York Election Law. See generally Compl. II.

4 Citations are to the pagination generated by CM/ECF, located in the header of each page.

***3** Accordingly, it is recommended that these two cases be consolidated, with Lewis I as the lead case, and Lewis II as a member case.

## III. Initial Review

### A. Legal Standard

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."[5] 28 U.S.C. § 1915(e)(2)(B).[6] "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

5 " 'A case is malicious if it was filed with the intention or desire to harm another.' " Tafari v. Hues, 473 F.3d 440, 442 (2d Cir. 2007) (quoting Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005)). A case "is frivolous when it 'lacks an arguable basis either in law or in fact' " and "advances 'inarguable legal conclusion[s]' or 'fanciful factual allegation[s].' " Id. (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)).

6 These requirements apply to non-prisoner pro se litigants. See N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law ....

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).[7] Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

7 The undersigned notes, however, that the Second Circuit has "occasionally endorsed some limited forms of this practice, and ha[s] suggested that it may be appropriate 'to charge a pro se litigant with knowledge of, and therefore withdraw special status in relation to, particular requirements [of the legal system] with which he is familiar as a result of his extensive prior experience in the courts.' " Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (quoting Sledge v. Kooi, 564 F.3d 105, 109 (2d Cir. 2009), and citing Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir. 1994) (denying a pro se plaintiff an opportunity to replead on the ground that he was "an extremely litigious inmate who [wa]s quite familiar with the legal system and with pleading requirements")); see Shomo v. Furco, No. 18-CV-8523 (VB), 2020 WL 4194941, at *4

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

(S.D.N.Y. July 20, 2020) (determining that "the deference usually granted to pro se plaintiffs need not be expansively drawn in this case," given that the pro se plaintiff previously filed "at least ten lawsuits and appeals [and] was familiar with court procedure") (citations omitted).

***4** "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)).[8] Notably, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "(1) a short and plain statement of the grounds for the court's jurisdiction ... and (3) a demand for the relief sought ...." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

8 All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

## B. Plaintiff's Complaint

Plaintiff offers us a brief history lesson on the two-party political system in the United States. See Compl. I at 1-3. As relevant here, plaintiff claims that "[i]n New York State, Republican and Democrat lawmakers alike have created unconstitutional additional requirements in attempts to subvert an individual's Constitution[al] right to candidacy, such as [p]laintiff's, by drafting and passing laws with undue burdens, with the goal of preventing the emergence of any new or independent political party." Id. at 2, ¶4. Plaintiff complains that George Washington "warned of such a scenario," quoting Washington's September 17, 1796, farewell address. Id. at 2, ¶5. Plaintiff then reiterates that

> [election] laws in New York State ... [are] unconstitutional [and] continue to subvert the power of the people [because i]ndividuals who are not aligned with any political party and seeking access to the ballot, such as [p]laintiff, are subjected to a barrage of unconstitutional additional requirements which consequently create undue burdens and unfair circumstances to the would-be independent candidate.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Id. at 2, ¶6.

***5** Plaintiff asserts that he is "an individual over the age of twenty-five, a citizen of the United States for over seven years and a resident of New York State, thus qualified to be elected to Congress pursuant to the United States Constitution." Compl. I at 3, ¶8. Plaintiff "announced a run to represent New York State's 21st Congressional District on or around March 13, 2024." Id. at 3, ¶12. "Plaintiff began circulating an independent nominating petition on April 16, 2024."[9], [10] Id. at 3, ¶13. "The deadline to file three thousand five hundred (3,500) signatures for an independent nominating petition was May 28, 2024."[11] Id. at 4, ¶14. "Plaintiff filed approximately three thousand eight hundred twenty eight (3,828) signatures on May 28, 2024." Id. at 4, ¶15. Two individuals, including Margaret Bartley, the chair of the Essex County Democratic Committee, "filed general objections and specifications challenging the petition on various grounds." Compl. II at 56-59. After conducting a prima facie examination of the petition, the New York State Board of Elections "invalidated [p]laintiff's independent nominating petition on or around June 13, 2024, claiming [p]laintiff only submitted three thousand four hundred ninety three (3,493) signatures, leaving [p]laintiff seven (7) signatures short of the unconstitutional requirement." Compl. I at 4, ¶16; see Compl. II at 2, ¶10, 59.

9 Plaintiff claims that "[t]hose running for a political party [were] able to circulate petitions from February 27, 2024 until April 4, 2024," but "[i]ndependent petitions were circulated between April 16, 2024 and May 28, 2024." Compl. I at 5, ¶¶24-25.

10 Plaintiff alleges that he "was unlawfully evicted on or around May 10, 2024." Compl. I at 5, ¶30. Plaintiff does not specify what he means by "unlawfully evicted," or otherwise explain how this relates to the instant action. Id.

11 Plaintiff contends that "petitions for political parties have a filing deadline of Thursday, April 4, 2024 while independent nominating petitions have a deadline of Tuesday, May 28, 2024." Compl. I at 7, ¶37.

On June 13, 2024, "[p]laintiff filed a lawsuit in the Albany County Supreme Court challenging [the New York State Board of Elections'] determination." Compl. I at 4, ¶17; see Compl. II at 2, ¶11. Specifically, plaintiff "filed a proposed order to show cause and petition commencing [a special] proceeding pursuant to Election Law § 6-102 seeking to validate his petition." Compl. II at 59. After plaintiff filed multiple amended petitions, "Honorable Christina L. Ryba signed an order to show cause on June 17, 2024 permitting service by overnight mailing on or before June 19, 2024." Id. at 2, ¶12. "Plaintiff served all parties via overnight mailing by June 19, 2024." Id. at 3, ¶13. However, Ms. Bartley and Paula Collins, plaintiff's political opponent in the upcoming election, "had refused 'actual delivery' of the overnight mailing." Id. at 3, ¶15. "Oral arguments were heard on June 28, 2024[,]" when plaintiff explained "that service was completed timely and thus, the special proceeding was initiated timely."[12] Id. at 3, ¶¶15-16. However, Ms. Bartley argued that the proceeding should be dismissed as untimely because, under N.Y. Elec. Law § 16-102, plaintiff needed to serve all parties by June 18, 2024, and he failed to do so. See id. at 58-61. Following oral arguments, on July 3, 2024, Hon. Ryba dismissed the proceeding as untimely. See Compl. II. at 58-62.

12 However, in Lewis I, plaintiff claims the hearing took place "on or around June 11, 2024." Compl. I at 6, ¶32.

Plaintiff now seeks to "challeng[e] the constitutionality of New York State's election laws[,]" including (1) "§ 6-136 and § 6-142, which dictate the number of signatures required for nominating petitions"; (2) "§ 6-158 which mandates the deadlines imposed for filing nominating petitions"; (3) "§ 6-134 which outlines the rules for nominating petitions"; (4) "§ 6-132 and 6-140, laws governing the required form of nominating petitions"; and (5) "16-102 which dictate[s] the institution of a special proceeding." Compl. I at 1 (citing N.Y. ELEC. LAW §§ 6-132, 6-134, 6-136, 6-140, 6-142, 6-158); Compl. II at 1 (citing N.Y. ELEC. LAW § 16-102). Plaintiff alleges that these laws violate "the First and Fourteenth Amendment of the United States Constitution" and he "requests this court to issue declaratory and injunctive relief preventing the New York State Board of Elections ... from enforcing restrictive and unconstitutional laws and ordering [p]laintiff's name on the ballot for the 2024 general election." Compl. I at 3, ¶7; see Compl. II at 1.

## C. Analysis

***6** Liberally construing plaintiff's complaint, he brings claims under 42 U.S.C. § 1983 against the New York State Board of Elections, [13] alleging violations of his First and Fourteenth Amendment rights. [14] See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' ") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); cf. Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) ("The solicitude afforded to pro se litigants ... most often consists of liberal construction of pleadings, ... [however,] the degree of solicitude may be lessened where the particular pro se litigant is experienced in litigation and familiar with the procedural setting presented.").

13 "Under New York law, the [New York State Board of Elections] is responsible for, the execution and enforcement of ... statutes governing campaigns, elections and related procedures." Schulz v. Williams, 44 F.3d 48, 61 n.13 (2d Cir. 1994) (citing N.Y. ELEC. LAW § 3-104).

14 Although plaintiff refers to various individuals throughout Compl. I and Compl. II, including Ms. Bartley and Ms. Collins, he does not appear to pursue any claims against them in these actions, as he has made clear that he is solely "challenging the constitutionality of New York State's election laws." Compl. I at 1; Compl. II at 1. Moreover, as indicated previously, plaintiff appears to be an experienced litigator. See supra note 1, 7. Earlier this year, the undersigned reviewed a separate complaint filed by plaintiff in a separate action, and added parties that were mentioned in the complaint but not specifically identified in the "parties" section, in efforts to liberally construe plaintiff's submissions and interpret them to raise the strongest arguments that they suggest. See Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 10. Plaintiff was extremely unappreciative of this, as he "explicitly object[ed] to the addition of parties," claimed that the undersigned's actions were "improper," and argued that he correctly pleaded the proper parties in the "parties" section of his complaint. Id., Dkt. No. 13 at 1-2. Thus, because the only party identified in the "parties" section of Compl. I and II is the New York State Board of Elections, and given plaintiff's litigation history, it appears that he does not intend to pursue claims against any other parties. See generally Compl. I, Compl. II. In any event, plaintiff's claims regarding Ms. Bartley and Ms. Collins "amount to nothing more than a rant more fitting of an editorial than a legal pleading." Dillon v. Bush, No. 3:05-CV-188 (LAC/MD), 2005 WL 8163072, at *5 (N.D. Fla. Aug. 12, 2005).

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Thus, "[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Kisembo v. N.Y.S. Off. of Child. & Fam. Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)); see Garcia v. Paylock, No. 13-CV-2868 (KAM), 2014 WL 298593, at *3 (E.D.N.Y. Jan. 28, 2014) ("Plaintiff's equal protection claims also may not be brought directly under the Fourteenth Amendment because the State has not waived its immunity or had that immunity abrogated pursuant to that constitutional amendment.") (citation omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)); see Torres v. Off. of Adult Prob., No. 3:22-CV-00883 (SALM), 2023 WL 3259781, at *4 (D. Conn. May 4, 2023) (explaining that, although the plaintiff may bring a claim for injunctive relief against individual state officials, the plaintiff may not bring such a claim against the state itself or its agencies) (citing Off. of Consumer Couns. v. S. New Eng. Tel. Co., 502 F. Supp. 2d 277, 291 (D. Conn. 2007)).

***7** " '[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.' " Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)); see Marino v. City Univ. of New York, 18 F. Supp. 3d 320,

329 (E.D.N.Y. 2014) (explaining that sovereign immunity bars "direct constitutional claim[s] brought directly against a state entity") (citing Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 30-32 (2d Cir. 1991)); see also Rubin v. N.Y. State Dep't of Motor Vehicles, No. 10-CV-4119 (NGG), 2010 WL 3842011, at *1 (E.D.N.Y. Sept. 28, 2010) ("The Eleventh Amendment bars suits against states, their agencies whether the [p]laintiff seeks relief at law or in equity, absent the state's consent to suit or an express or statutory waiver of immunity.") (citing Pennhurst State School & Hosp., 465 U.S. at 99-102). "[T]he Board of Elections is a state agency for the purposes of the Eleventh Amendment[.]" Credico v. N.Y. State Bd. of Elections, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) (citing McMillan v. N.Y. State Bd. of Elections, No. 10-CV-2502 (JG/VVP), 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010), aff'd, 449 F. App'x 79 (2d Cir. 2011) (summary order)); see Murawski, 285 F. Supp. 3d at 696 (collecting cases); see also Tiraco v. N.Y. State Bd. of Elections, 963 F. Supp. 2d 184, 191 n.7 (E.D.N.Y. 2013) ("It is undisputed that the State Board [of Elections], a New York state executive agency, is an 'arm of the state' entitled to sovereign immunity.") (citations omitted). Specifically, "common sense and the rationale of the [E]leventh [A]mendment require that sovereign immunity attach" to the New York State Board of Elections. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 50 (1994).

"There are three limited exceptions to state sovereign immunity." Tiraco, 963 F. Supp. 2d at 191. "First, a state may waive its sovereign immunity by consenting to suit in federal court." Id. at 191-92 (citing Iwachiw v. N.Y.C. Bd. of Elections, 217 F. Supp. 2d 374, 379 (E.D.N.Y. 2002), aff'd, 126 F. App'x 27 (2d Cir. 2005) (summary order)) (additional citation omitted). "Second, Congress may abrogate state sovereign immunity by acting pursuant to a grant of constitutional authority." Leibovitz v. Barry, No. 15-CV-1722 (KAM), 2016 WL 5107064, at *5 (E.D.N.Y. Sept. 20, 2016) (citing Kimel v. Fl. Bd. of Regents, 528 U.S. 62, 80 (2000)). "Third, under the Ex parte Young doctrine, sovereign immunity does not preclude a plaintiff from seeking prospective injunctive relief or declaratory relief against a state official acting in his or her official capacity for ongoing violations of federal law." Tiraco, 963 F. Supp. 2d at 192 (citing State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007)); see Anghel v. N.Y. State Dep't of Health, 947 F. Supp. 2d 284, 298 (E.D.N.Y. 2013) ("[T]he doctrine of Ex Parte Young, ... 'allows a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law.' ") (quoting CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002)), aff'd, 589 F. App'x 28 (2d Cir. 2015) (summary order).

However, none of these exceptions apply here. First, New York has not expressly waived its sovereign immunity with respect to the claims asserted in plaintiff's complaints. See Edelman v. Jordan, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.' ") (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)). "It is well-established that New York has not consented to § 1983 lawsuits in federal court[.]" Mamot v. Bd. of Regents, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) (citation omitted); see Iwachiw, 217 F. Supp. 2d at 379-80 ("New York State has not waived its Eleventh Amendment [immunity] in claims involving write-in candidates in United States Senatorial Primaries[.]"); see also Dekom v. New York, No. 12-CV-1318 (JS/ARL), 2013 WL 3095010, at *10 (E.D.N.Y. June 18, 2013) (dismissing § 1983 claims against the New York State Board of Elections on Eleventh Amendment immunity grounds), aff'd, 583 F. App'x 15 (2d Cir. 2014) (summary order).

***8** Second, Congress has not "abrogated New York's sovereign immunity from suit by acting pursuant to a grant of constitutional authority." Tiraco, 963 F. Supp. 2d at 192. Indeed, 42 U.S.C. § 1983 does not override New York's sovereign immunity. See Mayo v. Doe, 480 F. Supp. 3d 395, 402 (D. Conn. 2020) ("Section 1983 does not abrogate state sovereign immunity") (citing Quern v. Jordan, 440 U.S. 332, 342 (1979)); see also Sierotowicz v. N.Y. Div. of Hous. & Cmty. Renewal, No. 04-CV-3886 (NGG/LB), 2005 WL 1397950, at *1 (E.D.N.Y. June 14, 2005) (holding that 42 U.S.C. § 1983 does not override New York's Eleventh Amendment sovereign immunity).

Third, the Ex Parte Young doctrine does not appear to salvage plaintiff's claims for injunctive and declaratory relief against the New York State Board of Elections. See Tiraco, 963 F. Supp. 2d at 192; see Ex parte Young, 209 U.S. 123 (1908). Indeed, plaintiff "does not follow the requirement, established in Ex Parte Young, that a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly." Santiago, 945 F.2d at 32 (citing Pennhurst State Sch. & Hosp., 465 U.S. at 102); see Melrose v. N.Y. State Dep't of Health Off. of Pro. Med. Conduct, No. 05-CV-8778 (SCR/LMS), 2009 WL 211029,

at *5 (S.D.N.Y. Jan. 26, 2009) ("[T]he Second Circuit still requires that state officers be named in order for the Ex Parte Young exception to apply.") (citations omitted); see also Harris v. N.Y. State Educ. Dep't, 419 F. Supp. 2d 530, 534 (S.D.N.Y. 2006) ("Actions for injunctive relief under the Ex parte Young exception to [sovereign immunity] constitute suits against state officials, not against the state or state agency itself.").

Specifically, although plaintiff seeks injunctive relief, he has only named the New York State Board of Elections and has failed to name any individual state official as a defendant. See Tiraco, 963 F. Supp. 2d at 192 (dismissing the plaintiff's claims asserted against the New York State Board of Elections based on sovereign immunity, notwithstanding that the plaintiff sought prospective injunctive and declaratory relief, because he "failed to name any state official as a defendant"); cf. Gallagher v. New York State Bd. of Elections, 477 F. Supp. 3d 19, 37 (S.D.N.Y. 2020) ("Plaintiffs' ... claims against the [New York State Board of Elections], therefore, are barred by sovereign immunity. But their federal claims against the [Board's] officers and Governor Cuomo ... are not barred.") (citations omitted); Cohen v. Richardson, No. 1:23-CV-00224 (AMN/CFH), 2024 WL 418788, at *3 (N.D.N.Y. Feb. 5, 2024) (concluding that the Eleventh Amendment did not bar the plaintiff's suit, where the plaintiff "only [sought] declaratory and prospective injunctive relief" against named individuals employed by the New York State Board of Elections) (citing Cecos Int'l, Inc. v. Jorling, 706 F. Supp. 1006, 1024 (N.D.N.Y. 1989) ("[T]he [E]leventh [A]mendment does not forbid federal courts from granting injunctive relief against a state official acting contrary to the United States Constitution."), aff'd, 895 F.2d 66 (2d Cir. 1990)), reconsideration denied, 2024 WL 3653801 (N.D.N.Y. Aug. 5, 2024).

Consequently, the New York State Board of Elections is entitled to sovereign immunity. See Yang v. Kellner, 458 F. Supp. 3d 199, 208 (S.D.N.Y.) ("Because New York has not consented to be sued, and because Congress has not enacted legislation abrogating New York's Eleventh Amendment immunity with regard to [the p]laintiffs' ... causes of action, the claims against the [Board of Elections] as a state agency are barred by sovereign immunity."), aff'd sub nom. Yang v. Kosinski, 960 F.3d 119 (2d Cir. 2020); see also McMillan, 449 F. App'x at 80 (affirming dismissal of the plaintiff's claims against the New York State Board of Elections as barred by the Eleventh Amendment); Ulanov v. N.Y. State Bd. of Elections, No. 22-CV-193 (AMD/LB), 2022 WL 173112, at *2 (E.D.N.Y. Jan. 19, 2022) ("Accordingly, the New York State Board of Elections is immune from suit, and the plaintiff's claims against it must be dismissed."), reconsideration denied, 2022 WL 767865 (E.D.N.Y. Mar. 14, 2022).

***9** "The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction." Griffith v. New York State, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at *5 n.4 (N.D.N.Y. Mar. 20, 2024) (citing Crumble v. United States, No. 1:23-CV-4427 (LTS), 2023 WL 5102907, at *7 (S.D.N.Y. Aug. 7, 2023), and Nguyen v. Kijakazi, No. 20-CV-0607 (MKB), 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022)), report and recommendation adopted, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024); see Wang v. Delphin-Rittmon, 664 F. Supp. 3d 205, 217 (D. Conn. 2023) ("[S]overeign immunity strips the court of jurisdiction[.]") (citing Smith v. Scalia, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014), aff'd, 2015 WL 13710107 (D.C. Cir. 2015)); see Iwachiw, 217 F. Supp. 2d at 383 (dismissing the plaintiff's section 1983 action against the New York State Board of Elections for lack of subject matter jurisdiction under the Eleventh Amendment, noting "[t]he Eleventh Amendment is an explicit limitation on federal jurisdiction") (internal quotation marks and citations omitted). Thus, it is recommended that plaintiff's claims against the New York State Board of Elections be dismissed without prejudice for lack of subject matter jurisdiction. See Abadi v. City of New York, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) ("Because the Court lacks subject matter jurisdiction ... the amended complaint should be dismissed without prejudice.") (citing Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]")).

### IV. Leave to Amend

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " Edwards v. Penix, 388 F. Supp. 3d 135, 144-45

(N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, it is not an entirely foregone conclusion that plaintiff could amend his complaint to state a claim. See Meyers v. Becker, No. 1:23-CV-173 (DNH/CFH), 2023 WL 3079611, at *6 (N.D.N.Y. Apr. 5, 2023), report and recommendation adopted, 2023 WL 3073495 (N.D.N.Y. Apr. 25, 2023); see also Stiegman v. New York State Off. of Info. Tech. Servs., No. 1:19-CV-18 (GTS/CFH), 2019 WL 1762900, at *5 (N.D.N.Y. Apr. 22, 2019) (dismissing the plaintiff's claims against a New York state agency as barred by sovereign immunity, but granting the plaintiff leave to amend should the plaintiff wish to name an individual state official pursuant to the Ex Parte Young exception), report and recommendation adopted, 2019 WL 4727444 (N.D.N.Y. Sept. 27, 2019). Thus, it is recommended that plaintiff's complaint be dismissed without prejudice and with leave to amend should plaintiff wish to name a proper party or plead a proper claim. [15]

15 Any amended pleading supersedes and replaces a prior pleading in its entirety. In the event the District Judge adopts the undersigned's recommendation and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference. See, e.g., Anthony v. Fein, Such & Crane, LLC, No. 5:15-CV-00452 (DNH/TWD), 2015 WL 7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("[I]n the event Plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate Plaintiff's second amended complaint"), report and recommendation adopted, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015). Further, an amended complaint may not replead any claims or defendants dismissed by this Court with prejudice. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

## V. Conclusion

***10 WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application for leave to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against the New York State Board of Elections be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**; and it is

**RECOMMENDED**, that this matter (8:24-CV-00849, "Lewis I") be **CONSOLIDATED** with 8:24-CV-01036 ("Lewis II"), with the lead case being 8:24-CV-00849, and the member case being 8:24-CV-01036; and it is further

**RECOMMENDED**, that, if consolidation is granted, this Report-Recommendation and Order be docketed and served in all cases, with future filings to be docketed in only the lead case; and it is

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint within that time frame, the case be closed without further order by the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [16]

16 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the

deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4910561

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4689022
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,
v.
NEW YORK STATE BOARD OF ELECTIONS, Defendant.
Scott Phillip Lewis, Plaintiff,
v.
New York State Board of Elections, Defendant.

8:24-CV-0849 (GTS/CFH), 8:24-CV-1036 (GTS/CFH)
|
Signed November 6, 2024

**Attorneys and Law Firms**

SCOTT PHILLIP LEWIS, Plaintiff, Pro Se, 1936 Saranac Ave, #3, PMB 411, Lake Placid, NY 12946.

HON. LETITIA A. JAMES, AIMEE COWAN, ESQ., Assistant Attorney General, Counsel for Defendant, 300 South State Street, Suite 300, Syracuse, NY 13202.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

***1** Currently before the Court, in each of the two above-captioned civil rights actions filed by Scott Phillips Lewis ("Plaintiff") against the New York State Board of Elections ("Defendant"), is a Report-Recommendation by United States Magistrate Judge Christian F. Hummel recommending that (1) the matters be consolidated, with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036, and (2) Plaintiff's Complaint in each action be *sua sponte* dismissed without prejudice and with leave to amend. (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28.) In each action, Plaintiff has filed an Objection, and Defendant has filed a Response to that Objection. (Action No. 8:24-CV-0849, Dkt. Nos. 27, 28; Action No. 8:24-CV-1036, Dkt. Nos. 30, 31.) For the reasons set forth below, each Report-Recommendation is accepted and adopted in its entirety, the matters are consolidated (with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036), and Plaintiff's Complaint in each action shall be dismissed unless Plaintiff files an Amended Complaint within thirty days of the entry of this Decision and Order.

As an initial matter, the Court finds that (1) because neither of Plaintiff's Objections challenges Magistrate Judge Hummel's recommendation regarding consolidation, that recommendation need be (and is) reviewed only for clear error,[1] and (2) that recommendation survives that clear-error review for the reasons stated in each Report-Recommendation. (Action No. 8:24-CV-0849, Dkt. Nos. 27, 25; Action No. 8:24-CV-1036, Dkt. Nos. 30, 28.)

1 When no specific objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a clear-error review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(C); *see, e.g., Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

***2** Turning to Magistrate Judge Hummel's recommendation regarding the dismissal of Plaintiff's Complaint without

prejudice and with leave to amend, the Court begins by finding that, even when viewed with the utmost of special leniency, neither of Plaintiff's Objections contains a specific challenge to either Report-Recommendation other than a specific challenge to the recommended dismissal of each Complaint on the grounds that Defendant is entitled to sovereign immunity. (Action No. 8:24-CV-0849, Dkt. No. 27; Action No. 8:24-CV-1036, Dkt. No. 30.) As a result, the remaining portions of each Report-Recommendation need be (and are) reviewed only for clear error, which the Court finds they survive for the reasons stated in each Report-Recommendation. (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28.)

Finally, with regard to Plaintiff's specific challenge to the recommended dismissal of each Complaint on the grounds that Defendant is entitled to sovereign immunity, the Court must review each such recommendation *de novo.* [2] After doing so, the Court finds that each recommendation survives that *de novo* review for the reasons stated in each of Defendant's Responses: Magistrate Judge Hummel employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. (Action No. 8:24-CV-0849, Dkt. No. 28; Action No. 8:24-CV-1036, Dkt. No. 31.) As a result, the challenged portion of each Report-Recommendation is also accepted and adopted in its entirety for the reasons stated therein. (*Id.*)

2 When a specific objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).

To those reasons, the Court adds only that, as argued by Defendant in each of its Responses, is well established that Defendant is a state agency for the purposes of the Eleventh Amendment. *See, e.g., McMillan v. New York State Bd. of Elections*, 10-CV-2502, 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010) ("The State Board [of Elections] is a state agency for the purposes of the Eleventh Amendment."), *aff'd*, 449 F. App'x 79 (2d Cir. 2011) (summary order); *Iwachiw v. New York City Bd. of Elections*, 217 F. Supp. 2d 374, 380 (E.D.N.Y. 2002) ("[T]he Eleventh Amendment bars the Section 1983 action against the State Board of Elections."), *aff'd, Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27 (2d Cir. 2005); *Murawski v. New York State Bd. of Elections*, 285 F. Supp. 3d 691, 696 (S.D.N.Y. 2018) ("The State Board of Elections is a state agency for the purposes of the Eleventh Amendment ....") (internal quotation marks omitted); *Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 191 n.7 (E.D.N.Y. 2013) ("It is undisputed that the State Board [of Elections], a New York state executive agency, is an 'arm of the state' entitled to sovereign immunity."); *Credico v. New York State Bd. of Elections*, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) ("[T]he Board of Elections is a state agency for the purposes of the Eleventh Amendment ....").

**ACCORDINGLY**, it is

**ORDERED** that each Report-Recommendation in the two above-captioned actions (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the two above-captioned actions are **CONSOLIDATED** pursuant to Fed. R. Civ. P. 42(a) (with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036); and it is further

**ORDERED** that Plaintiff's Complaint in each action (Action No. 8:24-CV-0849, Dkt. No. 1; Action No. 8:24-CV-1036, Dkt. No. 1) **shall be DISMISSED** without further Order of the Court, **UNLESS, within THIRTY (30) DAYS** of the entry of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that cures the pleading defects identified in each Report-Recommendation; and it is further

***3 ORDERED** that, should Plaintiff file a timely Amended Complaint, that Amended Complaint shall be, without further Order of this Court, referred to Magistrate Judge Hummel for his review of its pleading sufficiency.

Because the Court certifies that any appeal from this Decision and Order would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), the Court revokes Plaintiff's *in forma pauperis* status on any appeal from this Decision and Order.

## All Citations

Not Reported in Fed. Supp., 2024 WL 4689022

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1016392
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,
v.
David J. COLLINS, et al., Defendants.

6:23-cv-1485 (DNH/TWD)
|
Signed March 8, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, pro se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

***1** The Clerk has sent to the Court for review a *pro se* civil rights complaint filed by Willie Thomas Gosier ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of June 11, 2023, traffic stop in Rome, New York. (Dkt. No. 1.) Plaintiff has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

At the time Plaintiff commenced this action, he was an inmate at the Oneida County Correctional Facility. (Dkt. Nos. 1, 2.) Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.[1] Based on that review, it does not appear Plaintiff had acquired three strikes for purposes of Section 1915(g) as of the date this action was commenced.[2]

1 *See* http://pacer.uspci.uscourts.gov (last visited Mar. 8, 2024).

2 *See Gosier v. Oneida Cnty. District Atty's Office*, No. 6:23-cv-01118 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023; closed on Nov. 2, 2023) ("*Gosier I*"); *Gosier v. Utica Police Dep't*, No. 6:23-cv-01119 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023) ("*Gosier II*"); *Gosier v. Oneida Cnty. Corr. Fac.*, No. 9:23-cv-01134 (DNH/CFH) (N.D.N.Y. filed on Sept. 5, 2023) ("*Gosier III*"); *Gosier v. Paolozzi*, No. 9:23-cv-01135 (GTS/TWD) (N.D.N.Y. filed on Sept. 5, 2023; closed on Jan. 30, 2024) ("*Gosier IV*"). The Court notes *Gosier I* and *Gosier IV* were *sua sponte* dismissed on initial review and Plaintiff has been granted leave to file amended complaints in *Gosier II* and *Gosier III*.

Upon review of Plaintiff's IFP application, the Court finds Plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in this District. (Dkt. Nos. 2, 3.) Accordingly, Plaintiff's IFP application is granted.[3]

3 "Although an indigent, incarcerated individual need not prepay the filing fee at the time ... of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). Plaintiff should also note that although his motion to proceed IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. SUFFICENCY OF THE COMPLAINT

### A. Standard of Review

***2** Having found Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[4]

4 To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court looks to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 provides in pertinent part that: "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 22-CV-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B. Background

***3** The complaint in this action, brought against defendants David J. Collins, Chief of Police of the Rome Police Department, and two unknown police officers, consists of two form complaints—one on the form complaint for civil rights violations pursuant to 42 U.S.C. § 1983 and one on the form complaint for *pro se* prisoner complaints—and four attached narrative pages. (Dkt. No. 1.) The narrative section spans five handwritten pages and is essentially one paragraph with limited punctuation. *See id.* at 8-13.[5] The Court will construe the allegations in the complaint with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"). The following facts are taken from Plaintiff's complaint.

5 The Court will refer to the CM/ECF pagination when citing to the complaint. Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

On June 11, 2023, between the hours of 6:00 a.m. and 5:00 p.m., Plaintiff was "stopped" by Rome Police Officers "John Doee and John Doee" (the "defendant police officers") in the

City of Rome for "speeding" near the Colonial Laundromat. *Id.* at 8. The defendant police officers claimed Plaintiff was going "50 in a 30 zone." *Id.* But Plaintiff "was only doing 35 in a 30 zone which is legal." *Id.* Plaintiff believes he was "targeted and labeled" because he is a young "black mixed person." *Id.* at 11. Plaintiff claims when a "person of color" has "valuable things" like a car, "they ... label you as a drug dealer or a person who conduct's crime." *Id.*

During the traffic stop, the defendant police officers "searched" Plaintiff's name, told Plaintiff he "was under suspention," and instructed him to "get out of [the] car." *Id.* at 8. Plaintiff was "unlawfully" handcuffed, and the defendant police officers conducted a "patdown search" and "searched" the car. *Id.* He was "placed" in the back of the patrol car and "witntnessed" the defendant police officers "pull" his female friend out of the car. *Id.* at 8-9. While holding her arms, "one officer pulled her pant's/panties a way from her body" and "the other reached into her pant's/panties and pulled some thing out completely illegal search." *Id.* at 9. They then took Plaintiff's "book bag's out of the car and trunk 1 book bag was her's with personal paper's, document's item's and looked thru it all[.]" *Id.* "They even took our cell phones" and "searched thru them with no warrent." *Id.* "Still to this date have not gotten my property back none of it they impounded my car. [6] *Id.*

[6] Plaintiff was able to "get" his car "out" but it "cost me a lot" on a Sunday. (Dkt. No. 1 at 9.) But when he picked up his car, he "had a flat tire and a dent on the passenger side .. [and] had to pay to get inside of car done due to coffiee being spilt on ... swade seats and glitter being all over." *Id.*

Plaintiff claims "driving under a suspention is a misdemeaner and dose not justify handcuffing or conducting a pat down search." *Id.* at 12. "It was a complete unlawful stop and all evidence need's to be suppressed." *Id.*

When Plaintiff "arrived at RPD" on June 11, 2023, the "RPD" did not read Plaintiff his *Miranda* rights, and he was "interrogated" without a lawyer being present and without being told he could have a lawyer. *Id.* at 9-12. "They" asked him questions like, "why was i in Rome what was i doing where did i go in rome why how long ect." *Id.* at 12.

A "couple" of months later, Plaintiff was "charged with what they found in her pant's/panties." *Id.* at 9. On July 15, 2023, he also was "charged with criminal possession of weapon 2nd: loaded firearm-other than person's home/business which charge is still pending against me till this day." *Id.* at 9-10.

***4** Plaintiff alleges the "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence" and violated his constitutional rights. *Id.* at 10. Plaintiff claims "they" had "no ground's to pull me over" and the defendant police officers "should have had a female cop come and conduct that search" of his female friend. *Id.* at 9. "But even so it would still have been unlawful due to them not having probable cause to search me, my car, or my friend what so ever." *Id.* According to Plaintiff, "it is 100% legal" to drive "35 in a 30 zone" therefore, the stop was "1000% not a valid traffic stop at all" and that he "did not [break] any traffic violations or rule/law's." *Id.* at 10. Plaintiff further claims "it is said in supreme and other higher courts that you do not need a license to drive a car, SUV, truck in the United States ... it is protected by my con. Amendment right travel 4 th, 5 th amendment rights's." *Id.*

In his prayer for relief, Plaintiff seeks $2,000,000 and "for the officer's to be charged and procicuted for act's and investigate RPD misconduct." *Id.* at 4,13.

**C. Nature of Action**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (citations omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Moreover, the theory of respondeat superior is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

**IV. ANALYSIS**

The Court construes the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."). Upon review and for the reasons below, the Court finds Plaintiff's complaint fails to comply with the basic pleading requirements and fails to state a claim. Accordingly, the Court recommends dismissal of the complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

**A. Rules 8 and 10**

A complaint is subject to dismissal if its "form or substance prevents the defendant from forming a 'fair understanding' of the plaintiff's allegations or otherwise prejudices the defendant in responding to the complaint." *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 345 (S.D.N.Y. 2014). Ultimately, a complaint must give "fair notice" to the defendants. *See* *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("The function of pleadings under the Federal Rules is to give fair notice of the claims asserted." (internal quotation marks omitted)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

In this instance, Plaintiff's rambling complaint consists almost entirely of legal conclusions, rather than well-pleaded factual allegations. As explained in more detail below, Plaintiff's complaint does not comply with Rule 8 because Plaintiff does not make a short and plain statement showing that he is entitled to relief from the named defendants. Additionally, Plaintiff's complaint does not comply with Rule 10 because it lacks numbered paragraphs, each limited as far as practicable to a single set of circumstances.

**B. Official Capacity Claims**

***5** Plaintiff's complaint does not specify whether he intends to bring claims against the named defendants in their individual or official capacities. "A claim asserted against an individual in his official capacity ... is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978)); *Bryant v. Maffucci*, 923 F.2d 979, 986 (2d Cir. 1991) ("In bringing suit against defendants in their official capacities, Bryant has effectively brought suit against the governmental unit that employs them, Westchester County[.]"). Thus, the Court considers whether Plaintiff has stated constitutional claims against the City of Rome, who is the real party in interest.

"A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell*, 436 U.S. at 691). Thus, to hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Here, Plaintiff's claim construed against the City of Rome appears to stem from an isolated instance of alleged unconstitutional conduct by the defendant police officers in the course of a traffic stop. Such an isolated act by a non-policymaking municipal employee is "generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability." *Matusick*, 757 F.3d 31 at 62 (2d Cir. 2014) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 82 (2d Cir. 2012)). But such isolated instances would be a basis for municipal liability if they were done

> pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Jones*, 691 F.3d at 81. The only factual allegations potentially bearing on any such basis for municipal liability are the allegations that Plaintiff is "being targeted" for being a

"young and black mixed person of color." (Dkt. No. 1 at 11.) Plaintiff states:

> i feel this is at most descrimination at it's finest and racel profiling. That's a huge violation of my con. Amendment right's. it's not okay or right one bit. Just because im a young black mixed person of color. it is not right that RPD get's a way with thing's like this all the time, nothing ever get's done about it. They do as they please and they find it okay to do such conduct's its completely not okay or right for such act's. This need's to change it's not right at all, right is right wrong is wrong."

*Id.* at 12. The Court infers this is an allegation of racially motivated police conduct. Plaintiff also list "harassment" as a cause of action.[7] *Id.* at 13.

7 To the extent the complaint could be construed as asserting a verbal harassment claim, allegations of verbal harassment are insufficient to support a Section 1983 claim. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged")); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

***6** "The Second Circuit has admonished that courts should 'not condone racially motivated police behavior' and must 'take seriously an allegation of racial profiling.' " *Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013) (quoting *United States v. Davis*, 11 F. App'x 16, 18 (2d Cir. 2001)). In this case, however, Plaintiff's "general and conclusory" allegations are insufficient to establish any plausible claim of municipal liability. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Plaintiff alleges no other specific conduct by City of Rome officials, nor does he cite any other facts or circumstances in support of any claim that a policy of racial profiling or racial animus exists in the City. Moreover, insofar as the complaint may allege that employees of the Rome Police Department violated Plaintiff's constitutional rights, those allegations fail to state a claim against the City of Rome because a municipality may not be liable on the basis of respondeat superior. *See Monell*, 436 U.S. at 691.

Accordingly, it is recommended that Plaintiff's official capacity claims be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue claims against the City of Rome, he must name the City of Rome as a defendant in the list of parties and state facts suggesting that a City policy, custom, or practice caused the violation of his rights during or after the traffic stop.

### C. Individual Capacity Claims Against Defendant David J. Collins

It is well-settled that "[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

In this case, Plaintiff names David J. Collins as a defendant in the recitation of parties, but the complaint lacks any specific allegations of wrongdoing by this defendant. Rather, it appears Plaintiff has sued defendant Collins due to the supervisory position he holds. The only reference to defendant Collins in the body of the complaint is as follows, "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence violated my Con. Amendment right's 2nd, 4th, 5th, 14th. So i Willie T. Gosier's Jr's right's have been violated due to an illegal/unlawful stop they had no ground's to pull me over." (Dkt. No. 1 at 10.) Thus, the complaint does not include any plausible allegations of personal involvement by defendant Collins.

Accordingly, it is recommended that Plaintiff's Section 1983 claims against defendant Collins be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue Section 1983 claims against defendant Collins, Plaintiff must sufficiently alleged defendant Collins' personal involvement in the claimed violations.

### D. Individual Capacity Claims Against Defendants John Doee # 1 and # 2

#### 1. Unlawful Search and Seizure

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. A police officer may briefly detain a suspect, consistent with the Fourth Amendment, when the officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

In the context of traffic laws, "reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). Even a "minor" traffic violation meets this standard and provides probable cause for a stop. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (finding police had probable cause to arrest defendant for "not signaling lane changes"), *cert. denied*, 513 U.S. 877 (1994).

***7** Here, Plaintiff's claims alleging violations of constitutional rights arising from the traffic stop are undermined by his own admissions in the complaint.[8] Specifically, Plaintiff claims he was pulled over for speeding. (Dkt. No. 1 at 8.) Contrary to Plaintiff's assertion, travelling over maximum speed limits is a violation of New York State Vehicle and Traffic Law, thus providing probable cause for the traffic stop. *See* N.Y. Veh. & Traf. Law § 1180(d).

8 As described above, Plaintiff also takes issue with the June 11, 2023, search of his female friend. However, a *pro se* plaintiff cannot bring any claims on behalf of any other plaintiff. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (because *pro se* means to appear for oneself, a person may not appear on another person's behalf in the other's cause).

Though Plaintiff contends the reason cited by the defendant police officers was pretextual, the subjective intent of an officer performing a traffic stop is irrelevant. *United States v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1998) ("[A]n officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance."); *see, e.g.*, *Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) (dismissing the plaintiff's Fourth Amendment "racial profile claim" where the officers "had probable cause to believe [the plaintiff] violated New York traffic laws").

Once a lawful traffic stop based on probable cause has occurred, a police officer may make "ordinary inquiries incident to the traffic stop," and "[t]ypically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alterations omitted). Additionally, if the traffic stop is lawful, neither the driver nor any passengers have a "Fourth Amendment interest in not being ordered out of the stopped vehicle." *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000). Indeed, "a police officer may as a matter of course, order" a passenger or a driver out of "a lawfully stopped car." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam)).

Based on the information provided in the complaint, it appears the defendant police officers learned Plaintiff did not have a valid driver's license. Plaintiff alleges after the stop, the defendant police officers "searched my name they then returned told me i was under suspention which i was not under suspention told me get out of my car and unlawfully handcuffed me conducted a patdown search of me searched my car with out probable cause place me in the back of the patrole car." (Dkt. No. 1 at 8.) The defendant police officers also searched Plaintiff's friend and "some thing" was "pulled" from her "pant's/panties." *Id.* at 8-9. Plaintiff also accuses the defendant police officers of invading his "privacy" when they conducted a "pat down search," searched his car, and "took" his personal belongings including paperwork, documents, cell phones, and book bags without consent or a warrant. (Dkt. No. 1 at 3.) Plaintiff was then apparently taken to the Rome Police Department. *Id.* at 11-12. There are no allegations that the stop lasted any longer than necessary. As such, Plaintiff

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

has not stated a constitutional claim concerning a prolonged and unconstitutional seizure. *See* Rodriguez, 575 U.S. at 354.

***8** Insofar as Plaintiff claims that "driving under a suspention is a misdemeanor" and does "not justify handcuffing and or conducting a patdown search," and "you do not need a license to drive a car ... in the United States of America," Plaintiff is mistaken. (Dkt. No. 1 at 10, 12.) Under New York's Vehicle & Traffic Laws, a valid driver's license is required to operate a motor vehicle. *See* N.Y. Veh. & Traf. Law § 509; *see also id.* § 511 (prohibiting operating a car without a valid license). Thus, while the precise details are unclear, it appears the defendant police officers likely had probable cause to believe Plaintiff had committed a criminal offense. And a search incident to an arrest, "constitutes an exception to the warrant requirement" imposed by the Fourth Amendment.[9] *Riley v. California*, 573 U.S. 373, 382 (2014).

9 In New York a person is guilty of Criminal Possession of a Weapon in the second degree if he or she possesses a loaded firearm and does not have a license to possess such a firearm. *See* *Bannister v. Luis*, No. 18-CV-7285, 2022 WL 19402512, at *45 (E.D.N.Y. Feb. 16, 2022) (citing N.Y. Penal Law § 265.03), *report and recommendation adopted as modified*, 2023 WL 2325680 (E.D.N.Y. Mar. 2, 2023). Under New York law, the existence of a firearm in an automobile creates a permissive presumption that all occupants of the vehicle have common constructive possession of the firearm, absent certain statutory exceptions which are inapplicable here. *Id.* "If a jury may make a presumption of possession under the law, it is reasonable for a police officer to do the same." *Id.* Thus, regardless of whether the firearm was found on the Plaintiff's person or in his car, the officers had probable cause for his arrest.

Additionally, the automobile exception to the warrant requirement of the Fourth Amendment permits officers to "conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." *United States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012). Probable cause requires only a "fair probability" that evidence of a relevant violation will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When the exception applies, officers may search any area of the vehicle in which they have "probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991); *see also* *United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); *see also* *United States v. Harris*, No. 21-CR-376, 2022 WL 13798289, at *2 (E.D.N.Y. Oct. 21, 2022).

In sum, based on the information provided in Plaintiff's complaint, it appears the defendant police officers likely had probable cause to stop and arrest Plaintiff. Armed with probable cause, the search of Plaintiff's person and vehicle appears to have been a lawful search incident to arrest. *See* *United States v. Jenkins*, 496 F.2d 57, 79 (2d Cir. 1974) (finding search prior to arrest to be lawful "as long as probable cause to arrest existed at the time of the search"); *see generally* *Thornton v. United States*, 541 U.S. 615, 617 (2004) (holding search of vehicle's passenger compartment to be contemporaneous incident of arrest, though driver arrested outside vehicle).

Accordingly, it is recommended that Plaintiff's Section 1983 illegal search and seizure claim against the defendant police officers be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.[10]

10 Plaintiff claims he was "charged" with "what they found" on his friend's person and also charged with "possession of a weapon 2nd: loaded firearm-other than person's home/business." (Dkt. No. 1 at 9-10.) Plaintiff states "the loaded firearm charge" is "still pending against me till this day." *Id.* at 10. The Court notes, however, that under abstention principles, the Court typically refrains from intervening in a state-court criminal proceeding. *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). Moreover, to the extent that Plaintiff seeks the remedy of "suppression" of any items seized during the search, that remedy is simply inapplicable in a § 1983 suit. *See* *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine ... is inapplicable to civil § 1983 actions.").

### 2. False Arrest

***9** "A [Section] 1983 claim for false arrest[ ] resting on the Fourth Amendment ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." *Id.* Probable cause "is a complete defense to an action for false arrest" brought under New York law or section 1983. *Id.* (citation omitted). Police officers have probable cause to arrest when they possess "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (collecting cases); *see, e.g.*, *Johnson v. Harron*, No. 91 Civ. 1460, 1995 WL 319943, at *9 (N.D.N.Y. May 23, 1995) (concluding that DMV computer information showing driver's license was suspended established probable cause for arrest).

Read liberally, the complaint may raise a claim for false arrest. Plaintiff claims he was handcuffed, placed in the patrol car, was taken to the Rome Police Department, and was not read his *Miranda* rights. (Dkt. No. 1 at 8-12.) But the complaint focuses on the initial traffic stop and search and does not include details about the basis for the arrest that would allow the Court to evaluate whether he was arrested without justification. Accordingly, it is recommended that Plaintiff's Section 1983 false arrest claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.[11]

11 If Plaintiff intends to bring such a claim, he should amend his complaint to add facts establishing that he was arrested without justification and the disposition of any charges.

### 3. Excessive Force

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on an excessive force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017) (internal quotations omitted). The "objective reasonableness" inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

Here, "excessive force" is listed as a cause of action. (Dkt. No. 1 at 13.) Plaintiff claims he was "unlawfully pulled out of [his] car," "handcuffed" and subjected to a "pat down search." *Id.* at 8. With this allegation and nothing more, there are simply not enough facts present to establish a plausible excessive force claim. *See Burroughs v. Petrone*, 138 F. Supp. 3d 182, 214 (N.D.N.Y. 2015) (excessive force claim based on rough pat and frisk and push by officers, without other facts or injury alleged, dismissed); *see also Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) (declining to find any constitutional violation from plaintiff's allegations of officers' forceful behavior, including a "single push," during the time he was handcuffed).

Accordingly, it is recommended that Plaintiff's Section 1983 excessive force claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 4. Due Process

The complaint lists "5th Due Prosses" as a claim and Plaintiff states "I also have a privilege aganced self incrimination suspect's statement's, comment's remark's before *Miranda* rights cant be used in court." (Dkt. No. 1 at 12, 13.) "While a defendant has a constitutional right not to have a coerced statement used against him, the failure to provide *Miranda* warnings does not constitute a Fifth Amendment violation or a violation of federal law." *Jallow v. Geffner*, No. 23-CV-3969, 2024 WL 37073, at *10 (S.D.N.Y. Jan. 2, 2024) (citing *Vega v. Tekoh*, 597 U.S. 134, 142-152 (2022)); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (relying on *New York v. Quarles*, 467 U.S. 649, 654 (1984) (a defendant does not have a constitutional right to receive *Miranda* warnings because warnings are only a procedural safeguard designed to protect a person's right against self-incrimination)).

***10** Generally, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Gentry v. New York*, No. 1:21-CV-319 (GTS/ML), 2021 WL 3037709, at *7-8 (N.D.N.Y. June 14, 2021), *report and recommendation adopted*, 2021

WL 3032691 (N.D.N.Y. July 19, 2021) (quoting *Hernandez v. Llukaci*, No. 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003))). "The failure to inform a plaintiff of his rights under *Miranda*, 'does not, without more, result in § 1983 liability.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 346). "The remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)) (internal quotations omitted). However, " '[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declarant in any fashion.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 348 (internal citations omitted)).

Here, the complaint does not allege any facts that would plausibly suggest police coercion led to inculpatory statements. As a result, it is recommended that Plaintiff's Section 1983 due process claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 5. Right to Travel

The complaint lists "5th right to travel" as a claim. (Dkt. No. 1 at 3, 13.) "The Constitution protects a fundamental right to travel within the United States," *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009), but "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right[.]" *Scott v. Crossway*, No. 1:22-CV-500 (BKS/CFH), 2022 WL 16646531, at *10 (N.D.N.Y. Nov. 3, 2022) (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (alterations, citations, and quotation marks omitted)), *report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023);

Even liberally construed, Plaintiff has not alleged any facts to suggest a violation of his constitutional right to travel. Plaintiff's allegations regarding his right to travel relate to the traffic stop and seizure of his vehicle, which is akin to his illegal search and seizure claim. *See, e.g.*, *Wellington v. Foland*, No. 3:19-CV-0615 (GTS/ML), 2019 WL 3315181, at *6 (N.D.N.Y. July 24, 2019), *report and recommendation adopted*, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019); *Bey v. D.C.*, No. 17-CV-6203, 2018 WL 5777021, at *6 (E.D.N.Y. Nov. 1, 2018) (dismissing the plaintiff's "right to travel claim" where the plaintiff retained his ability and constitutional right to travel even if "inconvenienced" by the seizure of his motor vehicle."); [12] *see also Johnson El v. Bird*, No. 19-CV-5102, 2020 WL 5124920, at *5 n.8 (S.D.N.Y. Aug. 31, 2020) ("To the extent Plaintiff means to argue that traffic enforcement violates his right to travel, that claim is dismissed as frivolous.") (citing *Annan v. State of N.Y. Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016), *aff'd*, 662 F. App'x 85 (2d Cir. 2016) (summary order)).

12 To the extent Plaintiff claims the defendant police officers deprived him of a property interest by impounding his car, Plaintiff has not pled facts sufficient to establish that he was deprived of that interest without due process. *See, e.g.*, *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 304 (S.D.N.Y. 2020) (noting that where the defendants' impounded the plaintiff's car following a traffic stop the conduct did not implicate procedural due process concerns); *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at *12 (S.D.N.Y. Mar. 5, 2020) (noting that the plaintiff fails to allege the inadequacy of any post-deprivation hearings following the impoundment of his vehicle); *Domeneck v. City of New York*, No. 18-CV-7419, 2019 WL 5727409, at *10 (S.D.N.Y. Nov. 5, 2019) (dismissing plaintiff's Fourteenth Amendment claim regarding the deprivation of his vehicle because the plaintiff has not plausibly alleged that the process he received was insufficient).

***11** The Court therefore recommends dismissing Plaintiff's Section 1983 right to travel claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 6. Right to Bear Arms

The complaint lists "2nd Bear Arm's" as a claim. (Dkt. No. 1 at 13.) The "Second Amendment protects 'an individual right to keep and bear arms.' " *District of Columbia v. Heller D.C. v. Heller*, 554 U.S. 570, 595 (2008). But "[l]ike most rights, the right secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626.

For example, the Second Amendment allows "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 627-28.

Here, Plaintiff's conclusory allegation regarding his right to "Bear Arm's" provided by the Second Amendment is insufficient to state a plausible claim for relief given the numerous limitations on an individual's right to bear arms. *See, e.g.*, *McClenic v. Shmettan*, No. 15-CV-00705, 2016 WL 3920219, at *8 (E.D.N.Y. July 15, 2016) (dismissing the plaintiff's conclusory allegation that defendant detectives violated his Second Amendment right "to keep and bear arms" where, *inter alia*, was charged with criminal possession of a weapon second degree in a felony complaint); *see also Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020) ("The mere occurrence of a firearm seizure during a traffic stop, however, is not enough to establish a Second Amendment violation. Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such.").

Accordingly, the Court recommends dismissing Plaintiff's Section 1983 right to bear arms claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [13]

13 *See also supra* note 10 and accompanying text.

### E. Private Prosecution

To the extent Plaintiff seeks an order from this Court directing the defendants to be "charged and prosicuted for Act's and investigate RPD misconduct," (Dkt. No. 1 at 3, 13), he is not entitled to such as order because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against any defendant because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court[.]" *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

### F. Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having recommended dismissal of the federal claims of which the Court has original jurisdiction, it is also recommended that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' ") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

## V. OPPORTUNITY TO AMEND

***12** Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

For reasons set forth above, the Court finds Plaintiff's complaint is subject to dismissal in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) for failure to state a claim. However, in light of his *pro se* status, prior to outright dismissal of this action, the Court recommends that Plaintiff be given an opportunity to amend his pleading.

Plaintiff is advised that, should the District Court permit Plaintiff to file an amended complaint, and if he chooses to avail himself of an opportunity to amend, such amended pleading must cure the defects set forth above. [14] Specifically, the pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). The body of the pleading must contain sequentially numbered paragraphs containing only one act of alleged misconduct per paragraph. Fed. R. Civ. 10. No portion of any prior complaint shall be incorporated into the amended complaint and piecemeal pleadings are not permitted.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

14 Plaintiff should not submit an amended complaint before the District Court issues a Decision and Order on this Report-Recommendation. As noted below, however, Plaintiff may file written objections to this Court's Report-Recommendations.

The Court notes that in *Gosier II*, Plaintiff alleged he was "pulled over" on June 11, 2023, by officers of the Utica Police Department "without probable cause and proceeded to illegally search [his] vehicle." *Gosier II*, No. 6:23-cv-01119 (DNH/TWD), ECF Dkt. No. 1 at 9. Plaintiff also alleged he was "maliciously prosecuted" and "arrested and charged with Criminal Possession of a Controlled Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd." *Id.* Plaintiff's original complaint was *sua sponte* dismissed on initial review with leave to amend. *Id.*, ECF Dkt. Nos. 10, 12. On February 5, 2024, Plaintiff's request for an extension of time until March 16, 2024, to submit his amended complaint was granted. *Id.*, ECF Dkt. No. 19. At this juncture, it is unclear whether the subject traffic stop in *Gosier II* is the same traffic stop at issue in this action. Plaintiff should explain the relationship, if any, between the June 11, 2023, traffic stop at issue in this action and the June 11, 2023, traffic stop at issue in *Gosier II*.

## VI. CHANGE OF ADDRESS

According to information publicly available on the website maintained by the New York State Department of Corrections and Community Supervision ("DOCCS"), Willie Gosier (DIN 22B2574) was released from custody on parole on February 26, 2024.[15] Plaintiff is reminded that he must update his address with the Court immediately upon relocating. For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

15 *See* http://nysdoccslookup.doccs.ny.gov (last visited Mar. 8, 2024).

## VII. CONCLUSION

***13 WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with **LEAVE TO AMEND**; and it is further

**RECOMMENDED** that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[16] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

16 If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1016392

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1307035
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,
v.
David J. COLLINS et al., Defendants.

6:23-CV-1485
|
Signed March 27, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, Pro Se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

***1** On November 29, 2023, *pro se* plaintiff Willie Thomas Gosier ("plaintiff"), who was recently released to State parole, filed this 42 U.S.C. § 1983 action alleging that the defendants violated his civil rights during a traffic stop in Rome, New York. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 2, 3.

On March 8, 2024, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4.

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon *de novo* review, the R&R is accepted and will be adopted. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty (30) days in which to file an amended complaint that conforms with the specific instructions set forth in the R&R;

4. If plaintiff timely files an amended pleading, the Clerk is directed to return the matter to Judge Dancks for further review as appropriate;

5. If plaintiff does not timely file an amended pleading, the Clerk is directed to close this matter without further Order of the Court.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1307035

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

**I. In Forma Pauperis**

***1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

1 The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2 Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

**II. Initial Review**

**A. Legal Standards**

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

***2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

***3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

3 Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

**B. Complaint**

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983.

See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

4 Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> ***4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts[5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has

Constitutional violations. That case number is 1:24-CR-301 (AMN).” Id.

5 Plaintiff did not provide any transcripts.

### C. Discussion [6]

6 As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

#### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to “Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel,” he does not provide factual support or context. Thus, his complaint does not provide “fair notice” to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

#### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to “Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel” and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed “ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me.” Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

***5** As this Court, citing the District of Connecticut, has set forth:

> In Heck, the Supreme Court held that in order for a plaintiff “to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.” Id. at 486-87. The court further held that “[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.” Id. at 487 (emphasis in original).
>
> [ ]
>
> Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a “§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration.” Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been “reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.” Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

7 The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge"[8] such claims would be barred by judicial immunity.

8 Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

***6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired

Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

***7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).
>
> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

9 Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition

to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

***8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

10 The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

11 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4870495

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 1660470
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andre Rene LEVESQUE, Plaintiff,
v.
The PEOPLE OF THE UNITED STATES, Defendants.

No. 8:25-CV-1259 (MAD/PJE)
|
Signed June 8, 2026

**Attorneys and Law Firms**

Andre Rene Levesque, 35A Smithfield Blvd., #149, Plattsburgh, New York 12901, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER** [1]

1 This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

PAUL J. EVANGELISTA, UNITED STATES MAGISTRATE JUDGE

I. **In Forma Pauperis**

***1** Plaintiff pro se Andre Rene Levesque ("plaintiff") commenced this action on September 8, 2025, by filing a complaint. [2] *See* Dkt. No. 1. In lieu of paying this Court's filing fee, plaintiff submitted an application for leave to proceed in forma pauperis ("IFP"). *See* Dkt. No. 2. Plaintiff also filed a motion seeking to have the U.S. Marshals copy and serve defendants with "evidence" and the Court provide a computer so defendants can review the "evidence." Dkt. No. 3. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [3] This Court must now assess the merits of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915; 1915A. [4]

2 The undersigned notes that plaintiff has filed at least nineteen other civil actions in this District.

3 Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs they may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

4 These requirements apply equally to non-prisoner pro se litigants. *See* N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

II. **Initial Review**

A. **Legal Standards**

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

The Second Circuit affords pro se litigants a "special solicitude" such "that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted); *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (same). "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).

Conversely, the Second Circuit has stated that the Court "cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, [and] that we should not excuse frivolous or vexatious filings by pro se litigants." *Triestman,* 470 F.3d at 477 (citations omitted). Stated another way, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the

pleading stage, a complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which the claims are based. *See* *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (Noting that a plaintiff bringing suit must plead "enough facts to state a claim to relief that is plausible on its face.").

***2** Further, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law ...." *Triestman,* 470 F.3d at 477 (additional quotation omitted); *Kastner v. Tri State Eye*, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)) ("The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure."[5] ).[6] Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the grounds for the court's jurisdiction ... and ... a demand for the relief sought ...." FED. R. CIV. P. 8(a). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" does not suffice." *Id.* (internal quotation marks and alterations omitted).

5 Hereafter, "Fed. R. Civ. P."

6 All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores*, 189 F.R.D. at 55 (internal quotation marks and citations omitted).

Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (citations omitted).

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Romano v. Lisson*, 711 F. App'x 17, 19 (2d Cir. 2017) (summary order) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)) *Rich v. Akwesasne Mohawk Casino Resort*, No. 8:24-CV-0255 (AMN/CFH), 2024 WL 3677262, at *2 (N.D.N.Y. Aug. 6, 2024), *report and recommendation adopted,* No. 8:24-CV-0255 (AMN/PJE), 2025 WL 286937 (N.D.N.Y. Jan. 24, 2025) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir.

1995)) ("If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint."). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

## III. **Discussion**

### A. **Plaintiff Complaint**

***3** In a two-page, handwritten complaint, plaintiff alleges the following:

> After 400 address changes and blatant denial of due process repeatedly (sic) I insist the U.S. Marshalls personally deliver my fucking court correspondence anere443@gmail.com The good people intentionally prevented me from accessing the computer while I was beaten and tortured repeatedly making prosecuting my claims impossible along with pre postaged (sic) envelope return....
>
> The defendants systematically denied me due process and allowed people to abduct me while trying to ste[al] from me. They all got me to chant ["]Death to America murder mutilate maul maime (sic) destroy them all["] 200 million x.

Dkt. No. 1 at 1-2. Plaintiff asserts that his "pain and suffering is enormous" and has "caused immense distress [and] irreparable harms." *Id*. at 2.

Plaintiff states that he seeks to proceed against the People of the United States and all of their foreign and domestic trading partners, as well as the United States Supreme Court, the United States Congress, and all forty-seven Presidents of the United States. *See* Dkt. No. 1 at 1-2. Plaintiff also demands "4 trillion 671 billion 285 million dollars" in monetary damages. *See id*. at 2.

Attached to plaintiff's complaint is a motion seeking to have the U.S. Marshals "make a copy" and "hand deliver" his complaint to defendants, "enclose a form to have the judge appoint an attorney," and "enclose a disk or USB card with each document the federal court received from me in all 50 states and state filings (sic) as evidence [of] both what I sent and allegedly received. Along with a 20″ × 16″ computer to actually review the evidence." Dkt. No. 3.

### B. **Analysis**

The undersigned concludes that plaintiff's complaint is frivolous and fails to satisfy the liberal pleading requirements for pro se plaintiffs such that plaintiff's complaint should be dismissed without prejudice and without leave to amend. *See* FED. R. CIV. P. 8, 10; *Salahuddin*, 861 F.2d at 42; *Edwards*, 388 F. Supp. 3d at 144-45 (quoting *Cuoco*, 222 F.3d at 112).

As an initial matter, plaintiff's complaint fails to meet the pleading requirements of Rules 8 and 10. Plaintiff's complaint does not provide a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a). Rather, plaintiff's complaint amounts to two pages of indecipherable assertions that provide no factual or legal context, detail, support, or explanation of any purported claim. *See* Dkt. No. 1; *see also Story v. Fort Gordon, United States Mil.*, No. 1:24-CV-0626 (MAD/CFH), 2024 WL 4818523, at *2 (N.D.N.Y. Nov. 18, 2024) ("The Court agrees that Plaintiff's complaint, which consists of only one or two sentences, provides no factual context or support for Plaintiff's claims."). The undersigned is unable to make sense of any potential claim and plaintiff's complaint fails to give any proposed defendant "fair notice of [any potential] claim being asserted" such that any individual defendant would have an "opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores*, 189 F.R.D. at 55. Further, plaintiff does not provide a "short and plain statement of the grounds for the court's jurisdiction" or state his claims in a single set of numbered paragraphs. FED. R. CIV. P. 8(a); *see also* FED. R. CIV. P. 10(b).

***4** "Moreover ... in addition to failing to meet the pleading requirements contemplated by Rules 8 and 10, the complaint is subject to dismissal because it is frivolous and fails to state a claim." *Story*, 2024 WL 4818523, at *2. "The Supreme Court has repeatedly held that the federal courts are without power to entertain claims that are so attenuated and unsubstantial as to be absolutely devoid of merit[,]" "wholly insubstantial," "obviously frivolous[,]" or "plainly insubstantial[.]" *Hines v. United States*, No. 6:19-CV-06837 (MAT), 2020 WL 570605, at *2 (W.D.N.Y. Feb. 5, 2020) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)) (internal quotation marks omitted).

"No federal question jurisdiction exists when the complaint is ... essentially fictitious." *Story*, 2024 WL 4818523, at *2 (quoting *Hines*, 2020 WL 570605, at *2 (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994))). "Claims that are 'essentially fictitious' include those that allege 'bizarre conspiracy theories" and "any fantastic government manipulations of [the plaintiff's] will or mind." *Id.* (quoting *Hines*, 2020 WL 570605, at *2 (quoting *Best*, 39 F.3d at 330).

Even affording plaintiff great solicitude and reading his complaint liberally, "plaintiff sets forth no cognizable avenue for relief." *Georges v. Rathner*, No. 1:17-CV-1246 (DNH/CFH), 2017 WL 8230677, at *2 (N.D.N.Y. Dec. 22, 2017), *report and recommendation adopted,* No. 1:17-CV-1246 (DNH/CFH), 2018 WL 1353058 (N.D.N.Y. Mar. 15, 2018); *see* Dkt. No. 1. Although plaintiff's complaint mentions that he was denied due process "281 x" and that he was abducted, manipulated, and physically and financially harmed, plaintiff has not provided any factual or legal basis that can be interpreted as claiming that he was denied due process or that any of his other constitutional rights were violated. *See Georges*, 2018 WL 816846, at *3 ("[The] plaintiff has not provided sufficient facts for this Court to assess [the] plaintiff's complaint, as plaintiff has given no context for her general statements about violations of the law by parties who are not named in the complaint, nor explanations as to how her constitutional rights were violated ...."); *Ehlers v. C.I.A.*, No. 6:15-CV-387 (MAD/ATB), 2015 WL 3637431, at *3 (N.D.N.Y. June 10, 2015) (concluding that the "Plaintiff's complaint does not state a valid claim for which relief can be granted and lacks substance ... Plaintiff's complaint is not of substance, but rather conclusory statements and threadbare recitals of elements of a cause of action.") (internal quotation marks and additional citation omitted). Plaintiff does not state how or when he was harmed. *See generally* Dkt. No. 1. Rather, plaintiff refers to those who violated his rights in broad, general terms such as "defendants," "the good people," and "their trading partners." *Id.* at 1-2. Presented in this manner, plaintiff seeks to proceed against an infinite and indefinite number of individuals, institutions, and other nations as proposed unnamed defendants. Similarly, plaintiff describes his physical and financial harm generally as "immense" and "enormous," yet he does not state what actual harm, if any, he suffered. *See id.* at 2.

Plaintiff's complaint, in which he states, without any support, that the United States, its foreign trade partners, and the forty-seven presidents of the United States together denied him due process 281 times, "allowed people to abduct him," and forced him to chant "Death to America[.] Murder mutilate maul maime (sic) destroy them all" two million times, dkt. no.1 at 2, is a "product of delusion or fantasy." *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)); *see also Khalil v. United States*, No. 17-CV-2652, 2018 WL 443343, at *4 (E.D.N.Y. Jan. 12, 2018) (dismissing complaint where the "[p]laintiff allege[d] a broad conspiracy involving surveillance of and interference with his life by the United States and various government actors" because his allegations were "irrational and wholly incredible"). "Given the implausibility of Plaintiff's allegations, the action cannot proceed. *Khalil*, 2018 WL 443343, at *4 (citing *Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (summary order)).

***5** Therefore, the undersigned concludes that plaintiff's claims are frivolous and fail to state a claim upon which relief can be granted. *See Story*, 2024 WL 4818523, at *2; *Hines*, 2020 WL 570605, at *2 ("The Court is mindful that complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers .... Nonetheless, the Court has the discretion to decide whether a complaint is frivolous ..., and such finding is appropriate where the facts alleged are irrational or wholly incredible") (additional citations omitted); *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, *3 (2d Cir. Sept. 15, 2022) ("[A]mendment should be denied where the complaint gives no 'indication that a valid claim might be stated.' ") (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Accordingly, the undersigned recommends that plaintiff's complaint be dismissed without prejudice and without opportunity to amend "because the complaint is so attenuated and unsubstantial as to be absolutely devoid of merit[,] and, as such, no better pleading would cure these defects." *Id.*

## IV. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1), be **DISMISSED without prejudice and without opportunity to amend**; and it is further

**RECOMMENDED**, that plaintiff's motion seeking to compel the U.S. Marshals to act (Dkt. No. 3), be **DENIED as moot**; it is further

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[7]

7 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen-day (14) period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).


Ehlers v. C.I.A., Not Reported in F.Supp.3d (2015)
2015 WL 3637431

2015 WL 3637431
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Matthew R. EHLERS, Plaintiff,
v.
CENTRAL INTELLIGENCE AGENCY; David B. Buckley, Director; Michael E. Horowitz, Inspector General, Defendants.

No. 6:15–cv–387 (MAD/ATB).
|
Signed June 10, 2015.

**Attorneys and Law Firms**

Matthew R. Ehlers, Amsterdam, NY, pro se.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

***1** Plaintiff commenced this civil rights action asserting claims against the Central Intelligence Agency ("CIA"), the director thereof, and the Inspector General ("IG") of the Department of Justice ("DOJ"). *See* Dkt. No. 1. In an April 6, 2015, Order and Report–Recommendation, Magistrate Judge Baxter conducted an initial review of the complaint and granted Plaintiff's motion for leave to proceed in forma pauperis ("IFP") for filing purposes only, recommended that the complaint be dismissed in its entirety with prejudice, and denied Plaintiff's motion to appoint counsel. *See* Dkt. No. 5 at 11.

Currently before the Court is Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff's objections thereto, and Plaintiff's amended complaint, which was filed after the issuance of the Order and Report–Recommendation.

**II. BACKGROUND**

Plaintiff's complaint is very short, containing limited facts, but brings this action against the CIA and DOJ under 18 U.S.C. §§ 241–242 & 245 for having failed to investigate alleged reports of harassment that he and his family suffered due to their "whistleblowing" activities. *Id.* at 3, 8. Plaintiff appeared to be requesting injunctive or mandamus relief. *Id.* at 6. The Magistrate Judge found Plaintiff failed to plausibly allege that Defendants denied him due process by failing to conduct an investigation or prosecution and that Plaintiff has no right, constitutional or otherwise, to an investigation or prosecution. *Id.* at 8 (citing *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y.2008)). Magistrate Judge Baxter concluded that Plaintiff's complaint amounts to conclusory allegations which are insufficient to state a constitutional claim. *Id.* at 9 (citing *Barr v. Adrams*, 810 F.2d 358, 363 (2d Cir.1987)). The Magistrate Judge then held that any attempt by Plaintiff to amend his complaint would be futile, and he would still be unable to state a federal claim. *Id.* at 10.

Currently before the Court are Magistrate Judge Baxter's Order and Report–Recommendation, and Plaintiff's objections thereto. Additionally pending before the Court is Plaintiff's amended complaint, which was filed after the issuance of the Order and Report–Recommendation.

**III. DISCUSSION**

**A. Initial review**

Section 1915(e) (2)(B) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[1] Thus, although The Court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.1983) (internal citations omitted), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.[2]

***2** When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 1


statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, ... prepare an adequate defense," and determine whether the doctrine of res judicata is applicable. *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C.1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). When a party, however, files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding pro se, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A pro se litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989) (holding that a pro se party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and former 6(e) of the Federal Rules of Civil Procedure).

***3** As Magistrate Judge Baxter correctly determined, Plaintiff's complaint does not state a valid claim for which relief can be granted and lacks substance. As Magistrate Judge Baxter discussed, Plaintiff's complaint is not of substance, but rather conclusory statements and "threadbare recitals of the elements of a cause of action." *See Twombly*, 550 U.S. at 555.

Plaintiff was not denied due process under 18 U.S.C. § § 241–242 & 245 or when the agencies contacted failed to conduct an investigation. " 'There is ... no constitutional right to an investigation by government officials.' Thus, there is no constitutional violation where the government refuses to investigate a crime...." *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y.2008); *Lewis v. Gallivan*, 315 F.Supp.2d 313, 317 (W.D.N.Y.2004). Additionally, it is well established that there is no private right of action under 18 U.S.C § § 241–242 & 245. *See, e.g., Dugar v. Coughlin*, 613 F.Supp. 849, 852 n.1 (S.D.N.Y.1985); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir.N.Y.1994); *Powers v. Karen*, 768 F.Supp. 46, 51 (E .D.N.Y.1991); *Sauls v. Bristol–Myers Co.*, 462 F.Supp. 887, 889 (S.D.N.Y.1978). The Magistrate Judge correctly determined that Plaintiff has no cause of action and properly dismissed the claim because there is no constitutional right to an investigation or a private right of action under 18 U.S.C. 241, 242 & 245.

Furthermore, the doctrine of sovereign immunity bars Plaintiff's suit for damages against the CIA "[b]ecause an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir.N.Y.1994).

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 2

Having reviewed the Report, Recommendation, and Order and Plaintiff's objections thereto, the Court finds that Magistrate Judge Baxter correctly determined that Plaintiff's claims should be dismissed.

**B. Plaintiff's Amended Complaint**

In his amended complaint Plaintiff states that there has been "ongoing choreographed criminal attacks" directed at him and his family, which were arranged by "corrupt Federal agents from the CIA ." *See* Dkt. No. 6 at 3. The amended complaint states these attacks include: "efforts to harass, defame, discredit, sabotage, stalk (including gang stalking), setup, and block many inherent rights." *Id.* It also states there were efforts "to create general chaos," and "to make us feel bad." *Id.* Plaintiff includes a list of incidents and events in his amended complaint that reference occurrences from 2002 to 2011. In this list Plaintiff makes claims including but not limited to: "odd events," "bogus tickets," "chemicals or contaminnets [sic] being put in to [his] food," "sabotage [to his] own consulting/financial services business," "politics and case fixing," "electronic directed energy weapon (dew) attacks," "corrupt gravy train," and "civil rights blackout." *Id.* at 4–10. However, all of the events, occurrences, and claims lack substance and are mere conclusory statements.

***4** In his amended complaint, Plaintiff clarifies he is seeking monetary damages, injunctive monetary relief, punitive damages, and "an immediate and thorough criminal investigation and prosecutions." *Id.* at 10. Plaintiff states that he seeks mandamus relief under 28 U.S.C. § 1361, and restates he seeks relief under 18 U.S.C. §§ 241–242 & 245. *Id.* at 11.

Having reviewed the amended complaint, the Court finds that Plaintiff has failed to plausibly allege that he is entitled to any of the relief he seeks. As discussed above, Plaintiff's claims must be dismissed because they are entirely conclusory, lack an arguable basis in law or fact, and fail to state a claim on which relief may be granted. *See Ashcroft,* 556 U.S. at 678; *Neitzke,* 490 U.S. at 325; 28 U.S.C. § 1915(e)(2)(B)(ii). Additionally, as discussed above, there is no private right of action under 18 U.S.C. §§ 241–242 & 245. *See, e.g., Dugar,* 613 F.Supp. at 852 n.1. Again, there was also no constitutional violation because there is no right to an investigation. *See, e.g., Bernstein,* 591 F.Supp. at 460.

Based on the foregoing, the Court finds that Plaintiff's amended complaint fails to set forth any non-frivolous causes of action. Since permitting additional amendment would be futile, Plaintiff's amended complaint is dismissed with prejudice.

In view of the frivolous nature of Plaintiff's claims, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962); *see also Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

**IV. CONCLUSION**

After carefully considering Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's April 6, 2015 Order and Report–Recommendation is **ADOPTED;** and the Court further

**ORDERS** that Plaintiff's complaint and amended complaint are **DISMISSED with prejudice;** and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order.

**IT IS SO ORDERED.**

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Matthew R. Ehlers. (Dkt. No. 1) Plaintiff has also filed an application to proceed in forma pauperis ("IFP") and a motion for appointment of counsel. (Dkt.Nos.2, 3). For the following reasons, this court will grant plaintiff's IFP application, but will recommend dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

**I.** ***IFP Application***



***5** A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). Although plaintiff's application is technically incomplete, this court will assume for purposes of this order that plaintiff meets the financial criteria to proceed IFP. [1]

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II.** ***Complaint***

The complaint is very short and contains limited facts. (Complaint "Compl.") (Dkt. No. 1). It is divided into three "causes of action." (Compl. at 1–2). Plaintiff names the Central Intelligence Agency ("CIA"); CIA Director, David B. Buckley; [2] and Inspector General ("IG") Michael E. Horowitz. [3] Plaintiff alleges that on May 6, 2011, he sent a letter to defendant Buckley outlining facts and events which he alleges represent

> such serious and aggregious [sic] criminal activity and allegations, that it should have prompted an immediate appropriate response and internal investigation into the associated misconduct, criminal politics, corporate crime and conspiracy against rights (Title 18 section 241 and 242, 245).
>
> ***6** (Compl. at 1). Plaintiff claims that he never received a response from defendant Buckley, which plaintiff believes is a violation of due process. (*Id.*) Plaintiff claims that the failure of defendant Buckley to respond "furthered the conspiracy and attacks against [his] family and [him], [his] career, [their] rights as well as general peace and well being." (Compl. at 2).

Plaintiff's second cause of action states that he also contacted the Office of the Inspector General ("OIG") with the same information as reported to the CIA. (*Id.*) Plaintiff states that he filed an "official complaint," but he received an "extremely bizarre" response which "completely ignored the facts and events set forth and declared the matter closed without any due process or investigation whatsoever." (*Id.*)

Plaintiff's third cause of action states that he again contacted OIG on July 17, 2012, August 3, 2012 to request "and demand" an investigation into the "obvious heinous crimes," corruption, and "criminal politics." (*Id.*) Plaintiff also "voiced dismay" over the lack of proper response to his correspondence. Plaintiff states that he received a "similarly neglectful and bizarre response" from OIG on August 10, 2012. On September 4, 2012, he contacted OIG "one final time" to inform "them" of his intent to file a federal action. Plaintiff claims that there is obvious coercion, manipulation, blackmailing, bribery, case-fixing/tampering, corporate bartering, and "cronyism" at several levels. Plaintiff is not sure who is responsible for the handling or mishandling of the correspondence that he and his family have sent over the years, but he is filing this federal action, "having exhausted all other remedies." (Compl. at 2).

Plaintiff requests an "immediate and thorough criminal investigation into the crimes, individuals, entities and allegations set forth in the attached correspondence [4] as well as the associated misconduct, criminal politics and corruption." (*Id.*) Plaintiff also appears to be asking for monetary relief, due to "lack of due process and lack of enforcement." (*Id.*)



**III.** ***Venue***

**A. Legal Standards**

Proper venue in civil actions in which the defendants are officers or employees of the United States is as follows:

> (1) In general.—A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1). However, venue in actions bringing claims against defendants in their "individual capacities" is governed by 28 U.S.C. § 1391(b) which provides that

> ***7** A civil action may be brought in—
>
> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western District of Texas,* ––– U.S. ––––. 134 S.Ct. 568, 577 (2013).

**B. Application**

In this case, plaintiff has named CIA IG, David B. Buckley and DOJ IG, Michael E. Horowitz. Plaintiff's first request appears to be in the nature of injunctive or mandamus relief. He states that he is requesting "an immediate and thorough criminal investigation." (Compl. at 2). To the extent that he names the IGs in their official capacities for equitable relief, venue is proper in the Northern District of New York based upon 28 U.S.C. § 1391(e)(1)(C) because plaintiff resides in this district, and no real property is alleged to be involved in the action.

To the extent that plaintiff seeks monetary relief from either director individually [5] for constitutional [6] violations, the only basis upon which plaintiff could bring the action is *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) which allows citizens to file damage claims for constitutional violations committed by federal agents or employees, acting under color of federal law. *See Arar v. Ashcroft,* 585 F.3d 559, 571–72 (2d Cir.2009) (discussing history of *Bivens* actions).

Under section 1391(b), a claim against the defendants "individually" would normally be brought in Washington, D.C., where the alleged unconstitutional acts took place, [7] or where the defendants reside, which is unlikely the Northern District of New York. However, in a case involving multiple claims, dismissal of an improperly venued claim is not warranted if " 'it is factually related to a properly venued claim and the claims could be considered one cause of action with two grounds of relief.' " *Mikhaylov v. United States,* 29 F.Supp.2d 260, 273–74 (E.D.N.Y.2014) (quoting *United States Envtl. Prot. Agency ex rel. McKeown v. Port Auth. of N.Y. & N.J.,* 162 F.Supp.2d 173, 183 (S.D.N.Y.2001), *aff'd sub nom. McKeown v. Del. Bridge Auth.,* 23 F. App'x 81 (2d Cir.2001)).

In this case, the court will consider plaintiff's official capacity and individual capacity claims sufficiently related so that venue is proper in the Northern District of New York. Notwithstanding proper venue, this case must be dismissed.

**IV.** ***Right to Investigation***

**A. Legal Standards**

Plaintiff has no constitutional right to an investigation of any sort by government officials. *See Bernstein v. New York,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008); *Lewis v. Gallivan,* 315 F.Supp.2d 313, 317 (W.D.N.Y.2004) (citing cases). In



order for a constitutional violation to have occurred, the investigation itself must have resulted in the deprivation of a constitutional right. *Faison v. Hash,* 03–CV–6475P, 2004 WL 944523, at *6 (W.D.N.Y. April 23, 2004) (citation omitted). It is also well-settled that there is no private right of action under federal criminal statutes such as 18 U.S.C. §§ 241 or 242. *Robinson v. Overseas Mil. Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994); *Marshall v. Webster Bank, N.A.,* 3:10–CV–908, 2011 WL 219693, *8 (D.Conn. Jan. 21, 2011) (citing cases); *Vasile v. Dean Witter Reynolds, Inc.,* 20 F.Supp.2d 465, 478 (E.D.N.Y.1998), *aff'd,* 205 F.3d 1327 (2d Cir.2000) (citations omitted).

**B. Application**

***8** Plaintiff is suing defendants because the CIA and the DOJ failed to investigate or prosecute after plaintiff allegedly sent them information, reporting the harassment that he and his family have suffered due to their "whistleblowing" activities. Because plaintiff has no right, constitutional or otherwise, to an investigation or prosecution, the defendants did not deny him due process by failing to conduct either one. [8] The court would also point out that the complaint itself does not "detail" any of the specific facts of the alleged harassment. [9] He simply states that in 2011 and 2012, defendants failed to investigate his allegations. Plaintiff makes only general allegations of the corruption he wished to have investigated. He alleges "attacks against his family," conspiracies, case-fixing, bribery, corporate bartering, and the like. (Compl. at 2). Conslusory allegations are insufficient to state a constitutional claim. [10] *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

Thus, this court must recommend dismissal of plaintiff's complaint for failure to state a claim because plaintiff is not entitled to, nor can he "demand" an investigation.

**V.** ***Opportunity to Amend***

Generally, when the court dismisses a pro se complaint *sua sponte,* the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). In this case, the court finds that any attempt by the plaintiff to amend this complaint would be futile, and he would still be unable to state a federal claim.

**VI.** ***Appointment of Counsel***

**A. Legal Standards**

There is no bright-line test for determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). A number of factors must be carefully considered by the court in ruling upon the motion. The court must first assess whether the indigent's claims seem likely to be of substance. If so, the court then considers:

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986)). Each case must be decided on its own facts, and the court may consider any or all of the above factors in its determination. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D .N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

**B. Application**

Plaintiff has contacted multiple attorneys who have refused to take his case. (Dkt. No. 3). This court finds that plaintiff's complaint does not state a claim, and that he will be unable to amend to state a claim because he simply has no right to the relief that he requests. Therefore, the complaint lacks substance, and the plaintiff cannot meet the first requirement for appointment of counsel. The court need not proceed with the rest of the above analysis. Plaintiff's motion for appointment of counsel is denied.

***9** **WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING ONLY,** and it is

**RECOMMENDED,** that this action be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii) for failure to state a claim, and it is

**ORDERED,** that plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Dated: April 6, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 3637431

**Footnotes**

1 To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

2 "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915e is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer,* No. 9:07–CV–1241, 2008 WL 268215, *1 n.3 (N.D .N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial ... resources[.]" *Neitzke,* 490 U.S. at 327.

1 In his application, plaintiff states that he is currently unemployed. He then states that in the past twelve months, he has received income from "business, profession or other self employment," but does not state the source of the money, the amount received, or what he expects to receive. (Dkt. No. 2 at 1). He also states that his children "help" him by giving him $25.00 to $30.00 per week, but on the next page, he states that he supports his children by contributing $50.00 to $192.00 per week. (Dkt. No. 2 at 1–2). These omissions and inconsistencies are not explained, but as stated above, the court will find plaintiff financially eligible for the limited purpose of this Order and Report–Recommendation.

2 David Buckley is the CIA's Inspector General, not the Director of the CIA. The current Director of the CIA is John Brennan. https:// www.cia.gov/news-information/pressreleases-statements/index. Plaintiff's error does not affect this court's decision.

3 Michael E. Horowitz is the IG of the Department of Justice ("DOJ"). Plaintiff does not specify defendant Horowitz's agency in the complaint.

4 There is no correspondence attached to the complaint. There are many emails, attached to plaintiff's motion for appointment of counsel. (Dkt. No. 3). The emails appear to be excerpts of correspondence that plaintiff sent to various attorneys in an attempt to encourage counsel to take his case. In one of the emails there is a chronology of events that plaintiff sent to counsel which may further explain the conduct of which plaintiff complains. (Dkt. No. 3 at CM/ECF pp.24–29). I will discuss the facts stated in plaintiff's email below as appropriate to clarify plaintiff's claims.

5 To the extent that plaintiff seeks to name the CIA as a defendant, sovereign immunity would prevent a suit for damages directly against the agency. As a federal agency, the CIA is protected against suit by the sovereign immunity afforded to the United States. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d



Cir.1994). Absent an unequivocal waiver of that sovereign immunity in statutory text, this court would lack subject matter jurisdiction. *Adeleke v. United States,* 355 F.3d 144, 150 (2d Cir.2004); *Marakova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). The United States has not waived its sovereign immunity with respect to constitutional claims seeking money damages that are brought directly against the United States or an agency thereof. *Robinson,* 21 F.3d at 510.

6 Plaintiff claims he was denied due process as a result of the defendants' failure to investigate his allegations. (Compl. at 1–2).

7 The refusal to investigate plaintiff's claims presumably occurred in defendants' offices, neither of which are in the Northern District of New York.

8 In his motion for appointment of counsel, plaintiff also mentions the words "equal protection." (Dkt. No. 3 at 29). The Equal Protection Clause of the Fourteenth Amendment requires that the government treat all similarly situated people alike. *Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir.1997). Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.' " *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008). In his complaint, there is absolutely no indication that anyone was treated differently than plaintiff by these defendants. There is no indication that another similarly situated individual obtained an investigation by defendants under similar circumstances. Thus, to the extent that plaintiff's motion for appointment of counsel could be interpreted as in some way raising such an equal protection claim in plaintiff's complaint, the court would still recommend dismissal.

9 The court is merely noting these facts. This recommendation is based *only* upon the fact that plaintiff is not entitled to an investigation of any sort, not that he has not detailed his claims of harassment.

10 The court does note that a review of plaintiff's motion for appointment of counsel (addressed below) does contain a "timeline of events/incidents" that plaintiff sent to one attorney in an effort to obtain counsel. (Dkt. No. 3 at CM/ECF pp.24–29). The incidents described by plaintiff begin in 2002 and span occurrences in various states through 2011. The court will not recite all the facts as stated by plaintiff in his description of the relevant facts, but would only note some of the statements. In 2002, police in New Jersey engaged in "odd behavior." (Dkt. No. 3 at 24). In 2003, references were made to plaintiff that the "mob" was after him, including direct statements from coworkers at "Meow–Mix Company" bragging about their corrupt law enforcement friendships. (*Id.* at 25). In 2004, while working at the Hartz Mountain Corporation, plaintiff's supervisor bragged of CIA connections, how he can "set" plaintiff up, and bragged about "having hacked" plaintiff's email. (*Id.*) There are also allegations of occurrences between 2003 and 2008. In 2008, plaintiff claims that he was offered a job in Albany, which turned out to be a "scam," and the company closed its Albany office within two weeks after plaintiff moved there. (*Id.* at 26). Plaintiff alleged that there was "reason to believe" that this was done to plaintiff "intentionally." (*Id.*) Plaintiff mentions a hit-and-run in 2009 and a DWI in 2010 (although plaintiff concedes that he had too much to drink, but is convinced that "they seemed to be ready for it." (*Id.* at 27). Notwithstanding all these incidents, plaintiff never specifies who may be responsible or to what "criminal group" he is referring. (*Id.* at 28). Even including all the facts as stated in plaintiff's motion for appointment of counsel, his rights would not have been violated when the CIA or any of the three defendants refused to investigate his "case" in 2011 and 2012.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.





2018 WL 816846
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Agnes GEORGES, Plaintiff,
v.
Joel HATSER, Advisor Lawyer; Joseph Ciavanitti, US Attorney Lawyer; Kurt Bratten Brian, Bar Association 518-445-7691, Defendants.

No. 1:17-CV-1243 (GTS/CFH)
|
Signed 01/02/2018

**Attorneys and Law Firms**

Agnes Georges, Albany, NY, pro se.

**REPORT-RECOMMENDATION AND ORDER** [1]

Christian F. Hummel, U.S Magistrate Judge

***1** Plaintiff pro se Agnes Georges commenced this action on November 13, 2017 with the filing of a complaint. Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, plaintiff filed a Motion to Proceed In Forma Pauperis ("IFP"). Dkt. No. 2. Plaintiff also filed a Motion for Appointment of Counsel. Dkt. No. 3. After reviewing plaintiff's IFP application, Dkt. No. 2, the undersigned determines that plaintiff qualifies to proceed IFP for purposes of filing. [2]

**I. Initial Review**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action. As plaintiff is representing herself, the Court is to consider her claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 Fed.Appx. 282, 286 (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

**II. Plaintiff's Complaint**

Plaintiff's complaint in this action consists of a form civil rights complaint. Plaintiff states that each named defendant, who she identifies as lawyers, "refuse to help me." Compl. at 1-2. It appears that plaintiff contacted all of these defendants for some form of assistance, and was denied such assistance. See id. She suggests that these defendants are aware of a conspiracy involving Levy Rathner, "a US Gov Commander Chief" and the police, but defendants "prefer to protect him not me." Id. at 2. It appears that plaintiff sought to file a report with police about certain crimes committed against her, but was not allowed to file a report or provide an order of protection. Id. at 4. Plaintiff has not named any police officer or police department as a defendant in this action.

As indicated above, plaintiff's complaint makes unexplained references to "Levy Rathner," who is not a named defendant, and also refers to a "crime" or a "network," "corruption, stealing cards, use fake ID, fake credit card, steal my identity, use them for somebody else, a damage for life." Compl. at 3. Plaintiff provides that she "feel[s] unsafe wherever I go, federal police keep follow [sic] me, I am an [sic] spy." Id. at 4. However, plaintiff does not explain any of these allegations. Her complaint does not detail to any degree how the named defendants were personally involved in these alleged wrongs. Moreover, the complaint does not explain how any of the named defendants violated any federal law or any of her constitutional rights. To the extent that plaintiff suggests that she sought legal assistance from the named defendants, and that defendants either declined to represent her or declined to prosecute certain alleged crimes, a prosecutor's decision not to prosecute [3] a case [4] or a lawyer's decision not to represent an individual [5] does not amount to a violation of the law. Id. at 3. Plaintiff's complaint also does not provide a clear demand for relief. Id. at 6.

***2** Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and

determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 requires:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, especially with respect to a pro se complaint, the court generally affords the plaintiff leave to amend the complaint to state a nonfrivolous claim. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although detailed allegations are not required, the complaint must still include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Id. at 555-56. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). In reviewing a pro se complaint, the Court must "liberally construe [the] pleadings," and interpret the complaint to "raise the strongest arguments it suggests." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). However, conclusory allegations are not sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

*3 Plaintiff's complaint does not comply with the pleading requirements, and it is not possible, for the Court to assess how any named defendant was personally involved in any violation of federal law, what federal laws or constitutional rights she alleges were violated, or whether this action is properly in federal court. See, e.g., Williams v. Smith, 781 F.2d 319, 323 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation and internal quotation marks omitted). Ultimately, plaintiff has not provided sufficient facts for this Court to assess plaintiff's complaint, as plaintiff has given no context for her general statements about violations of the law by parties who are not named in the complaint, nor explanations as to how her constitutional rights were violated by either these unnamed parties or by the named defendants. See Compl.

The undersigned further recommends that the complaint be dismissed with prejudice. Although the district court generally is to afford a pro se plaintiff at least one opportunity to amend prior to outright dismissal, Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015), it is clear to the undersigned that any attempt by plaintiff to amend her complaint would be futile. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d



Cir. 2000). Plaintiff's complaint is clearly "a case[ ] in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). Plaintiff has submitted at least seven other actions in this Court, many of which were submitted on the same day, and all of these complaints have either been dismissed for failure to comply with pleading standards or a recommendation for dismissal is pending for review before the assigned District Judge.[6] Further, in matters where plaintiff was given an opportunity to amend her complaint, those cases were eventually dismissed for failure to properly comply with the Court's order. See Georges v. Duchene (DNH/DJS), 17-CV-86, Dkt. No. 9; Georges v. Schneiderman (BKS/DJS), 17-CV-524, Dkt. No. 16. Even in light of the special solicitude to be accorded to pro se plaintiffs' complaints, "courts cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations[.]" Giamattista v. Am. Airlines, Inc., 584 Fed.Appx. 23, 25 (2d Cir. 2010) (summary order).

Finally, as the undersigned is recommending dismissal of plaintiff's complaint, it is also recommended that her motion for appointment of counsel be denied as moot. See Leftridge v. Connecticut State Trooper Officer No. 1283, 640 F.3d 62, 68 (2d Cir. 2011).[7]

### III. Anti-Filing Injunction Order

*4 As indicated herein, plaintiff has commenced at least seven actions in this Court in the past year, several of which were filed in November 2017. See n.6, supra. All of plaintiff's cases have either been dismissed or are pending with a recommendation for dismissal and all appear to involve similar unintelligible claims about a "network," Levy Rathner, and unspecified and/or crimes committed against herself and her family. In the cases where plaintiff was given an opportunity to amend, she did not submit any responsive or intelligible filing that adequately addressed the Court's concerns.

"District courts possess the authority to issue injunctive sanctions under Rule 11." Colida v. Nokia Inc., No. 07 CIV.8056 KMW HBP, 2008 WL 4517188, at *13 (S.D.N.Y. May 6, 2008), report and recommendation adopted as modified, No. 07 CIV 8056 KMW HBP, 2008 WL 4449419 (S.D.N.Y. Sept. 29, 2008), aff'd, 347 Fed.Appx. 568 (Fed. Cir. 2009) (quoting In re Martin-Trigona, 737 F.2d 1254, 1261-62 (2d Cir. 1984)). "Federal courts have ... the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." Martin-Trigona, 737 F. Supp. 2d at 1261. The Court must consider the following factors in drtermining whether to issue an anti-filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Safir v. U.S. Lines Inc., 792 F.2d 19, 24 (2d Cir. 1986). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Id. at 24.

The first factor, plaintiff's history of litigation, weighs in favor of granting the anti-filing injunction. All of the lawsuits plaintiff has commenced in this District appear to be reiterations of the same claims. Although the complaints in each case are very difficult to interpret, it can be gathered that in each complaint, plaintiff seeks review of issues related to a "network" that appears to be a conspiracy to commit crimes against her and spy on her. However, in each case, the assigned Judge has determined that plaintiff's complaint failed to meet the pleading requirements. See n.6, supra. Further, plaintiff has been unable to set forth claims that meet basic pleading standards even where plaintiff has been given an opportunity to amend. See, e.g., Georges v. Duchene (DNH/DJS), 1:17-CV-86; Georges v. Schneiderman (BKS/DJS), 1:17-CV-524. In addition, although not dispositive of the issue, it is noteworthy that plaintiff has also attempted to commence at least one similar action in another district, and that action was dismissed without prejudice as the complaint



"fails to meet the minimal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure." See Georges v. Doctor Dalmacy, 17-CV-00017 (D.D.C. filed Jan. 4, 2017).

As to the second factor, it cannot be said that plaintiff has a good faith motive in pursuing this litigation. Although plaintiff is proceeding pro se, and it appears she experiences difficulty in complying with this Court's pleading standards, this Court has repeatedly explained that her complaints do not supply sufficient coherent facts or claims for the Court to assess her claim, yet she continues to file very similar complaints with the same defects. Safir, 792 F.2d at 24. Although plaintiff is not represented by counsel, the third factor this Court is to consider, this factor does not weigh against granting an injunction, as it is unlikely that even if represented, plaintiff would be able to state a claim. Safir, 792 F.2d at 24. As for the fourth factor, plaintiff has not caused "needless expense to other parties," as plaintiff's complaints have not been served on the defendants; however, plaintiff has "posed an unnecessary burden on the courts and their personnel," as she has filed multiple actions involving what appears to be the same or similar claims, and has not been able to amend her complaint or properly comply with Court orders in those cases, despite being provided with such opportunities. As to the final factor, it does not appear to the undersigned that lesser sanctions would suffice, as plaintiff does not appear to understand, or perhaps have regard for, the Federal Rules of Civil Procedure, the Local Rules of the Northern District of New York, or the basic facts necessary to provide a sufficient background of her claims before this Court. Id. The undersigned is of the belief that plaintiff will continue to file frivolous lawsuits about the same matters. Accordingly, it is recommended that an anti-filing injunction be issued against this plaintiff requiring plaintiff to obtain permission of the Court prior to filing any actions in this District.

*5 Although anti-filing injunctions are to be narrowly tailored, because plaintiff repeatedly names a variety of defendants, providing little or any information about how defendants are personally involved in the alleged wrongdoings, it is unlikely that attempting to tailor an anti-filing injunction that would be limited to certain claims or defendants would be of utility. Accordingly, it is recommended that the anti-filing injunction enjoin plaintiff from commencing *any* new action in this district without first obtaining leave of the Court. Finally, as a litigant must be given an opportunity to be heard before an anti-filing injunction is entered against her, it is also recommended that the Court provide such opportunity to plaintiff. See Moates v Barkley, 147 F.3d 207, 208 (1998).

### IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED** for purposes of filing only; and it is

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **dismissed sua sponte** *with prejudice*, and it is

**RECOMMENDED**, pursuant to 28 U.S.C. § 1651(a), this Court issue an Anti-Filing Injunction, ordering that plaintiff be enjoined from further filings in the Northern District of New York without leave of Court; and it is

**ORDERED**, that plaintiff's Motion for Appointment of Counsel (Dkt. No. 3) be **DENIED** as moot; and it is

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 816846



**Footnotes**

1 This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

2 Although she has been granted IFP status in connection with filing this complaint, plaintiff will still be required to pay any fees she may incur in this action.

3 " '[P]rosecutors are absolutely immune from liability under § 1983' in matters involving the prosecution—or failure to prosecute—individuals." Wagner v. Mollen, 5:05-CV-1290 (NAM/DEP), 2005 WL 2592417, at *1 (N.D.N.Y. Oct. 13, 2005) (quoting Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994)).

4 Plaintiff may arguably be arguing that one of the named defendants, who she identified as a "US Attorney Lawyer," improperly declined to prosecute certain unnamed persons or entities.

5 Plaintiff does not contend that she paid any of these attorneys a retainer fee to represent her as her attorney.

6 See Georges v. Rathner (DNH/DJS), 1:17-CV-1276 (filed Nov. 13, 2017); Georges v. Duchene (DNH/DJS), 1:17-CV-86 (dismissed for failure to comply with Court's Order) (filed Jan. 26, 2017); Georges v. Schneiderman (BKS/DJS), 1:17-CV-524 (dismissed for failure to state a claim) (filed May 11, 2017); Georges v. Gov. Tower VA, 1:17-CV-1244 (TJM/ATB) (filed Nov. 13, 2017); (recommendation pending for dismissal with prejudice for failure to state a claim and frivolity); Georges v. Rathner (BKS/DJS) 1:17-CV-1245 (recommendation for dismissal with prejudice pending) (filed Nov. 13, 2017); Georges v. Cuomo (TJM/DJS), 1:17-CV-1247 (recommendation for dismissal with prejudice pending) (filed Nov. 13, 2017); Georges v. Rathner, 1:17-CV-1246 (DNH/CFH)(recommendation for dismissal with prejudice pending)(filed Nov. 13, 2017).

7 It is also noted that plaintiff has not provided evidence of any efforts she has taken in an attempt to obtain counsel on her own from either the public or private sectors. Terminate Control Corp. v. Horowitz, 28 F.3d 1135 (2d Cir. 1994). She has further failed to demonstrate that her claims are likely to be of substance—a consideration this Court must weigh in assessing requests for appointment of counsel. Leftridge v. Connecticut State Trooper Officer No. 1283, 640 F.3d 62, 68 (2d Cir. 2011).

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 8230677
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Agnes GEORGES, Plaintiff,
v.
Levy RATHNER and Felix Phillipe, Defendants.

No. 1:17-CV-1246 (DNH/CFH)
|
Signed 12/22/2017

**Attorneys and Law Firms**

Agnes Georges, Baldwin, NY, pro se.

**REPORT-RECOMMENDATION AND ORDER**[1]

Christian F. Hummel, U.S. Magistrate Judge

***1** Plaintiff pro se Agnes Georges commenced this action on November 13, 2017 with the filing of a complaint. Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, plaintiff filed a Motion to Proceed In Forma Pauperis ("IFP"). Dkt. No. 2. Plaintiff also filed a Motion for Appointment of Counsel. Dkt. No. 3. After reviewing plaintiff's IFP application, Dkt. No. 2, the undersigned determines that plaintiff qualifies to proceed IFP.[2]

**I. Initial Review**

**A. Legal Standards**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting her to proceed with her action. As plaintiff is representing himself, the court must afford plaintiff special solicitude; thus, it is to consider her claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 Fed.Appx. 282, 286 (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

***2** FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it



be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

**B. Plaintiff's Complaint**

Plaintiff's complaint in this action is written on a form for complaints filed pursuant to the Americans with Disabilities Act ("ADA"). See Compl. Plaintiff's complaint is a difficult to follow stream of consciousness. See id. Although plaintiff checks the boxes on the form complaint that her claims involve a failure to employ, termination of employment, and retaliation, it is entirely unclear how defendants discriminated against her on the basis of a disability. Plaintiff does not identify that she is a "person with a disability within the meaning of the ADA". Id. at 3; Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003). Further, she does not contend that she was ever employed by any of the named defendants or explain how she suffered an adverse employment action due to her disability at the hands of defendants. Id. Moreover, plaintiff indicates, through checking boxes on the Civil Cover sheet, that her case involves several additional areas of the law, but does not explain how her case involves any of these areas of the law. Dkt. No. 1-1. Plaintiff checks the boxes indicating that her lawsuit also involves: (1) contract: recovery of defaulted student loans; (2) personal injury: assault, libel, slander, motor vehicle, motor vehicle product liability, health care/pharmaceutical personal injury; (3) personal property: other fraud, truth in lending; (4) civil rights: other civil rights, employment, education; (5) labor: labor/management relations, Family and Medical Leave Act; (6) Bankruptcy: Appeal 28 USC 158, Withdrawal 28 USC 157; and (7) Other Statutes: False Claims Act, Racketeer Influenced and Corrupt Organizations, Cable/Sat TV, Environmental Matters, Freedom of Information Act. Id. at 1.

Plaintiff's complaint completely fails to meet the pleading guidelines of Federal Rules of Civil Procedure 8 and 10. Plaintiff makes unexplained references to a "network" which appears to be involved in a conspiracy against her to improperly label her as HIV positive, cause her to be dismissed from school, suspend her passport to her native country, and commit various crimes against her. Id. at 3-4. Plaintiff names as defendants in the caption Levy Rathner and Felix Phillpe, but lists as defendants within the form complaint "Police Headquarter two of them" and "212-777-777 PC Company in NY City." Compl. at 2. However, plaintiff does not explain how any of these defendants are personally involved in any violation of a federal law or right. Further, plaintiff sets forth no cognizable avenue for relief. In her prayer for relief, plaintiff makes states:

> I will be back to social service to see what they have on file for me, break my disability request, go back to work even if I don't feel like it until I hear from US Attorney/District in Albany, you know why is because all crime made in Albany, NY, unemployment, child maltreatment, Discrimination, Divorce + elses.

***3** Id. at 4. As plaintiff's complaint fully fails to permit this Court to assess the nature of her claims, it is the undersigned's opinion that it must be dismissed.

Plaintiff has commenced at least seven other actions within this district in the last year. The undersigned's review of those cases reveal that all of them have either been dismissed or recommendations for dismissal are pending.[3] In addition, review of these cases suggest that they are all about the same or related matters, as they appear to reference similar defendants, discuss "networks," and defendants committing various crimes against plaintiff and/or her family. See n.3, supra. Thus, although pro se plaintiffs generally are to be accorded an opportunity to amend prior to outright dismissal, such opportunity is not recommended here, as it is clear from plaintiff's complaint and her previous filings, that any attempt at an amended complaint would be futile. Accordingly, it



is recommended that plaintiff's complaint be dismissed with prejudice, and that her motion for appointment of counsel (dkt. no. 3) be denied as moot.

**II. Conclusion**

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED** for purposes of filing only; and it is

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **dismissed sua sponte with prejudice**, and it is

**ORDERED**, that plaintiff's Motion for Appointment of Counsel (Dkt. No. 3) be **DENIED** as moot; and it is further

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 8230677

**Footnotes**

1 This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

2 Plaintiff is advised that, despite being granted IFP status, she will still be required to pay any costs she incurs in this action, such as copying fees or witness fees.

3 See Georges v. Rathner (DNH/DJS), 1:17-CV-1276; Georges v. Duchene (DNH/DJS), 1:17-CV-86 (dismissed for failure to comply with Court's Order); Georges v. Schneiderman (BKS/DJS), 1:17-CV-524 (dismissed for failure to state a claim); Georges v. Gov. Tower VA, 1:17-CV-1244 (TJM/ATB); (recommendation pending for dismissal with prejudice for failure to state a claim and frivolity); Georges v. Rathner (BKS/DJS) 1:17-CV-1245 (recommendation for dismissal with prejudice pending); Georges v. Cuomo (TJM/DJS), 1:17-CV-1247 (recommendation for dismissal with prejudice pending); Georges v. Hatser, 1:17-CV-1242 (GTS/CFH) (recommendation for dismissal with prejudice pending).

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 570605
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Sherell Ann HINES, Plaintiff,
v.
UNITED STATES of America; Monroe County Government; Municipality Maricarola Center; Monroe Developmental Center; Sarah Sanders, Law Guardian; Minner, Law Guardian; Lamar Jackson, Law Guardian; Unity Health Center, Defendants.

No. 6:19-cv-06837(MAT)
|
Signed 02/05/2020

**Attorneys and Law Firms**

Sherell A. Hines, Rochester, NY, pro se.

**DECISION and ORDER**

HON. MICHAEL A. TELESCA, United States District Judge

**I. Introduction**

***1** Pro se plaintiff Sherell Ann Hines ("Hines") has filed a complaint (Docket No. 1), a motion for leave to proceed in forma pauperis (Docket No. 2), and a motion for miscellaneous relief. For the reasons discussed below, leave to proceed in forma pauperis is granted, but the complaint is dismissed with prejudice as frivolous. The motion for miscellaneous relief is denied as moot in light of the dismissal of the complaint.

**II. Motion to Proceed In Forma Pauperis**

"The decision of whether to grant a request to proceed in forma pauperis is left to the District Court's discretion under [28 U.S.C.] § 1915." Fridman v. City of New York, 195 F. Supp.2d 534, 536 (S.D.N.Y. 2002) (citing Potnick v. Eastern State Hospital, 701 F.2d 243 (2d Cir. 1983); other citations omitted). The Court finds that Hines's supporting affirmation sufficiently establishes her inability to pay for the prosecution of her case. Accordingly, Hines's motion for in forma pauperis status is granted.

**III. Screening of the Complaint under Section 1915(e)(2)**

Because the Court has granted in forma pauperis status to Hines, it must review her complaint under 28 U.S.C. § 1915(e)(2)(B) ("Section 1915(e)(2)").

**A. Section 1915(e)(2) Standard**

In enacting the original in forma pauperis statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)). To foreclose this type of abusive litigation, Congress authorized federal courts to dismiss a complaint filed by a plaintiff who has received in forma pauperis status if the courts are satisfied that the action is frivolous or malicious. Id.; see also 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) (Under Section 1915(e)(2), the Court must conduct an initial screening of a pro se litigant's complaint and must it if it is "frivolous or malicious"; "fails to state a claim upon which relief may be granted"; or "seeks monetary relief from a defendant who is immune from such relief."). The screening obligation "applies equally to prisoner and nonprisoner in forma pauperis cases." S.B. ex rel. J.B. v. Suffolk Cty., No. 13-CV-446 JS AKT, 2013 WL 1668313, at *1 (E.D.N.Y. Apr. 17, 2013) (citing Awan v. Awan, No. 10–CV–0635, 2010 WL 1265820, at *1 (E.D.N.Y. Mar. 26, 2010)); Burns v. Goodwill Indus., No. 01–CV–11311, 2002 WL 1431704, at *2 (S.D.N.Y. 2002).

Section 1915(e), which permits dismissal of a complaint on the basis that it is frivolous, gives "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke, 490 U.S. at 327. "An action is 'frivolous' for § 1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.' " Montero v. Travis, 171 F.3d 757, 759 (2d Cir. 1999) (quoting Neitzke, 490 U.S. at 325). A claim is considered factually frivolous where "the facts alleged are 'clearly baseless,' ... a category encompassing allegations that are 'fanciful,' ... 'fantastic,' ... and 'delusional[.]' " Denton, 504 U.S. at 32–33 (citing Neitzke, 490 U.S. at 325, 327–28). An action can be said to have no arguable legal basis when, for example, the defendant is immune from suit or when the plaintiff claims a violation of a legal interest which clearly does not exist. Neitzke, 490 U.S. at 327.



***2** The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. Neitzke, 490 U.S. at 328.

**B. Summary of the Complaint's Allegations**

Hines describes the "nature of suit" as including premeditated murder, child rape, child molestation, personal injury through medical malpractice, as well as identity theft and discrimination. She accuses all of the defendants of taking custody of her 13 year-old son based on a crime he never committed, and then murdering him while he was in their custody.

For her First Claim, Hines asserts

> Child Slave Sex Acts Murder of Dale E Cooper Abuse & Rape Violation of Civil Rights while in custody of Monroe County Developmental Service Medical Malpractice & injury through health care provider Strong Hospital and Injury to Sherell Hines. Sara Sanders law guardian Chuck Schumer Lamar Jackson Law Guardian Maricariola Center Monroe Development Service Center Minner Law Guardian Strong Hospital Monroe Health Unity Monroe Health Services Hid Records of AB Sues Child molestation Rape Malpractice Child Molestation Hid Whereabouts of Dale E Cooper to this Date. Child Sex Sex with a minor or Incapacitated Person Premeditated Murder False Imprisonment Identity Theft.

Complaint (Docket No. 1), pp. 5-6 of 8. There are no dates specified as to when the foregoing acts allegedly occurred.

For her Second Claim, Hines states

> Malpractice Misrepresentation of Identity false imprisonment assult [sic] sex act towards minor Incarceration wrongful [illegible] without any consent from parent Sherell Hines the municipality took my son when he was 13 yr old and my family has not seen him since and he was atustic [sic] and unable to defend himself verbally I have a court order to visit with him 1 a week the Monroe County Government officials murdered my son and cover up for personal social and financial gain.

Complaint (Docket No. 1), p. 6 of 8.

**C. The Complaint Is Factually Frivolous**

The Supreme Court "has repeatedly held that the federal courts are without power to entertain claims that are 'so attenuated and unsubstantial as to be absolutely devoid of merit[,]' " Hagans v. Lavine, 415 U.S. 528, 536–37 (1974) (quotation omitted), " 'wholly insubstantial,' " id. (quotation omitted); 'obviously frivolous,' " id. (quotation omitted); " 'plainly insubstantial,' " id. (quotation omitted); "or 'no longer open to discussion[.]' " id. (quotation omitted). No federal question jurisdiction exists "when the complaint is 'patently insubstantial[,]' " Best v. Kelly, 39 F.3d 328, 330 (D.C. Cir. 1994) (quoting Neitzke v. William, 490 U.S. 319, 327 n.6 (1989); other citation omitted), in other words, " 'essentially fictitious.' " Id. (quoting Hagans, 415 U.S. at 536–37). Claims that are "essentially fictitious" include those that allege "bizarre conspiracy theories, any fantastic government manipulations of [the plaintiff's] will or mind [or] any sort of supernatural intervention." Id. at 330 (footnote omitted).

The Court is mindful that complaints filed by pro se litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, the Court has the discretion to decide whether a complaint is frivolous, Neitzke, 490 U.S. at 327, and such finding is appropriate where the facts alleged are irrational or wholly incredible. Denton, 504 U.S. at 33.

***3** As was the case with her previous complaint, the instant complaint consists of incoherent, bizarre allegations about violent crimes perpetrated by a host of entities and individuals against her son during a family court proceeding. The Court again concludes that what factual contentions are



identifiable are "fantastic or delusional," Neitzke, 490 U.S. at 328. Accordingly, dismissal of the complaint as factually frivolous is appropriate. See Cortez v. Alsabah, No. CIV.A. 12 1874, 2012 WL 5941386, at *1 (D.D.C. Nov. 19, 2012) (finding complaint to be "baseless" and "wholly incredible" where pro se plaintiff alleged that defendants " 'have 'plotted against the lives of the plaintiff and her children, to steal the plaintiff's children from her, and to use her children ... to get billions of dollars in wealth from the father, and to get control of the billions of dollars in wealth the father has for his children....' "); Awan v. Awan, No. 10-CV-0635 JSARL, 2010 WL 1265820, at *2 (E.D.N.Y. Mar. 26, 2010) (dismissing as factually frivolous seventy-seven paragraph complaint, comprised largely of conclusory and repetitive allegations, that plaintiff's ex-wife's "murder attempt" of his daughter has caused him severe mental anguish such that his work on the U.S. Excalibur was interrupted).

**D. Alternatively, the Complaint Fails to State a Claim on Which Relief May Be Granted**

**1. No Cause of Action Under 42 U.S.C. § 1983 Against Monroe County**

"Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983; citing Maine v. Thiboutot, 448 U.S. 1, 4 (1980)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)). "In order to prevail on a section 1983 claim, the plaintiff must show that the defendant's conduct deprived him of a federal right." Id. (citations omitted). It is well established that " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quotation omitted).

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court held that "[u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' 129 S. Ct. at 1949. While "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion [s]' devoid of 'further factual enhancement.' " Id. (quoting Twombly, 550 U.S. at 557).

Claims for municipal liability under Section 1983 are determined with reference to Monell v. Department of Social Services, 436 U.S. 658 (1978). "Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).

Therefore, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. Only when the municipality, through the "execution of [its] policies or custom," actually deprives an individual of his constitutional rights, is it liable for the injury. Id. at 694.

***4** As an initial matter, Hines has not identified the constitutional rights of which she was deprived by the County. Moreover, Hines has not made "factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." Missel v. Cty. of Monroe, 351 Fed. App'x 543, 545 (2d Cir. 2009) (citing Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008)).

In contrast to her previous complaint, where Hines failed to provide a hint as to the identities of any of the employees, representatives, or officials of Monroe County and the United States she seeks to hold liable, she here has provided some names (U.S. Senator Chuck Schumer and law guardians Sarah Sanders, Lamar Jackson, and F/N/U Minner). However, she has failed to set forth any specific, non-frivolous allegations about what they allegedly did that was unlawful. A complaint that fails to allege the defendants' personal involvement is "fatally defective on its face." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotations and citation omitted); see also Costello v. City of Burlington,

632 F.3d 41, 48–49 (2d Cir. 2011) ("The complaint does not allege facts establishing the personal involvement of any of the individual Defendants.... This defect is fatal to [plaintiff's] claim under 42 U.S.C. § 1983."). In sum, Hines's allegations consist of vague, conclusory, and wholly incredible assertions that the named individuals and entities harmed her and committed a host of violent crimes against her son. They are plainly insufficient to meet the "plausibility" standard set forth in Iqbal and Twombly.

**2. No Cause of Action Against the United States**

**a. Any Constitutional Tort Claims Against the United States Are Barred**

In her complaint, Hines also names the United States as a defendant, apparently because Monroe County is located within the United States. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (citations omitted). "Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." Robinson v. Overseas Mil. Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).

The "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941); accord Meyer, 510 U.S. at 475 (citing United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction")). The United States has not consented to be sued based on claims that its employees or officials have committed constitutional violations. See Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994) (finding that the "district court correctly held that the United States has not waived its sovereign immunity with respect to claims that its employees have committed constitutional torts"). Because the United States has not waived its sovereign immunity by consenting to be sued, the Court lacks jurisdiction over any allegations by Hines that the United States committed constitutional torts. The United States must be dismissed as a defendant.

**3. Any Non-Constitutional Tort Claims Are Barred**

***5** Although Hines has not identified the Federal Tort Claims Act ("FTCA") as the basis for her lawsuit, the Court has construed her pro se complaint liberally. The FTCA provides a limited waiver of the United States' sovereign immunity, and the United States may be liable for certain non-constitutional torts committed by Federal employees. See 28 U.S.C. § 2671, et seq. "The intentional tort exception in 28 U.S.C. § 2680(h) preserves the government's sovereign immunity for 'assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.' " Gonzalez v. United States, No. 16-CV-1494(KAM), 2018 WL 1597384, at *7 (E.D.N.Y. Mar. 31, 2018) (quoting 28 U.S.C. § 2580(h)). Hines accuses the United States of committing various intentional torts, and therefore her complaint is barred, on its face, by the intentional torts exception in the FTCA.

In addition, Hines's claims under the FTCA warrant dismissal because there is no indication that she exhausted her administrative remedies, as required by the statute. As a corollary to its waiver of sovereign immunity, the FTCA has express, strict administrative exhaustion requirements that cannot be waived. Celestine v. Mt. Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). "[T]he United States has not consented to be sued on a tort claim unless the claim was first presented to the appropriate federal agency in writing, was so presented within two years after the claim accrued, and specified the amount of the claim in writing." Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 719–20 (2d Cir. 1998).

**E. Leave to Amend the Federal Claims Is Denied**

In general, "a pro se plaintiff who is proceeding in forma pauperis should be afforded [an] opportunity ... to amend [her] complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, than an amended complaint would succeed in stating a claim." Gomez v. United States Auto. Assoc. Fed. Savs. Bank, 171 F.3d 794, 796 (2d Cir. 1999). The Second Circuit has stated that when "the problem with [a plaintiff]'s causes of action is substantive[,]" and "better pleading will not cure it[,]" "[r]epleading would thus be futile." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). In such a

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 4

circumstance, "a futile request to replead should be denied." Id. (citing Hunt v. Alliance N. Am. Gov't Income Trust, 159 F.3d 723, 728 (2d Cir. 1998)).

As discussed above, and as was the case with the previous complaint, the defects in Hines's current complaint are substantive insofar as the complaint rests solely on factually frivolous, wholly incredible allegations. Because such allegations cannot be ameliorated by better pleading, leave to replead is denied as futile. See Miller v. Kohl's Dep't Stores, Inc., No. 17-CV-6081-CJS, 2017 WL 4890199, at *4 (W.D.N.Y. Oct. 30, 2017) (finding that "any attempt to replead would be futile" where "the factual allegations of discrimination in the complaint are plainly delusional") (citing Igarashi v. Skulls & Bones, 438 F. App'x 58 (2d Cir. 2011)) (unpublished opn.) ("Even a well-pleaded complaint may be dismissed as factually frivolous 'if the sufficiently well-pleaded facts are clearly baseless—that is, if they are fanciful, fantastic, or delusional.' ") (quoting Gallop v. Cheney, 642 F.3d 364, 368 (2d Cir. 2011)).

**IV. Conclusion**

***6** For the foregoing reasons, the motion to proceed in forma pauperis (Docket No. 2) is granted. It is further ordered that the complaint (Docket No. 1) is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) (i), (ii), and (iii). The motion for miscellaneous relief (Docket No. 3) is denied as moot in light of the dismissal of the complaint. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this decision and order would not be taken in good faith. Therefore, in forma pauperis status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 570605

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 5



2019 WL 6841952
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Joseph KASTNER, et al., Plaintiffs,
v.
TRI STATE EYE, et al., Defendants.

19-CV-10668 (CM)
|
Signed 12/13/2019

**Attorneys and Law Firms**

Joseph Kastner, Monticello, NY, pro se.

John and Jane Doe 1-20, pro se.

ORDER TO AMEND

COLLEEN McMAHON, Chief United States District Judge:

***1** Plaintiff brings this *pro se* action, for which the filing fee has been paid, alleging that Defendants violated his rights. For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within thirty days of the date of this order.

**STANDARD OF REVIEW**

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**BACKGROUND**

Plaintiff brings this 154-page, single-spaced complaint, most of which contains bold text in all caps, against: (1) Tri State Eye; (2) Crystal Run Healthcare; (3) Coverys RFG, Inc.; (4) Douglas Sansted; (5) Feldman, Kleidman, Coffey & Sappe; (6) Orange Regional Medical Center (OMRC); (7) New York State; (8) Town of Newburgh New York Police; (9) Town of Middletown New York Police Department; (10) "The US Attorney"; (11) "The FDA"; (12) "USA"; (13) "The EEOC"; (14) "The SSA-USA"; (15) "The US Inspector General"; (16) "The US Department of Justice"; (17) "The US Department of Health & Human Services "HHS-HIPAA" Office of Civil Rights Enforcements"; (18) "The US Department of the Attorney General Office of Civil Rights Enforcements"; and (19) CIGNA.

Plaintiff asserts that he is

> innocent of all [his] non violent past frivolous offenses and will prove it on examination: if asked: about how NYS, "SSA," et al. and others railroaded me all my life to ruin my name, because; I complain and protect, But some of the doctors in this case: are guilty of my physical harm and are violent criminal offenders: who are on the loose and are: a front: for their employers,' not including other employers and/in their 49 other states: through; proven not needed: blinking laser shots to myself and some of the entire trusted public in the USA.

(ECF No. 1, at 4.)[1] He brings:

> claims for: malpractices, negligence, sheer greed by their 5 referred doctor's for, lying, cover-ups, threats, false truths (false medical histories,) lies, and assaults from each laser short that is {un-necessary that is a proven criminal assault} and conspiracy and

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 1

> the misuse/abuse of laser eye surgery equipment at ORMC with FDA violations, holding binding/blinding a patient against their/my will and wishes. Failure to inject and administer proper needed eye medicines/and future litigations. 30 day expired notice to cure violations and future laser changed procedures/laws are needed: attempted 2019 insurance fraud/extortion botched false NYS arrests for: Joseph rec Kastner and also for 2018.

*2 (*Id.*) In short, Plaintiff asserts that a doctor associated with ORMC "destroyed [his] left eye's eye sight." (*Id.* at 35.)

Plaintiff filed two prior cases in this Court where he sued multiple unrelated defendants. *See Kastner v. State Farm Mutual Automobile Co. Corp.*, ECF 1:15-CV-2757, 8 (S.D.N.Y. Oct. 22, 2015); *The Homeless Patrol, Kastner v. Joseph Volpe Family*, ECF 1:09-CV-3628, 63 (S.D.N.Y. July 22, 2010). In the 15-CV-2757 action, Judge Loretta A. Preska noted that Plaintiff failed to comply with the pleading requirements under Rule 8 and Rule 20 of the Federal Rules of Civil Procedure because he (1) failed to make a short and plain statement showing he was entitled to relief, and (2) asserted unrelated claims against multiple defendants. Judge Preska granted Plaintiff leave to amend to cure this deficiency, but in his amended complaint, he failed to comply with Rule 8 and Rule 20, naming multiple defendants and asserting unrelated claims. Judge Preska dismissed the amended complaint for failure to state a claim.

### DISCUSSION

The Court's "special solicitude" for *pro se* pleadings, *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994), has its limits, because *pro se* pleadings still must comply with Rule 8(a) of the Federal Rules of Civil Procedure. Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint's statement of claim should not be prolix (lengthy) or contain unnecessary details. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (noting that under Rule 8(a)(2), the statement of claim "should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage' ") (citation omitted); *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (holding that complaint did not comply with Rule 8 because "it contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"); *see also The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFL-CIO v. Tightseal Constr. Inc.*, No. 17-CV-3670 (KPF), 2018 WL 3910827, at *12 (S.D.N.Y. Aug. 14, 2018) ("[C]ourts in this Circuit have dismissed complaints that are unnecessarily long-winded, unclear, or conclusory.")

Under Rule 20 of the Federal Rules of Civil Procedure, a plaintiff may not pursue unrelated claims against multiple defendants. *See* Fed. R. Civ. P. 20(a)(2) ("Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the *same transaction, occurrence, or series of transactions or occurrences*; and (B) any question of law or fact *common to all defendants* will arise in the action.") (emphasis added); *e.g.*, *Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) ("Case law makes clear that '[i]n the absence of a connection between Defendants' alleged misconduct, the mere allegation that Plaintiff was injured by all Defendants is not sufficient [by itself] to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a).' ") (alterations in original) (quoting *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009)).

*3 Generally, district courts must construe *pro se* complaints liberally, but "even a *pro se* litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim." *Carmel v. CSH & C*, 32 F. Supp. 3d 434, 436 (W.D.N.Y. 2014).

Plaintiff fails to make a short and plain statement showing that he is entitled to relief. Rather, he submits an unreadable 154-page complaint, apparently expecting the Court "to sift through" it to find Plaintiff's claims. *Carmel*, 32 F. Supp. 3d at 436. Moreover, the complaint does not suggest that any questions of law or fact are common to the 19 named defendants.



In recognition of the "special solicitude" afforded *pro se* litigants, the Court grants Plaintiff 30 days' leave to submit an amended complaint that complies with Rules 8 and 20 of the Federal Rules of Civil Procedure. The amended complaint must contain a short and plain statement showing that he is entitled to relief and may not contain unrelated claims against multiple defendants. Plaintiff's amended complaint must be limited to 20 pages. The Court strongly encourages Plaintiff to use the Court's amended complaint form.

### CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within thirty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 19-CV-10668 (CM). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Write the full name of each plaintiff.

____CV________ (Include case number if one has been assigned)

-against-

AMENDED COMPLAINT

Do you want a jury trial? ☐ Yes ☐ No

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 2/10/17

**I. BASIS FOR JURISDICTION**

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐ Federal Question

☐ Diversity of Citizenship

**A. If you checked Federal Question**

Which of your federal constitutional or federal statutory rights have been violated?

**B. If you checked Diversity of Citizenship**

1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , ______________ (Plaintiff's name), is a citizen of the State of

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2



If the defendant is an individual:

The defendant, ______________ (Defendant's name), is a citizen of the State of

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

If the defendant is a corporation:

The defendant, ______________, is incorporated under the laws of the State of ______________ and has its principal place of business in the State of ______________ or is incorporated under the laws of (foreign state) ______________ and has its principal place of business in ______________.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

**II. PARTIES**

**A. Plaintiff Information**

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

First Name Middle Initial Last Name

Street Address

County, City State Zip Code

Telephone Number Email Address (if available)

Page 3

**B. Defendant Information**

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1: First Name Last Name
Current Job Title (or other identifying information)
Current Work Address (or other address where defendant may be served)
County, City State Zip Code

Defendant 2: First Name Last Name
Current Job Title (or other identifying information)
Current Work Address (or other address where defendant may be served)
County, City State Zip Code

Defendant 3: First Name Last Name
Current Job Title (or other identifying information)
Current Work Address (or other address where defendant may be served)
County, City State Zip Code

Page 4

Defendant 4: First Name Last Name
Current Job Title (or other identifying information)
Current Work Address (or other address where defendant may be served)
County, City State Zip Code

**III. STATEMENT OF CLAIM**

Place(s) of occurrence:

Date(s) of occurrence:

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

Page 5

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

Page 6



**V. PLAINTIFF'S CERTIFICATION AND WARNINGS**

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated Plaintiff's Signature

First Name Middle Initial Last Name

Street Address

County, City State Zip Code

Telephone Number Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

**All Citations**

Not Reported in Fed. Supp., 2019 WL 6841952

### Footnotes

1 The Court notes that in the quoted sections of the complaint, it does not omit Plaintiff's unique use of punctuation.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 443343
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Adil KHALIL, Plaintiff,
v.
UNITED STATES of America, Four Unknown Federal Agents, United States Air Force General Council [sic] Joseph M. McDade, Jr., United States Air Force General Council [sic] Unknown Federal Agent United States Air Force Attorney General, United States Air Force Unknown Federal Agent, United States Air Force Inspector General, and Federal Agent Natalie P. Becerra, Defendants.
Adil Khalil, Plaintiff,
v.
Governor Andrew M. Cuomo, Ann M. Sullivan, Commissioner, NYS Office of Mental Health; New York State Trooper John Does 1-3, the State of New York, Defendants.

17-CV-2652 (JFB) (SIL)
|
17-CV-5458 (JFB) (SIL)
|
Signed 01/12/2018

**Attorneys and Law Firms**

Adil Khalil, Shirley, NY, pro se.

Robert B. Kambic, United States Attorneys Office, Central Islip, NY, for Defendants.

ORDER

Joseph F. Bianco, United States District Judge

***1** On June 2, 2017, *pro se* plaintiff Adil Khalil ("plaintiff") filed a complaint against the United States Air Force and the Federal Bureau of Investigations ("defendants") as well as an application to proceed *in forma pauperis*. *Khalil v. United States Air Force*, 17-cv-2652 (E.D.N.Y. June 2, 2017) ("*Khalil I*"), Dkt. Nos. 1, 2. On July 17, 2017, plaintiff moved to transfer the action to the United States Court of Federal Claims (*id.* Dkt. No. 6), where plaintiff had filed a related action on July 13, 2017, *Khalil v. United States of America*, 17-cv-0962 (Fed. Cl. July 13, 2017). On August 1, 2017, defendants requested that the Court dismiss the complaint on subject matter jurisdiction grounds. (*See Khalil I*, Dkt. No. 7.) However, because 28 U.S.C. § 1292(d)(4), which governs the transfer of actions to the Court of Federal Claims, prevents courts from taking any action when a transfer motion is filed until sixty (60) days after that court has ruled upon the motion, the undersigned requested that defendants submit any opposition to the motion to transfer by August 31, 2017. (*See id.* Dkt. No. 8.) On August 19, 2017, before defendants responded to that Order, plaintiff opposed defendants' request for dismissal on subject matter grounds and filed an amended complaint. (*See id.* Dkt. No. 9). The amended complaint names as defendants: the United States of America, four unknown federal agents (John Does 1-4), United States Air Force General Council Joseph M. McDade, Jr., "United States Air Force General Council unknown Federal Agent United States Air Force Attorney General", "United States Air Force unknown Federal Agent", United States Air Force Inspector General, and Federal Agent Natalie P. Becerra ("Becerra" and collectively, "defendants"). By letter dated September 11, 2017, defendants indicated that they did not object to the request to transfer. (*See id.* Dkt. No. 10.) In response, by motion dated September 18, 2017, plaintiff requested that the Court: (1) find defendants in contempt for responding to the Court's Order on September 11, 2017, when their response was due August 31, 2017; and (2) enter default judgment in plaintiff's favor. (*See id.* Dkt. No. 14.)

On August 2, 2017, the Court of Federal Claims issued an Order that: (1) dismissed the complaint, (2) denied plaintiff's motion to transfer that case to this Court (which he filed on the same day he moved to transfer the instant action), and (3) denied plaintiff's motion for leave to proceed *in forma pauperis*. *See Khalil v. United States*, No. 17-CV-0962 (Fed. Cl. Aug. 2, 2017), Dkt. No. 7. Given the dismissal, by Order dated September 27, 2017, the undersigned denied plaintiff's motion to transfer. (*Khalil I*, Dkt. No. 15.) In addition, in light of 28 U.S.C. § 1292(d)(4)'s prohibition on any action in a case in which a motion to transfer to the Court of Federal Claims is filed until sixty (60) days after the court has ruled upon the motion, the undersigned stayed all pending motions in the instant action for sixty (60) days. (*Id.*) On November 28, 2017, defendants renewed their request for a pre-motion conference in order to establish a briefing schedule for their motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of subject matter jurisdiction and failure to state a cause of action. (*Khalil I*, Dkt. 16.) To date, plaintiff has not opposed defendants' request.



***2** In addition, on September 18, 2017, plaintiff filed another *in forma pauperis* complaint. *Khalil v. Cuomo*, 17-CV-5458 (E.D.N.Y. Sept. 18, 2017) ("*Khalil II*"), Dkt. Nos. 1, 2. *Khalil II* is against the State of New York, Governor Cuomo, Ann M. Sullivan, Commissioner of the New York State Office of Mental Health, and three unidentified New York State Troopers, John Does 1-3. For the reasons stated below, plaintiff's motions to proceed *in forma pauperis* are granted; however, because neither the amended complaint in *Khalil I*, nor the complaint in *Khalil II* alleges a plausible claim, the complaints are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

BACKGROUND

I. *Khalil I*

Plaintiff's amended complaint is submitted on the Court's complaint form and purports to allege *Bivens* claims against defendants. (*See Khalil I*, Dkt. No. 9, Compl. ¶ II.) Plaintiff claims that the defendants have deprived him of his First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights, and have conspired to do so, in connection with their "covert or overt" surveillance of plaintiff's activities on the "world wide web (internet/electronic) and telephone conversation[s]." (*Id.* ¶¶ II.B-D., III.A.) According to the amended complaint, from June 16, 2011 to the present, plaintiff has suffered "a denial of service attack on [his] personal computer" and "the federal government has failed to protect [his] internet rights." (*Id.* ¶ 13.) Plaintiff also complains that the government has violated his rights by "intruding [his] private computer or iPhone and monopolizing or compromising his internet privacy and rights to free expression." (*Id.*) Plaintiff further complains that the government has "allowed a schizophrenic bipolar federal employee [to] violate[ ] online impersonation laws and cyber stalking laws." (*Id.* ¶ 14.)

Plaintiff alleges that, since his filing of the original complaint in this case on June 2, 2017, "the federal government continues to restrict [his] internet access" and "continues to allow the federal employee female stalker to threaten the plaintiff's mental well-being." (*Id.* ¶ 20.) Plaintiff claims that Becerra is being used by the FBI "as an informant/asset/operative against [him] in an attempted entrapment sting" and, since 2010, the "FBI has monopolized and [taken] total control of [his] computer and internet." (*Id.* ¶ 25). As evidence, plaintiff describes that "frequent Goggle [sic] search results and pop up ads on [his] computer has resulted in [a] surge of conspiracy theorists who, otherwise, without the FBI influence, would be unknown to [plaintiff.]" (*Id.*) Thus, plaintiff claims the "FBI in controlling advertisement and search results in an attempted brainwashing scheme, and is a violation of the plaintiff's fourth amendment right." (*Id.*) Plaintiff also claims that the "FBI was working in conspiracy with the NYPD" to designate plaintiff as a mentally disturbed person and that such conduct has caused plaintiff to suffer a "mental breakdown from internet stalking." (*Id.* ¶¶ 27, 28-29.)

As a result, plaintiff claims to have suffered "mental illness (adjustment disorder), complications and metastasis of an auto-immune disease, loss of employment (adjustment disorder)" and seeks to recover a damages award in total sum of $550,000,000.00. (*Id.* ¶¶ IV-V.)

II. *Khalil II*

As noted above, on September 18, 2017, plaintiff filed an additional complaint and application to proceed *in forma pauperis* against the State of New York, Governor Andrew M. Cuomo, Ann M. Sullivan, Commissioner of the New York State Office of Mental Health, and three unidentified New York State Troopers (John Does 1-3). Like *Khalil I*, the complaint in *Khalil II* is difficult to comprehend. Plaintiff appears to complain that, on December 26, 2015 and September 7, 2017, New York State police troopers did not assist him during telephone calls he made to them. (*Khalil II*, Dkt. No. 1, Compl. ¶ 1.) Plaintiff claims he called the police to report internet harassment by "a mentally ill female stalker" he identifies as Becerra, a defendant in *Khalil I*. (*Id.* ¶ 2.) Plaintiff alleges that the State of New York has "inflict[ed] mental illness through a series of continued adjustment disorders[,] [a]nd with the filing of this instant action against the State of New York, progressing to Axis 1 major mental illness which resulted in a complete collapse of my immune system through the auto immune disease and psychological disorder Sarcoidosis." (*Id.*) Plaintiff also complains that the State of New York "has failed to enforce several laws" and cites various sections of the New York Penal Law relating to stalking and harassment. (*Id.* ¶ 4.) Plaintiff further alleges that "[t]he State of New York continues to use me as a scapegoat for their anger and frustration for the terrorist attacks on 911." (*Id.* ¶ 5.) Based on the foregoing, plaintiff claims to have suffered "mental illness (adjustment disorder), complications and metastasis of an auto-immune disease, loss



of employment (adjustment disorder). (*Id.* ¶ IV.) For relief, plaintiff seeks damages totaling $13 million. (*Id.* ¶ V.)

DISCUSSION

I. *In Forma Pauperis* Applications

***3** Upon review of plaintiff's declarations in support of the applications to proceed *in forma pauperis*, the Court finds that plaintiff is qualified to commence these actions without prepayment of the filing fees. 28 U.S.C. § 1915(a)(1). Therefore, plaintiff's applications to proceed *in forma pauperis* are granted.

II. Sufficiency of the Pleadings

A. Legal Standard

It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and to construe them "to raise the strongest arguments that [they] suggest," *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage, the Court must assume the truth of "all well-pleaded, non-conclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, 133 S. Ct. 1659 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).

Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Further, a district court has the inherent power to dismiss a case *sua sponte* if it determines that the action is frivolous. *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000). An action is "frivolous" when "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage* Co., 141 F.3d 434, 437 (2d Cir. 1998) (internal citations omitted). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *see also Scanlon v. Vermont*, 423 Fed.Appx. 78, 79 (2d Cir. 2011) (summary order) ("An action is frivolous if it lacks an arguable basis in law and fact—i.e., where it is 'based on an indisputably meritless legal theory' or presents 'factual contentions [which] are clearly baseless.' " (quoting *Neitzke v. Williams*, 490 U.S. 319,327 (1989), *abrogated on other grounds by Twombly*, 550 U.S. at 544)); *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic,' or 'delusional.' " (quoting *Denton*, 504 U.S. at 32-33)).

B. Application

***4** As is readily apparent from the amended complaint in *Khalil I* and the complaint in *Khalil II*, plaintiff's claims "rise to the level of the irrational or the wholly incredible." *Denton*, 504 U.S. at 33. Plaintiff alleges a broad conspiracy involving surveillance of and interference with his life by the United States and various government actors.[1] Upon a careful reading of plaintiff's pleadings, the allegations presented appear wholly incredible and can only be described as the "product of delusion or fantasy." *Livingston*, 141 F.3d at 437. Construing plaintiff's pleadings liberally and raising the strongest arguments they suggest, the Court finds that plaintiff's allegations rise to the level of irrational and wholly incredible.

In short, having reviewed the amended complaint in *Khalil I* and complaint in *Khalil II*, it is clear that plaintiff's claims are factually frivolous, "rising to the level of the irrational or wholly incredible," *Denton*, 504 U.S. at 26, and they are therefore dismissed. *Mecca v. U.S. Gov't*, 232 Fed.Appx. 66, 677 (2d Cir. 2007) (affirming district court dismissal of complaint that was "replete with fantastic and delusional scenarios"); *Gonzales v. Wright*, 9:06-CV-1424, 2010 WL 681323, at * 12 (N.D.N.Y. Feb. 23, 2010) ("As the

Second Circuit and New York District Courts have steadily recognized, it is utterly unjust to haul people into federal court to defend against, and disprove, delusions.") (collecting cases). The Court has considered affording plaintiff an opportunity to amend the complaints, *Foman v. Davis*, 371 U.S. 178, 182 (1962), but declines to do so because the deficiencies therein could not be cured by amendment. *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 69 (2d Cir. 2002).

CONCLUSION

For the reasons above, plaintiff's *in forma pauperis* applications are granted. However, the amended complaint in *Khalil I and* the complaint in *Khalil II are sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). The Clerk of the Court is directed to mail a copy of this order to the plaintiff at his last known address and to close the cases. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should plaintiff seek leave to appeal *in forma pauperis*, any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is therefore denied for the purpose of any appeal. *See* *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 443343

**Footnotes**

1 In addition, given that sovereign immunity shields the United States, its agencies, and government officials acting in their official capacity, *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), and that the Eleventh Amendment precludes suit in this Court against New York State, and against state officials in their official capacities seeking monetary damages, *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007), the Court likely lacks subject matter jurisdiction to adjudicate these claims. However, because the nature of the claims set forth in plaintiff's submissions is far from clear, the Court declines to determine at this juncture that it lacks subject matter jurisdiction.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.





2022 WL 4241355
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Christopher MCKIE, Plaintiff-Appellant,
v.
Charles KORNEGAY, Irene Kornegay, Defendants-Appellees.[1]

21-1943
|
September 15, 2022

Appeal from a judgment of the United States District Court for the Eastern District of New York (Matsumoto, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED IN PART** and **AFFIRMED IN PART,** and the appeal is **DISMISSED IN PART**.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Christopher McKie, pro se, Brooklyn, New York.

For Defendants-Appellees: William V. DeCandido, William V. DeCandido, PC, Forest Hills, New York.

Present: Debra Ann Livingston, Chief Judge, Barrington D. Parker, Eunice C. Lee, Circuit Judges.

**SUMMARY ORDER**

***1** Appellant Christopher McKie, proceeding pro se, appeals from the August 2, 2021 order of the United States District Court for the Eastern District of New York (Matsumoto, *J.*), dismissing his claims with prejudice. McKie brought claims against the estate of Doris Dickinson, Charles Kornegay ("Charles") in his official capacity as administrator of the estate and in his individual capacity, and Irene Kornegay ("Irene"), asserting common law tort and contract claims premised on McKie's allegation that he was entitled to estate assets. The district court found that it lacked subject matter jurisdiction because the parties were not diverse, that it would also lack subject matter jurisdiction over many claims under the probate exception to federal diversity jurisdiction, and that the complaint in any event failed to state a claim. For the following reasons, the judgment of the district court is **VACATED IN PART** and **AFFIRMED IN PART,** and the appeal is **DISMISSED IN PART**. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, which we reference here only as necessary to explain our decision.

**I. Subject Matter Jurisdiction**

On appeal from a dismissal for lack of subject matter jurisdiction, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). We "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Federal subject matter jurisdiction is available when a federal question is presented, or when the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332.

McKie's complaint cites the statutes for both federal question and diversity jurisdiction.[2] However, McKie's brief does not identify any basis for federal question jurisdiction, and none is apparent—McKie's causes of action are state law tort and contract claims.

Diversity jurisdiction requires that the case be between "citizens of different States," 28 U.S.C. § 1332(a)(1), meaning "that there must be complete diversity, *i.e.*, that each plaintiff's citizenship must be different from the citizenship of each defendant," *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009). "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) (quotation marks and citations omitted). The diversity statute specifies that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). The citizenship of the estate itself is, likewise, established by the citizenship of the decedent. *See* *Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1327 n.2 (11th Cir. 2010) (citing § 1332(c)(2)).

***2** McKie does not dispute that he is domiciled in New York, nor that Dickinson was domiciled in New York when she died. Instead, he argues that the district court overlooked that he also sued Irene and Charles, both South Carolina residents, individually. However, because McKie shared citizenship



with any of the defendants, the district court lacked subject matter jurisdiction. *See* *Hallingby*, 574 F.3d at 56.

Having properly concluded that it lacked subject matter jurisdiction, the district court proceeded to consider the merits and dismiss the complaint with prejudice for failure to state a claim. That was error. A dismissal for lack of subject matter jurisdiction must be without prejudice, because "without jurisdiction, the district court lacks the power to adjudicate the merits of the case." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016). Accordingly, the district court's dismissal with prejudice of claims over which it found it lacked subject matter jurisdiction must be vacated.

Nevertheless, since the district court has already issued a final judgment over the remaining claims, we cure part of the jurisdictional defect here in the interest of finality, efficiency, and economy. *See* *United Republic Ins. Co., in Receivership v. Chase Manhattan Bank*, 315 F.3d 168, 170 (2d Cir. 2003) ("Once a district court has proceeded to final judgment, considerations of finality, efficiency, and economy become overwhelming, and federal courts must salvage jurisdiction where possible." (quotation marks and citations omitted)). To salvage jurisdiction, we dismiss the nondiverse defendants (i.e., the estate and Charles in his official capacity as administrator). *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989) (recognizing that "courts of appeals have the authority to dismiss a dispensable nondiverse party" under Rule 21); *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 163 (2d Cir. 2001) ("[W]here a change in parties, necessary to the existence of jurisdiction, is appropriate and is made (even on or after appeal), appellate courts have acted as if the trial court had jurisdiction from the beginning of the litigation.").

To the extent that McKie seeks damages from Charles and Irene for their personal tortious conduct, the estate and its administrator are not necessary because the case can proceed "in equity and good conscience" without them. Fed. R. Civ. P. 19(b). The Supreme Court has cautioned that the appellate courts' authority to dismiss parties "should be exercised sparingly," and that remand may be required to resolve factual disputes as to whether the dismissal of a nondiverse party will prejudice other parties. *Newman-Green*, 490 U.S. at 837. Here, Charles and Irene will only benefit from the finality of a dismissal with prejudice, and McKie and the nondiverse defendants would be in the same position whether those defendants are severed from this case or this case is dismissed in its entirety without prejudice.

Still, we agree with the district court that the probate exception to diversity jurisdiction bars some of McKie's claims against Irene and Charles in their individual capacities. Under the probate exception, a federal court cannot exercise diversity jurisdiction over a complaint that seeks to (1) "administer an estate, probate a will, or do any other purely probate matter" or (2) "to reach a res in the custody of a state court." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 106 (2d Cir. 2007) (quotation marks, alterations, and emphasis omitted). The exception does not apply to actions that "seek[ ] damages from Defendants personally rather than assets or distributions from [the] estate," even if they are "intertwine[d]" with a probate action. *Id.* at 107–08. We agree with the district court's analysis that McKie's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, unjust enrichment, quantum meruit, and indebitatus assumpsit are barred by the probate exception because they essentially "seek[ ] to mask in claims for federal relief ... complaints about the maladministration of [the estate]" and "[t]o provide the relief Plaintiff seeks ... the federal court would have to assert control over property that remains under the control of the state courts." *Id.* at 107. However, the probate exception does not bar McKie's claims for fraudulent misrepresentation, fraudulent concealment, and tortious interference, which seek compensatory and punitive damages from Charles and Irene in their individual capacities.

***3** We therefore dismiss the estate and Charles in his official capacity from this action and proceed to consider the merits of the remaining claims against Charles and Irene in their individual capacities.

**II. Merits**

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 147 (2d Cir. 2021) (quotation marks and citation omitted). Upon review of the record and relevant case law, we conclude that the district court's dismissal with prejudice of the remaining claims was correct. We affirm for substantially the same reasons stated by the district court in its August 2, 2021 memorandum and order, where it considered McKie's claims



for fraudulent misrepresentation, fraudulent concealment, and tortious interference.

**III. Denial of Leave to Amend**

Finally, the district court did not err in denying leave to amend. We review such denials for abuse of discretion, unless the denial is "based on an interpretation of law." *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 227 (2d Cir. 2018) (quotation marks and citation omitted). A district court generally should not dismiss a pro se complaint without granting at least one opportunity to amend, but amendment should be denied where the complaint gives no "indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

McKie does not explicitly challenge the denial of leave to amend in his appellate brief, but he does argue that the district court erred in denying a claim for an accounting, which he had identified as a claim that might be raised in an amended complaint. Such a claim relates to the estate and its administrator, and raising it would destroy the federal courts' diversity jurisdiction.

* * *

Accordingly, the district court's dismissal with prejudice is **VACATED** in part and we **DISMISS**, without prejudice, all claims against the estate of Doris Dickinson and its administrator in his official capacity and all claims against Charles and Irene Kornegay that fall under the probate exception. As to the remaining claims against Charles and Irene Kornegay in their individual capacities, we have considered all of McKie's arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court in remaining part to dismiss those claims with prejudice.

**All Citations**

Not Reported in Fed. Rptr., 2022 WL 4241355

**Footnotes**

1 The Clerk of Court is respectfully directed to amend the caption as set forth above.

2 On appeal, McKie also argues that the district court should have considered whether jurisdiction existed under 28 U.S.C. §§ 1335 and 1343(a), but he fails to explain how either statute is applicable to this case. *See* 28 U.S.C. §§ 1343(a), 1335 (jurisdiction over certain civil rights and interpleader actions).

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3677262
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gabriel M. RICH, Plaintiff,
v.
AKWESASNE MOHAWK CASINO RESORT, Defendant.

No. 8:24-CV-00255 (AMN/CFH)
|
Signed August 6, 2024

**Attorneys and Law Firms**

Gabriel M. Rich, 23-B-3674, Green Correctional Facility, P.O. Box 975, Coxsackie, New York 12051, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

**I. In Forma Pauperis**

***1** Plaintiff pro se Gabriel M. Rich ("plaintiff") purported to commence this action on February 21, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [1]

**II. Initial Review**

**A. Legal Standard**

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest[.] At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law[.]

Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted); see Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.") (internal quotation marks and citations omitted).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). [2] Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the grounds for the court's jurisdiction[,]" and "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a). Although detailed allegations



are not required at the pleading stage, the complaint must still include enough facts to provide the defendant with notice of the claims against them and the grounds upon which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).

***2** Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

**B. Plaintiff's Complaint**

Plaintiff brings this action against Akwesasne Mohawk Casino Resort ("defendant"). [3] See Compl. at 1. [4] Plaintiff alleges that, on "September 11, 2022[,]" he "purchased a [$250] casino ticket for a sports bet." Id. at 4. While "on [his] way to go cash the ticket[,]" on "September 26, 2022[,]" plaintiff "was pulled over by [a] state trooper." Id. Plaintiff "was subsequently arrested and all [of his] property [was] seized[,] including [his] car ... [and the] casino ticket." Id. Plaintiff was then "incarcerated at the St. Lawrence County Correctional [F]acility from September 26, 2022[,] until October 29, 2022." Id.; see id. at 11 (demonstrating that the police took the "casino ticket" into possession at the time of plaintiff's incarceration).

***3** Upon plaintiff's release on "October 29, 2022[,]" he "made multiple calls to" defendant "regarding [his] winning ticket" and eventually "spoke with a woman[,]" [5] who informed him that, "you have to have the physical ticket present in order to cash it[,]" per casino policy. Compl. at 4. The "woman" proceeded to "look[ ] up [plaintiff's] bet" and found that "it was already cashed in late [S]eptember, which was while [plaintiff] was incarcerated." Id. at 4-5. Plaintiff eventually found out that "a man named Jay McKinney" ("Mr. McKinney") had taken "a picture of the ticket ... and while [plaintiff] was incarcerated[, Mr. McKinney] was allowed to cash the ticket with [the] picture on his phone." Id. at 5. When plaintiff confronted him, Mr. McKinney confirmed that he had cashed the ticket. See id. This information was "alarming" to plaintiff because "it was cashed against [defendant's] own policy." Id.

Plaintiff then "made a police report [with] the St. Regio [sic] Mohawk Police and the[y] contacted [Mr. McKinney]," who "made a full statement admitting ... that he took a picture of the ticket[,] and when [plaintiff] was in jail[,] he used that photo to cash it at the casino[.]" Compl. at 5. Plaintiff "made multiple attempts for help from [defendant]" because he was "struggling really bad and needed that money for [his] kids." Id. "The ticket winnings were worth $1,150." Id.



Plaintiff brings this complaint pursuant to "Tort Claim 370 Other fraud[,]" alleging that defendant fraudulently "cashed [his casino ticket] without the physical ticket being present ... against [his] authorization and against [defendant's] own policy." Compl. at 1, 6. Plaintiff also claims "[o]ther civil rights to due process were violated." Id. at 6. Plaintiff alleges that defendant's actions were "fraudulent, neglectful[,] and caused financial hardship and emotional distress[,]" and requests "compensation for the pain [he] endured[,]" in the amount of "$3 million dollars ($3,000,000)[.]" Id. at 5-6.

**C. Analysis**

The undersigned has liberally construed plaintiff's allegations in light of his pro se status. See, e.g., Torres v. Carry, 800 F. Supp. 2d 577, 582 (S.D.N.Y. 2011) ("[W]here, as here, a party appears pro se, courts must construe pro se pleadings broadly and interpret them to 'raise the strongest arguments that they suggest.' ") (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996), and citing Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). As asserted in his complaint, plaintiff brings this action against defendant [6] pursuant to "Tort Claim 370 Other fraud[.]" Compl. at 1. Plaintiff also alleges that defendant violated "other civil rights to due process" under 42 U.S.C. § 1983. Id. at 6. Additionally, plaintiff appears to raise state law claims against defendant. See id.

**1. Jurisdiction**

***4** Federal courts exercise limited jurisdiction pursuant to Article III of the Constitution. See Trustees of New York State Nurses Assoc. Pension Plan v. White Oak Glob. Advisors, LLC, 102 F.4th 572, 593-94 (2d Cir. 2024); see also Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (" 'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress.") (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)). "Federal jurisdiction is only available when a 'federal question' is presented, or the plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000." Hamza v. Midas, Inc., No. 1:23-CV-0543 (MAD/CFH), 2023 WL 5932942, at *4 (N.D.N.Y. Sep. 11, 2023) (citations omitted), report and recommendation adopted, 2024 WL 980095 (N.D.N.Y. Mar. 7, 2024). "When a court lacks subject matter jurisdiction, dismissal is mandatory." Id. (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)). Therefore, although courts "construe a pro se litigant's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." Ally v. Sukkar, 128 F. App'x 194, 195 (2d Cir. 2005) (summary order) (citations omitted).

**a. Federal Question Jurisdiction**

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "Federal question jurisdiction exists where a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 137 (2d Cir. 2002) (internal quotation marks and citations omitted); see Empire HealthChoice Assur., Inc. v. McVeigh, 396 F.3d 136, 140 (2d Cir. 2005) ("[A] plaintiff cannot create federal jurisdiction ... simply by alleging a federal claim where in reality none exists. Subject matter jurisdiction will lie only where the court determines that the substance of [the plaintiff's] allegations raises a federal question.") (internal quotation marks and citations omitted); see also Edwards v. Foxwoods Resort Casino, No. 17-CV-05869 (JMA/SIL), 2019 WL 486077, at *2 (E.D.N.Y. Feb. 7, 2019) ("Section 1331 can be invoked when the plaintiff pleads a 'colorable claim' arising under the Constitution or federal law.") (quoting Arbaugh, 546 U.S. at 513 n.10). To retain federal question jurisdiction, the plaintiff has the burden of proving that the action is arising out of a federal question. See Perpetual Sec., Inc., 290 F.3d at 137.

Here, plaintiff alleges "[t]hat fraud occurred when a ticket was cashed without the physical ticket being present and against [his] authorization and against [the casino's] own policy." Compl. at 6. He claims that this is a violation of "Tort Claim 370 Other fraud." [7] Id. at 1. However, he does not cite to any specific federal tort or fraud law. See generally id.; see also Gaston v. Shelter, No. 24-CV-04386 (NCM/LB), 2024 WL 3360365, at *2 (E.D.N.Y. July 10, 2024) ("Liberally construing [the] plaintiff's allegations to raise the strongest arguments they suggest, the complaint does not suggest any basis for the exercise of federal question jurisdiction [because the p]laintiff's claim does not arise under the Constitution or any federal laws.") (citing 28 U.S.C. § 1331). Thus, it

is unclear if plaintiff is claiming a violation of federal law. See generally Compl. Accordingly, because plaintiff did not sufficiently "identify [any] federal right or rights allegedly at issue[,]" he has failed to properly allege a valid basis for the Court's federal question jurisdiction. Jones v. Farney, No. 1:23-CV-563 (BKS/DJS), 2023 WL 7688457, at *2 (N.D.N.Y. May 19, 2023); see Khiger v. Nevada, No. 13-CV-6057 (WFK/LB), 2013 WL 12323919, at *2 (E.D.N.Y. Nov. 12, 2013) ("Moreover, because of the vague nature of [the p]laintiff's complaint, it is unclear whether [the p]laintiff can properly invoke federal question jurisdiction against any named defendant.").

*5 Additionally, plaintiff alleges that "[o]ther civil rights to due process were violated." See Compl. at 6. Liberally construing his complaint, he appears to be raising a Fourteenth Amendment claim under 42 U.S.C. § 1983. See generally id. However, "[b]ecause Tribal Nations are seen as 'separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority.' " Edwards, 2019 WL 486077, at *2 (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56 (1978)). "Accordingly, the Bill of Rights and the Fourteenth Amendment do not apply to Indian tribes." Id. (citation omitted); see, e.g., Colebut v. Mashantucket Pequot Tribal Nation Tribal Elders Council, 3:05-CV-00247 (DJS), 2007 WL 174384, at *5 (D. Conn. Jan. 19, 2007) (" '[T]he protections of the United States Constitution are generally inapplicable to Indian tribes, Indian courts and Indians on the reservation.' ") (quoting United States v. Percy, 250 F.3d 720, 725 (9th Cir. 2001)).

Here, defendant is a commercial enterprise, owned and operated by the Saint Regis Mohawk Tribe ("St. Regis"), a federally recognized Indian Tribe. See Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg. 944-02 (Jan. 8, 2024), 2024 WL 68476. Thus, it appears that defendant is an arm of St. Regis. See Edwards, 2019 WL 486077, at *2 (holding that the defendant, a Gaming Enterprise owned and operated by a Tribal Nation, is not subject to suit under the Bill of Rights or Fourteenth Amendment). As such, a Fourteenth Amendment claim cannot apply to defendant.[8] See Frazier v. Turning Stone Casino, 254 F. Supp. 2d 295, 314 (N.D.N.Y. 2003) ("[T]he Fourteenth Amendment by its terms applies to States, not Indian Tribes. Indian Tribes are exempt[ ] ... from constitutional provisions addressed specifically to State or Federal Governments[.]") (internal quotation marks and citations omitted). Thus, plaintiff has failed to state a colorable federal claim. See Arbaugh, 546 U.S. at 513 n.10 ("A claim invoking federal-question jurisdiction ... may be dismissed ... if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.' ") (citations omitted).

**b. Diversity Jurisdiction**

28 U.S.C. § 1332 provides that federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[,]" and where there is complete diversity of the parties. See Handelsman v. Bedford Village Assocs. Ltd. P'ship, 213 F.3d 48, 51 (2d Cir. 2000) ("Diversity jurisdiction requires that 'all of the adverse parties in a suit ... be completely diverse with regard to citizenship.' ") (quoting E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 930 (2d Cir. 1998) (additional citations omitted)).

*6 "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks and citations omitted). "This burden is hardly onerous, however, for we recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.' " Id. (quoting Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)). "[E]ven where th[e] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982) (citing Deutsch v. Hewes Street Realty Corp., 359 F.2d 96 (2d Cir. 1966)). "[D]ismissal is appropriate only if the legal impossibility of recovering above the threshold amount is 'so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim.' " Peoples Club of Nigeria Int'l, Inc. v. Peoples Club of Nigeria Int'l – New York Branch, Inc., 821 F. App'x 32, 34 (2d Cir. 2020) (summary order) (quoting Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago, 93 F.3d 1064, 1070-71 (2d Cir. 1996)).

Here, although plaintiff's casino ticket allegedly won $1,150, he is requesting relief in the sum of $3,000,000. See Compl. at 5-6. Even if there is "grave doubt" regarding plaintiff's ability



to fully recover his requested relief, this Court recognizes "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Zacharia, 684 F.2d at 202 (citation omitted); Wolde-Meskel, 166 F.3d at 63 (citations omitted). Therefore, for purposes of this review, plaintiff has sufficiently alleged that his damages satisfy the amount in controversy requirement for diversity jurisdiction. See generally Compl. at 6; see, e.g., Brown v. Twitter, Automattic Inc., No. 19-CV-6328 (KPF), 2021 WL 3887611, at *6 (S.D.N.Y. Aug. 31, 2021) ("Affording [the p]laintiff particular leniency as a pro se litigant, the Court finds that [the p]laintiff has adequately pleaded facts indicating that" "her claim exceeds the $75,000 threshold requirement.").

However, plaintiff does not meet the complete diversity requirement. See Owen Equip. & Erection Co., 437 U.S. at 373 ("[D]iversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff."). "An Indian Tribe is not a citizen of any state for the purposes of diversity jurisdiction."[9] Frazier v. Brophy, 358 F. App'x 212, 213 (2d Cir. 2009) (summary order) (citing Romanella v. Hayward, 114 F.3d 15, 16 (2d Cir. 1997) (per curiam), and Frazier v. Turning Stone Casino, 254 F. Supp. 2d at 304). Given their "unique status as ... aboriginal entit[ies] antedating the federal government[,]" Indian Tribes are "distinct, independent political communities, retaining their original natural rights[.]" Romanella, 114 F.3d at 16 (internal quotation marks and citations omitted). The Second Circuit has consistently held that Indian Tribes are akin to "other domestic sovereigns, such as states, which cannot sue or be sued in diversity." Brophy, 358 F. App'x at 213 (citing Romanella, 114 F.3d at 16). "These principles extend to tribal entities that are arms of the tribe." Worrall v. Mashantucket Pequot Gaming Enter., 131 F. Supp. 2d 328, 329 (D. Conn. 2001) (citing Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 27 (2d Cir. 2000) ("We see no reason why the Authority (an arm of the Tribe, not separately incorporated) should be treated any differently [than the Tribe itself] for jurisdictional purposes.")). Thus, plaintiff cannot assert diversity jurisdiction over defendant, as defendant appears to be an arm of St. Regis. See Brophy, 358 F. App'x at 213; see also Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 17-18 (1987) ("In the absence of any indication that Congress intended the diversity statute to limit the jurisdiction of the tribal courts, we decline petitioner's invitation to hold that tribal sovereignty can be impaired in this fashion.").

*7 Accordingly, although plaintiff may meet the amount in controversy requirement, he fails to meet the complete diversity requirement, and, thus, fails to demonstrate diversity jurisdiction. Therefore, because plaintiff has failed to establish either federal question jurisdiction or diversity jurisdiction, it is recommended that his complaint be dismissed for lack of subject matter jurisdiction.

**2. Tribal Sovereign Immunity**

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998) (citations omitted); see Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 356 (2d Cir. 2000) ("It is by now well established that Indian tribes possess the common-law immunity from suit traditionally enjoyed by sovereign powers.") (citations omitted). "[C]ongressional abrogation of tribal immunity ... 'cannot be implied but must be unequivocally expressed.' " Bassett, 204 F.3d at 356 (quoting Santa Clara Pueblo, 436 U.S. at 98). Similarly, for a tribe to "relinquish its immunity, a tribe's waiver must be 'clear.' " C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla., 532 U.S. 411, 412 (2001) (quoting Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla., 498 U.S. 505, 509 (1991)). "Courts lack subject matter jurisdiction to determine claims barred by tribal sovereign immunity." Frazier v. Turning Stone Casino, 254 F. Supp. 2d at 305 (citing Garcia v. Akwesasne Hous. Auth., 268 F.3d 76, 84 (2d Cir. 2001)); see Laake v. Turning Stone Resort Casino, 740 F. App'x 744, 745 (2d Cir. 2018) (summary order) (holding that "the district court properly concluded that it lacked subject matter jurisdiction over the complaint against [the defendant because] Indian tribes have sovereign immunity from suit" absent congressional abrogation or waiver) (citations omitted).

A tribe's immunity extends to both their commercial and non-commercial activities. See Kiowa Tribe of Okla., 523 U.S. at 760 (declining to draw a distinction between commercial and non-commercial activities for the purposes of restricting tribal immunity); see also Allegany Cap. Enters., LLC v. Cox, No. 19-CV-160S, 2021 WL 534803, at *5 (W.D.N.Y. Feb. 12, 2021) ("[Tribal] immunity applies when the plaintiff seeks judicial relief from the sovereign entity, [including] the native nation or its corporate entities.") (citations omitted). Accordingly, "[t]ribal immunity extends to tribal commercial



enterprises, such as gambling venues." Laake, 740 F. App'x at 745 (citing Kiowa Tribe of Okla., 523 U.S. at 754-55).

As discussed, defendant is a commercial enterprise owned and operated by St. Regis, a federally recognized Indian Tribe. See discussion supra Subsection II.C.1.a; see also Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg. 944-02 (Jan. 8, 2024), 2024 WL 68476. Thus, defendant is entitled to tribal immunity.[10] See Laake, 740 F. App'x at 745 (extending tribal immunity to a gambling venue owned and operated by an Indian Tribe). Therefore, it is alternatively recommended that plaintiff's complaint be dismissed as barred by tribal immunity.

**3. Tribal Court Exhaustion of Remedies**

*8 The Supreme Court established the tribal court exhaustion rule in National Farmers Union Insurance Company v. Crow Tribe of Indians, 471 U.S. 845, 855-57 (1985), which "requires that federal courts abstain from hearing certain claims relating to Indian tribes until the plaintiff has first exhausted those claims in a tribal court." Garcia, 268 F.3d at 79. The federal government maintains a "policy of supporting tribal self-government and self-determination[,]" which "[a] federal court's exercise of jurisdiction over matters relating to reservation affairs can [ ] impair[.]" National Farmers, 471 U.S. at 856; LaPlante, 480 U.S. at 15; see Garcia, 268 F.3d at 82 (explaining that the underlying policies for the tribal exhaustion rule include "the policy of supporting tribal self-government and self-determination, the recognition that a federal court's exercise of jurisdiction over matters relating to reservation affairs can ... impair the authority of tribal courts, and the view that tribal courts play a vital role in tribal self-government") (internal quotation marks and citations omitted). Thus, "[e]ven when the jurisdiction of the tribal court is challenged, 'the Tribal Court itself' must be permitted to determine the issue 'in the first instance.' " Bowen v. Doyle, 230 F.3d 525, 529 (2d. Cir. 2000) (quoting National Farmers, 471 U.S. at 856); see Basil Cook Enters., Inc. v. St. Regis Mohawk Tribe, 117 F.3d 61, 65 (2d Cir. 1997) ("[P]arties who challenge, under federal law, the jurisdiction of a tribal court to entertain a cause of action must first present their claim to the tribal court before seeking to defeat tribal jurisdiction in any collateral or parallel federal court proceeding."). "The exhaustion requirement is a 'prudential rule' based on principles of comity; it is not a jurisdictional prerequisite." Bowen, 230 F.3d at 530 (quoting Strate v. A-1 Contractors, 520 U.S. 438, 453 (1997), and LaPlante, 480 U.S. at 16 n.8).

There are a few exceptions to the exhaustion mandate. See Garcia, 268 F.3d at 84; see also National Farmers, 471 U.S. at 856 n.21. In Garcia v. Akwesasne Housing Authority, the Second Circuit noted that there were "[s]everal circumstances ... considered together, [that can] militate against abstention ... and suggest deference instead to the competing doctrine that a federal court must fulfill its 'virtually unflagging obligation ... to exercise [its] jurisdiction.' " Garcia, 268 F.3d at 82 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)); see Cayuga Nation v. Parker, 605 F. Supp. 3d 414, 429 (N.D.N.Y. 2022). The Second Circuit held that these "circumstances" include:

> the absence of a pursuit in a tribal forum and lack of challenge by either party to the authority of the tribal court to act; the absence of an intra-tribal dispute, noting that the party seeking relief in federal court was not a member of the tribe that she is suing; and the presence of theories of liability grounded (if anywhere) on federal and state law, not tribal law.

Cayuga Nation, 605 F. Supp. 3d at 429 (citing Garcia, 268 F.3d at 83 (explaining that, in the absence of a tribal proceeding, the "federal proceeding does not implicate or in any way impair the authority of the tribal court to proceed," but noting that "[i]f a tribal court proceeding were pending, our analysis might well be different")) (internal quotation marks omitted). Thus, the Second Circuit held that "where no ongoing tribal proceeding exists, and a non-member of the tribe properly invokes the jurisdiction of a federal court to litigate non-tribal law, the tribal exhaustion rule does not mandate abstention[.]" Garcia, 268 F.3d at 84.

Additionally, in National Farmers, the Supreme Court of the United States held that

> [e]xhaustion is not required in situations where the assertion of tribal jurisdiction (1) "is motivated by a desire to harass or is conducted in bad faith," or (2) "where the action is patently violative of express jurisdictional



> prohibitions," or (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction."

MacEwen Petroleum, Inc. v. Tarbell, 173 F.R.D. 36, 41 (N.D.N.Y. 1997) (quoting National Farmers, 471 U.S. at 856 n.21). "In the absence of one or more of these circumstances, however, exhaustion is required." Basil Cook Enters., 117 F.3d at 66 (citing Reservation Tel. Coop. v. Three Affiliated Tribes of the Fort Berthold Reservation, 76 F.3d 181, 184 (8th Cir. 1996)).

*9 Here, plaintiff has not claimed that he brought this matter to the St. Regis Tribal Court before filing this action. See Compl. at 4-5. Instead, he has only alleged that he made a police report with the St. Regis Police, who brought Mr. McKinney in for a statement. See id. at 5. However, filing a claim with the tribe's police department does not suffice to establish exhaustion. See LaPlante, 480 U.S. at 17 (explaining that full exhaustion of tribal court remedies specifically includes an "initial determination" from the Tribal Court and, "[a]t a minimum[,]" review from tribal appellate courts); see also National Farmers, 471 U.S. at 857 ("Until petitioners have exhausted the remedies available to them in the Tribal Court system, it would be premature for a federal court to consider any relief.") (internal citation omitted). Thus, plaintiff has failed to demonstrate that he exhausted his remedies. See Basil Cook Enters., 117 F.3d at 66; see also National Farmers, 471 U.S. at 857.

Moreover, plaintiff has not established that he was excused from exhaustion. See Basil Cook Enters., 117 F.3d at 66-69 (rejecting the plaintiffs' argument that "the facts of [their] dispute placed it within an exception to the exhaustion requirement," and instructing them to bring their complaint first to the Tribal Court). Plaintiff has not alleged that any of the Garcia circumstances are present here. See Garcia, 268 F.3d at 82-84; see also Compl. Although it appears that plaintiff is a "non-member of the tribe[,]" and there is "no ongoing tribal proceeding[,]" or "intra-tribal dispute[,]" it is unclear what "theor[y] of liability" plaintiff is attempting to recover from and whether such theory is grounded on federal and state law or tribal law. Garcia, 268 F.3d at 83-84; see generally Compl. at 4-5. Thus, even liberally construing plaintiff's claims, it is unclear whether plaintiff has "properly invoke[d] the jurisdiction of a federal court to litigate non-tribal law[.]" Garcia, 268 F.3d at 84. Accordingly, these factors "militate in favor of the application of the tribal exhaustion rule." Cayuga Nation, 605 F. Supp. 3d at 430 (holding that the presence of a proceeding in tribal court, a tribal member owning and operating the business in dispute, and the business being on tribal land and governed by the tribe, "militate in favor of the application of the tribal exhaustion rule[,]" and therefore, "it would be premature for this Court to act until the ... [Tribal] Court action ... is exhausted") (citations omitted).

Additionally, plaintiff has not claimed to be excused from exhaustion due to any of the exceptions discussed in National Farmers. See 471 U.S. at 856 n.21; see generally Compl. First, plaintiff has not sufficiently alleged that defendant is "motivated by a desire to harass or is conducted in bad faith."[11] National Farmers, 471 U.S. at 856 n.21. Second, plaintiff has not claimed that defendant's actions were "patently violative of express jurisdictional prohibitions[.]" Id.; see Basil Cook Enters., 117 F.3d at 67 ("[E]xhaustion will be excused under the 'patently violative of express jurisdictional prohibitions' exception only in those rare cases when a tribal court's civil jurisdiction is found by a federal court to be in patent violation of express federal law.") (citations omitted); see also AG Organic, Inc. v. John, 892 F. Supp. 466, 475 (W.D.N.Y. 1995) (finding that the language of the federal or state statute in question must "expressly prohibit the tribal courts from exercising jurisdiction" and, "[i]n the absence of such an express prohibition, th[e] court must presume that tribal sovereign power remains intact"). Last, plaintiff has not established that exhaustion would have been "futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." National Farmers, 471 U.S. at 856 n.21; see Comstock Oil & Gas Inc. v. Alabama and Coushatta Indian Tribes of Texas, 261 F.3d 567, 572-73 (5th Cir. 2001) (affirming the district court's ruling that exhaustion was not required before proceeding in federal court where exhaustion would have been futile, as the tribe had no tribal court).

*10 Thus, plaintiff has failed to demonstrate that he exhausted his tribal court remedies, or that he was excused from exhaustion. See Cayuga Nation, 605 F. Supp. at 431 (holding that where the plaintiff did not establish exhaustion and had failed to meet the exceptions, "it would be premature for this Court to act until the ... [Tribal] Court action ... is exhausted."). Accordingly, the undersigned also recommends plaintiff's complaint be dismissed for failure to exhaust.

**4. State Law Claims**

Plaintiff alleges that defendant caused "willful neglect, emotional distress, [and] financial hardship[.]" Compl. at 6. Liberally construing his complaint, he appears to bring state law claims for fraud and negligence, as well as negligent and intentional infliction of emotional distress. See id. "Although, generally, this Court has the discretion to exercise its supplemental jurisdiction to review state law claims in some cases, where there is no meritorious federal claim before the Court, the district court should decline to exercise its supplemental jurisdiction to review any related state law claims." Passero v. Schulz, No. 1:17-CV-1296 (TJM/CFH), 2018 WL 2926292, at *4 (N.D.N.Y. Feb. 1, 2018) (citing Block v. First Blood Assocs., 988 F.2d 344, 351 (2d Cir. 1993), and Purgess v. Sharrock, 33 F.3d 134 (2d Cir. 1994)), report and recommendation adopted sub nom. Passero v. Schultz, 2018 WL 2926295 (N.D.N. Y June 7, 2018); see Lawler v. ViaPort New York, LLC, No. 1:19-CV-548 (GLS/CFH), 2019 WL 2717900, at *3 (N.D.N.Y. June 28, 2019) (recommending, upon § 1915 review, that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claim where the plaintiff failed to "set forth a valid federal law claim"), report and recommendation adopted, 2019 WL 6134180 (N.D.N.Y. Nov. 19, 2019).

Thus, as there exists no valid federal claim, it is recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims. See Passero, 2018 WL 2926292, at *4 ("As [the] plaintiff's complaint currently fails to demonstrate the involvement of a federal question, and, thus, fails to demonstrate this Court's jurisdiction, it is recommended that this Court also decline to exercise jurisdiction over [the] plaintiff's potential state law claim.") (citing Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs., 804 F. Supp. 2d 100, 107 (N.D.N.Y. 2011), and 28 U.S.C. § 1367(3)(c)).

### III. Leave to Amend

Generally, in cases involving pro se plaintiffs, a court should not dismiss a complaint without granting leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991) (citations omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco, 222 F.3d at 112; see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). "[L]ack of subject-matter jurisdiction is generally viewed as a substantive defect." Planck v. Schenectady Cnty., No. 1:12-CV-0336 (GTS/DRH), 2012 WL 1977972, at *6 (N.D.N.Y. June 1, 2012) (footnote omitted); see Laake v. Turning Stone Resort Casino, No. 6:17-CV-00249, 2017 WL 6626677, at *4 (N.D.N.Y. Oct. 25, 2017) ("Because better pleading would not cure the lack of subject matter jurisdiction, [the p]laintiff is not given leave to replead."), aff'd, 740 F. App'x 744 (2d Cir. 2018) (summary order).

*11 As plaintiff has not established subject matter jurisdiction, it is recommended that his complaint be dismissed without prejudice. [12] See McKie v. Kornegay, No. 21-1943, 2022 WL 4241355, at *2 (2d Cir. Sept. 15, 2022) (summary order) ("A dismissal for lack of subject matter jurisdiction must be without prejudice, because 'without jurisdiction, the district court lacks the power to adjudicate the merits of the case.' ") (quoting Carter v. HealthPort Techs., LLC, 822 F.3d 47, 54-55 (2d Cir. 2016)). However, as "leave to amend would be futile as the defects in plaintiff's claims cannot be cured with a better pleading as the problems are substantive," [13] it is further recommended that his complaint be dismissed without leave to amend. Vazquez v. Times Union Newspaper, No. 1:21-CV-1359 (DNH/CFH), 2022 WL 837474, at *4 (N.D.N.Y. Mar. 1, 2022) (citing Cuoco, 222 F.3d at 112, and Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)), report and recommendation adopted, 2022 WL 833370 (N.D.N. Y Mar. 21, 2022); see, e.g., Koziel v. City Ct. of Yonkers, 351 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming sua sponte dismissal of the pro se plaintiff's complaint without leave to amend due to lack of subject matter jurisdiction and, alternatively, for failure to state a claim, finding "no possibility in this case that even an amended complaint would succeed in stating a valid claim"); Shidagis v. Citgo Gas Station, No. 3:23-CV-0192 (DNH/ML), 2023 WL 2634067, at *4 (N.D.N.Y. Mar. 6, 2023) (recommending dismissal without prejudice and without leave to amend, because plaintiff failed to establish subject matter jurisdiction and "leave to amend would be futile"), report and recommendation adopted, 2023 WL 2631890 (N.D.N.Y. Mar. 24, 2023).

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby



**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against defendant Akwesasne Mohawk Casino Resort (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE BUT WITHOUT LEAVE TO AMEND**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [14]

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3677262

### Footnotes

1 Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

2 All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

3 On April 1, 2024, prior to this Court's initial review of plaintiff's complaint, defendant filed a motion to dismiss for lack of subject matter jurisdiction and for failure to exhaust. See generally Dkt. No. 6. However, as the Court has yet to conduct initial review or authorize service in this case, the undersigned declines to consider the defendant's motion in this Report-Recommendation and Order. See 28 U.S.C. §§ 1915, 1915(a).

4 The Court's citations to plaintiff's complaint reflect the pagination generated by the Court's electronic filing program, CM/ECF, located at the header of each page, rather than to the individual pagination of each submission.

5 Plaintiff does not specify who this "woman" is, or whether she is an employee of defendant. See generally Compl.

6 The undersigned notes that, although plaintiff names "Jay McKinney" in his statement of the facts, his claims focus solely on the actions and policies of Akwesasne Mohawk Casino Resort. See generally Compl. Thus, even liberally construing his complaint, it appears that plaintiff intends to bring this action solely against Akwesasne Mohawk Casino Resort ("defendant"). See generally id. In any event, to the extent plaintiff may seek to raise a due process claim against Mr. McKinney pursuant to 42 U.S.C. § 1983, such a claim would fail as plaintiff has not alleged that Mr. McKinney is a state actor. See id. at 6; see also Flagg v. Younkers Sav. & Loan Ass'n, 396 F.3d 178, 186 (2d Cir. 2005) ("Because the United States Constitution regulates only the Government, not private parties, [with respect to a claim brought under § 1983,] a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' ") (quoting United States v. Int'l Brotherhood of Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991)); Yi Sun v. Saslovsky, No. 1:19-CV-10858 (LTS), 2020 WL 6828666, at *7 (S.D.N.Y. Aug. 6, 2020) ("Private parties generally are not state actors and therefore are not usually liable under [§] 1983.") (citing Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013)) (additional citations omitted). Further, plaintiff has not



asserted that Mr. McKinney conspired with a state actor to violate his constitutional rights. See Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (explaining that, to sufficiently allege "a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.") (citations omitted).

7 Liberally construing his allegations, plaintiff appears to be referring to a nature of suit code, as defined on the Civil Cover Sheet (Form JS-44). See CIVIL COVER SHEET, https://www.uscourts.gov/forms/civil-forms/civil-cover-sheet (last visited July 24, 2024). However, "370 Other Fraud" is not a federal statute and, therefore, reference to it alone does not establish federal question jurisdiction.

8 Moreover, " '[t]he proper vehicle for relief for constitutional deprivations stemming from tribal action is [the Indian Civil Rights Act ("ICRA")].' " Edwards, 2019 WL 486077, at *2 (quoting Pitre v. Shenandoah, 633 F. App'x 44, 45 (2d Cir. 2016) (summary order)). "In ICRA, Congress imposed 'certain restrictions upon tribal governments similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment.' " Id. (quoting Santa Clara Pueblo, 436 U.S. at 57). However, plaintiff does not seek relief under ICRA and, even if he did, " 'ICRA provides no private right of action against a tribe or tribal officials and may only be enforced in tribal court or by means of a petition for habeas corpus in federal court.' " Id. (quoting Pitre, 633 F. App'x at 45).

9 Moreover, Indian Tribes are not considered to be unincorporated associations for the purposes of diversity jurisdiction. See Romanella, 114 F.3d at 16.

10 As mentioned above, tribal immunity applies unless "Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Okla., 523 U.S. at 754 (citations omitted). The undersigned notes that plaintiff has not alleged that Congress has abrogated defendant's immunity. See generally Compl. Nor has plaintiff claimed that defendant waived its tribal immunity. See id.; see also Long v. Barrett, No. 2:17-CV-5741 (KM/SCM), 2018 WL 1617702, at *4 (D.N.J. Apr. 3, 2018) (dismissing the plaintiff's claims against the defendant where tribal immunity applied and the plaintiff did not "indicat[e] that the tribe [ ] waived its sovereign immunity or that Congress [ ] authorized a legal action").

11 The test regarding what constitutes harassment and bad faith is not well defined. See, e.g., Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc., 715 F.3d 1196, 1201 (9th Cir. 2013) (noting that "Black's Law Dictionary defines bad faith as dishonesty of belief or purpose[,]" and holding that where "a tribal court has asserted jurisdiction and is entertaining a suit, the tribal court must have acted in bad faith for exhaustion to be excused.") (internal quotation marks and citations omitted). The undersigned notes that plaintiff has not sufficiently alleged that the tribe acted with "dishonesty of belief or purpose," or that the tribe is biased or incompetent in any way. See generally Compl. at 4-5. To the extent that plaintiff argues that the ticket was cashed "against [defendant's] own policy" and that he "made multiple attempts for help[,]" these contentions do not sufficiently allege that defendant acted in bad faith. Compl. at 5; see AG Organic, Inc. v. John, 892 F. Supp. 466, 477 (W.D.N.Y. 1995) (finding "no compelling reason to excuse exhaustion on the basis of the 'bad faith' exception" because "except in the most unusual circumstances, claims of bias or incompetence be raised first and fully litigated in the tribal court system").

12 Specifically, it is recommended that the dismissal be without prejudice to plaintiff's ability to commence an action in an appropriate state or tribal court, should he wish to do so. The undersigned makes no comment as to the success of the claim, or the ability to bring such a claim, in state or tribal court. See Vazquez v. Times Union Newspaper, No. 1:21-CV-1359 (DNH/CFH), 2022 WL 837474, at *4 n.5 (N.D.N.Y. Mar. 1, 2022), report and recommendation adopted, 2022 WL 833370 (N.D.N.Y. Mar. 21, 2022).



13 Amendment would be futile because, as discussed, plaintiff cannot establish subject matter jurisdiction over defendant. See discussion supra Subsection II.C.1; see also Frazier v. Turning Stone Casino, 254 F. Supp. 2d at 314 (denying the plaintiff leave to amend because amendment would be futile). Moreover, defendant is entitled to tribal immunity. See Laake, 2017 WL 6626677, at *4 (holding that the court lacked subject matter jurisdiction due to tribal immunity and, thus, amendment would be futile). Further, plaintiff has failed to establish that he exhausted his tribal remedies or that an exception would apply and, as such, he needs to bring this matter first to St. Regis Tribal Council. See National Farmers, 471 U.S. at 857. Finally, a § 1983 claim against defendant fails because the "Bill of Rights and the Fourteenth Amendment do not apply to Indian tribes[.]" Edwards, 2019 WL 486077, at *2.

14 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

711 Fed.Appx. 17
This case was not selected for publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Anthony ROMANO, Plaintiff-Appellant,
v.
Lisa LISSON, K. Crowley, T. Campbell, Scarvani, Evertt, Stirk, Scarelli, Captain, Blask, Sergeant, Hayes, Sergeant, The Johnson Law Group LLP, Napoli Bern Ripkash Kolnik LLP, Defendants.

16-2708
|
October 3, 2017

**Synopsis**

**Background:** State prisoner brought pro se § 1983 action against nine prison officials alleging violations of his constitutional rights, based on officials' alleged deprivation of his access to the phone and his legal mail. The United States District Court for the Western District of New York, Arcara, J., sua sponte dismissed the case with prejudice on grounds that prisoner failed to state a claim upon which relief could be granted. Prisoner appealed.

**Holdings:** The Court of Appeals held that:

[1] district court erred by sua sponte dismissing prisoner's claim alleging tampering with all legal mail without affording prisoner opportunity to amend, and

[2] district court erred by sua sponte dismissing prisoner's claim alleging deprivation of phone calls without affording prisoner opportunity to amend.

Vacated and remanded.

**Procedural Posture(s):** Other.

West Headnotes (2)

[1] **Costs, Fees, and Sanctions** ⟵ Claims by prisoners

District court erred by sua sponte dismissing, for failure to state a claim, state prisoner's pro se claim against prison officials alleging that a correctional officer tampered with all legal mail, in violation of his First, Eighth, and Fourteenth Amendment rights, without affording prisoner opportunity to amend; although prisoner's allegations that officials interfered with "all legal mail" was too conclusory to be plausible, prisoner's pro se complaint was entitled to amend as a liberal reading of the complaint gave indication that a valid claim might be stated. U.S. Const. Amends. 1, 8, 14; 28 U.S.C.A. § 1915(e)(2)(B).

16 Cases that cite this headnote

[2] **Costs, Fees, and Sanctions** ⟵ Claims by prisoners

District court erred by sua sponte dismissing, for failure to state a claim, state prisoner's pro se claim against prison officials, alleging that they deprived him of his phone, without affording prisoner opportunity to amend; while court had not previously addressed whether prisoners enjoyed a First Amendment right to make and receive phone calls, it was conceivable that such claim could be made since other courts in other jurisdictions had held that prisoners do have such rights in at least some circumstances, and so prisoner should have been offered the opportunity to amend so as to reasonably set forth his claim. U.S. Const. Amend. 1; 28 U.S.C.A. § 1915(e)(2)(B).



2 Cases that cite this headnote
More cases on this issue

*18 Appeal from a judgment of the United States District Court for the Western District of New York (Arcara, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court entered on June 16, 2016 is **VACATED to the extent set forth below**, and the case is **REMANDED** for further proceedings consistent with this order.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Benjamin A. Fleming (Ira M. Feinberg, Alan M. Mendelsohn, on the brief), Hogan Lovells, New York, NY

Present: Debra Ann Livingston, Gerard E. Lynch, Denny Chin, Circuit Judges,

**SUMMARY ORDER**

Anthony Romano ("Romano") is a prisoner who was incarcerated at the Wende Correctional Facility, a maximum-security prison located in Alden, New York. On February 1, 2016, Romano filed a handwritten § 1983 action against nine Wende officials and two law firms alleging violations of his constitutional rights.

The complaint alleges that the prison officials deprived Romano of his access to the phone and his legal mail and that the law firms improperly settled a civil suit on his behalf and dropped him from another. More specifically regarding the allegations against the prison officials, the complaint alleges that Evertt, a correctional officer, "tampered with all legal mail." Pl.-Appellant App. at 12. Additionally, eight Wende officials are alleged to have deprived him of his phone privileges (or conspired to do so) from late November 2013 through 2014, cutting off Romano's contact with his attorneys (although it is not clear from the complaint which attorneys he is referring to). The complaint specifies that Romano is raising Free Speech, Due Process, Access to the Courts, and Right to Counsel claims, and that the officials' and law firms' conduct violated his First, Eighth, and Fourteenth Amendment rights. Romano sought permission to proceed *in forma pauperis* before the district court and moved for service of process on the defendants.

On June 16, 2016, the District Court for the Western District of New York (Arcara, *J.*) granted Romano's motion to proceed *in forma pauperis* and *sua sponte* dismissed the case with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) on the grounds that Romano failed to state a claim upon which relief can be granted. The court dismissed the § 1983 claims against the two law firms because neither were state actors and the claims against the prison officials on the grounds that granting leave to amend would be futile.

Romano filed a timely notice of appeal and moved to proceed *in forma pauperis* and for appointment of counsel. On December 8, 2016, we granted both motions and affirmed the judgment of the district court with respect to Romano's claims against his private attorneys. As to the remaining claims addressed herein, we assume the parties' familiarity with the underlying facts, procedural history, and issues *19 before this Court, and discuss only those facts relevant to our decision.

***

We review *de novo* both "a district court's *sua sponte* dismissal of an *in forma pauperis* complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)," *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 n.8 (2d Cir. 2015), and a district court's denial of leave to amend on futility grounds, *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). We conclude that the district court erred in denying Romano leave to amend as to his remaining claims. We therefore vacate the judgment below as to these claims and remand to the district court for further proceedings consistent with this opinion.

A complaint must state a plausible claim for relief to survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen*, 746 F.3d at 62 (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). Even if a complaint fails to state a claim, "leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen*, 746 F.3d at



62 (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation marks and citation omitted)).

**[1]** We have held that "a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). A prison may not "regularly and unjustifiably" interfere with a prisoner's mail. *Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012) (quoting *Davis*, 320 F.3d at 351). The complaint makes only one reference to mail tampering: that Evertt "tampered with all legal mail." Pl.-Appellant App. at 12. Romano argues on appeal that the word "all" suggests the prison systematically interfered with his legal mail. But without more specifics, an allegation that prison officials interfered with "all legal mail" is too conclusory to be plausible. The district court erred, however, in dismissing this claim with prejudice. As we have said, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen*, 746 F.3d at 62 (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal brackets and quotation marks omitted)).

**[2]** The district court erred in dismissing Romano's phone-related allegations with prejudice for the same reason. Although this Court has not addressed whether prisoners enjoy a First Amendment right to make and receive phone calls, other Circuits have held they do in at least some circumstances. *See Johnson v. State of Cal.*, 207 F.3d 650, 656 (9th Cir. 2000); *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991); *see also Birth v. Pepe*, No. 98 CV 1291 (RR), 1999 WL 684162, at *2 (E.D.N.Y. July 21, 1999) (Raggi, J.). Romano lists eight officials who either deprived him of his phone privileges or conspired to do so from November 2013 through 2014. While Romano's allegations are sparse and we take no position here on the viability of a claim grounded in these allegations, we conclude that Romano should have been offered the opportunity to amend so as reasonably to set forth this claim.

Accordingly, we **VACATE** the judgment below to the extent that it dismissed with prejudice Romano's claims against the prison officials. We **REMAND** to the district *20 court so that Romano may be provided the opportunity to amend the complaint as to the aforementioned claims and any related claims against the officials that the district court identifies as suitable for amendment. In light of Romano's asserted history of mental illness and the complexity of the telephone access issue, which is a matter of first impression in this Circuit, we recommend that the district court consider appointing counsel for Romano to help him prosecute this action. *See, e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 476 (2d Cir. 2006); *see also Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

**All Citations**

711 Fed.Appx. 17

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

335 Fed.Appx. 102
This case was not selected for publication in West's Federal Reporter.
United States Court of Appeals,
Second Circuit.

Sandra SHEEHY, et al., Plaintiffs–Appellants,
v.
Thomas P. BROWN, et al., Defendants–Appellees.

No. 08–0102–cv.
|
June 23, 2009.

**Synopsis**
**Background:** Plaintiffs appealed, pro se, a judgment of the United States District Court for the Western District of New York, Telesca, J., sua sponte dismissing their complaint.

**Holdings:** The Court of Appeals held that:

[1] plaintiffs failed to establish § 1983 claims arising out of their allegedly false prosecutions, and

[2] plaintiffs failed to state a claim for conspiracy to interfere with civil rights.

Affirmed.

West Headnotes (2)

[1] **Civil Rights** ⇐ Criminal prosecutions
Plaintiffs failed to allege that their convictions or sentences were invalidated or otherwise expunged, as required to establish § 1983 claims arising out of their allegedly false prosecutions. 42 U.S.C.A. § 1983.

62 Cases that cite this headnote

[2] **Conspiracy** ⇐ Civil rights conspiracies
Plaintiffs failed to allege the formation of a conspiracy, and overt acts in furtherance of such conspiracy, as required to state a claim for conspiracy to interfere with civil rights. 42 U.S.C.A. § 1985.

431 Cases that cite this headnote

***103 UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

Sandra Sheehy, pro se.

Robert Sheehy, pro se.

Patrick Sheehy, pro se.

Bobbi Sheehy, pro se.

Billie Sheehy, pro se.

Casey Sheehy, pro se.

Sherry Sheehy, pro se.

PRESENT: Hon. PIERRE N. LEVAL, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

***SUMMARY ORDER***

****1** Plaintiffs–Appellants Sandra, Robert, Patrick, Bobbi, Billie, Casey, and Sherri Sheehy, *pro se*, appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), *sua sponte* dismissing the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). We assume the parties' familiarity with the facts, procedural history and issues on appeal.

Having reviewed *de novo* the district court's *sua sponte* dismissal under § 1915(e), *see Giano v. Goord,* 250 F.3d 146, 149–50 (2d Cir.2001), we conclude that the district court did not err in dismissing Appellants' complaint.

**[1]** First, any 42 U.S.C. § 1981 or § 1983 claim against Appellees Lucy or Edward Sherwood, Thomas Fuoco, Mark Wattenberg, or Steve Presutti was properly dismissed, as private actors and institutions generally are not proper § 1983 defendants. *See American Mfrs. Mut. Ins. Co. v.*



*Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (§ 1983 actions do not reach purely private conduct). Additionally, for an individual to recover damages for an allegedly unconstitutional conviction or imprisonment, he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Thus, any § 1983 claims arising out of the allegedly false prosecutions of Sandra, Patrick, or Robert Sheehy were appropriately dismissed, as Appellants did not allege that their convictions or sentences were invalidated or otherwise expunged. *Id.*

***104** As for the American Society for the Prevention of Cruelty to Animals, the Allegany County Society for the Prevention of Cruelty to Animals, and Appellee Presutti, claims against these defendants were properly dismissed, as Appellants did not allege any wrongdoing on their part or specify how they were involved in the constitutional violations alleged. *See* 28 U.S.C. § 1915(e)(2). Next, to the extent that Appellants challenge the conduct of county district attorneys or state court judges, such actors are entitled to immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 766, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Appellants also assert § 1983 claims against: (1) county sanitation workers for entering the Sheehys' property, in violation of their property and privacy rights; (2) state troopers for use of excessive force and retaliation; and (3) Allegany County Department of Social Services employees for entering the Sheehys' property and removing the Sheehy children from their homes, in violation of their First, Fourth, and Ninth Amendment rights. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). We conclude that because the Appellants' § 1983 allegations are so vague as to fail to give the defendants adequate notice of the claims against them, the district court did not err in dismissing them.

****2 [2]** Appellants also assert claims under § 1985, for which a plaintiff must allege: (1) a conspiracy, (2) which has an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Here, the Appellants' claims of conspiracy failed to specifically allege (1) the formation of a conspiracy; or (2) overt acts in furtherance of such conspiracy. Thus, the district court correctly dismissed any claims brought pursuant to §§ 1985 and 1986.

To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994). In addition, any claim brought under 42 U.S.C. § 2000d, which prohibits the exclusion of individuals from a federally funded program or activity on the basis of race, color, or national origin, properly was dismissed, as Appellants did not allege that they were excluded from a federally funded program or activity and, thus, no claim exists under that statute. Similarly, although former 42 U.S.C. § 13981 authorized a cause of action arising out of a crime of violence motivated by gender, the Supreme Court has held that statute unconstitutional. *See United States v. Morrison,* 529 U.S. 598, 601, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

We have reviewed Appellants' remaining arguments and find them to be without merit. We also note here that we see no ***105** indication in the record that Appellants perfected service on any of the defendants in this case.

Therefore, for the reasons stated above, the judgment of the district court is AFFIRMED.

**All Citations**

335 Fed.Appx. 102, 2009 WL 1762856

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.





2024 WL 4818523
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Brandon STORY, Plaintiff,
v.
FORT GORDON, UNITED STATES MILITARY, Defendant.

1:24-CV-00626 (MAD/CFH)
|
Signed November 18, 2024

**Attorneys and Law Firms**

MICHAEL BRANDON STORY, 56 Shelterwood Rd, Apt A, East Greenbush, New York 12061, Plaintiff Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

***1** On May 6, 2024, *pro se* Plaintiff Michael Brandon Story ("Plaintiff") filed a complaint, purporting to bring claims against Defendant Fort Gordon, United States Miliary ("Defendant"), *see* Dkt. No. 1, and a motion for leave to proceed *in forma pauperis* ("IFP"), Dkt. No. 2.[1] Plaintiff indicates that the basis for this Court's jurisdiction is a federal question and, in reference to "the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case," Plaintiff states, "[e]lectronic [h]arrasment [sic] from miltary [sic] towers/SINCGARS." Dkt. No. 1 at 3. In the statement of the claim, Plaintiff alleges that he is "hearing [e]lectronic harrassment [sic] from miltary [sic] towers having to do with SINCGARS." *Id.* at 4. Plaintiff also states that the amount in controversy is $500,000,000. *Id.*

On September 26, 2024, Magistrate Judge Hummel issued a Report-Recommendation & Order granting Plaintiff leave to proceed IFP and recommending that Plaintiff's complaint be dismissed without prejudice and without leave to amend, pursuant to 28 U.S.C. § 1915(e)(2)(B). *See* Dkt. No. 6.

Plaintiff has not filed any objections to the Report-Recommendation & Order. When a party declines to file an objection, the Court reviews a recommendation for clear error. *See O'Diah v. Mawhir,* No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen,* 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Because Plaintiff has not filed an objection, the Court will review the recommendation for clear error.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has stated that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely "because of their lack of legal training." *Id.* (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

The Court finds no clear error in Magistrate Judge Hummel's Report-Recommendation & Order. As Magistrate Judge Hummel notes, the complaint filed in this action is nearly identical to the complaint Plaintiff filed, on the same day, against the Federal Communications Commission ("FCC"). *See* Dkt. No. 6 at 6 (citing *Story v. FCC*, 1:24-CV-00625). This Court adopted, in full, Judge Hummel's recommendation that Plaintiff's claims in *Story v. FCC* be dismissed without prejudice and without leave to amend. *See Story v. FCC*, 1:24-CV-00625, at Dkt. No. 7. Here, the Court again adopts Magistrate Judge Hummel's Report-Recommendation & Order in full.

***2** Magistrate Judge Hummel recommends that the complaint be dismissed because it fails to meet the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. *See* Dkt. No. 6 at 6. The Court agrees that Plaintiff's complaint, which consists of only one or two sentences, provides no factual context or support for Plaintiff's claims. *See id.* Plaintiff has also failed to provide a " 'short and plain statement of the grounds for the [C]ourt's jurisdiction' " and the complaint does not provide sufficient notice to Defendant of the claims against it. *Id.* (quoting Fed. R. Civ. P. 8) (other citations omitted).

Moreover, Magistrate Judge Hummel correctly determined that, in addition to failing to meet the pleading requirements contemplated by Rules 8 and 10, the complaint is subject to dismissal because it is frivolous and fails to state a claim. *See*

*id.* at 6-7. This Court is " 'without power to entertain claims that are so attenuated and unsubstantial as to be absolutely devoid of merit[,]' " *Hines v. United States*, No. 6:19-CV-06837, 2020 WL 570605, *2 (W.D.N.Y. Feb. 5, 2020) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)), and "[n]o federal question jurisdiction exists when the complaint is ... essentially fictitious," *id.* (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)) (internal quotation marks omitted). "Claims that are 'essentially fictitious' include those that allege 'bizarre conspiracy theories, any fantastic government manipulations of [the plaintiff's] will or mind [or] any sort of supernatural intervention.' " *Id.* (quoting *Best*, 39 F.3d at 330).

Plaintiff has not articulated how the alleged conduct was committed, how he was harmed, how his allegations of "harassment" by "SINCGARS" and/or "military towers" is connected to any claim for legal relief, or how Defendant was involved in the alleged violations. *See id.* at 8-9 ("Even employing its best efforts—in due deference to plaintiff *pro se* status—the Court is unable to discern coherent factual allegations or legal claims"); *see also*, *Hines*, 2020 WL 570605, at *2 ("The Court is mindful that complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers .... Nonetheless, the Court has the discretion to decide whether a complaint is frivolous ..., and such finding is appropriate where the facts alleged are irrational or wholly incredible") (internal citations omitted). For these reasons, the Court adopts the recommendation that Plaintiff's claims be dismissed because they are frivolous and because Plaintiff has failed to state a claim upon which relief can be granted.

Finally, the Court finds no clear error in Magistrate Judge Hummel's conclusion that, although leave to amend would normally be appropriate, leave to amend should not be granted here because the complaint is "so attenuated and unsubstantial as to be absolutely devoid of merit[,]" and, as such, "no better pleading would cure these defects." *Id.* at 9-10 (quotations and internal quotation marks omitted).

After carefully reviewing the Report-Recommendation & Order, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation & Order (Dkt. No. 6) is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules; and the Court further

*3 **ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor close this case.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4818523

Footnotes

1 The following cases, also filed by Plaintiff, have been deemed related by the Court: 1:24-CV-00623, 1:24-CV-00625, 1:24-CV-00627, 1:24-CV-00631; 1:24-CV-00632; 1:24-CV-01346. *See* Dkt. No. 5; *Story v. Central Intelligence Agency*, 1:24-CV-00631, at Dkt. No. 5; *Story v. United States*, 1:24-CV-01346, at Dkt. No. 5.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.



## All Citations

Slip Copy, 2026 WL 1660470

## Footnotes

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 2227973
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andre Rene LEVESQUE, Plaintiff,
v.
The PEOPLE OF THE UNITED STATES, Defendants.

8:25-CV-1259 (MAD/PJE)
|
Signed 08/03/2026

**Attorneys and Law Firms**

Andre Rene Levesque, Plattsburgh, NY, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge

***1** Plaintiff Andre Rene Levesque commenced this action on September 8, 2025. *See* Dkt. No. 1. In the caption of Plaintiff's two-page handwritten complaint, he identifies Defendants as "[t]he People of the United States and all their foreign and domestic trading partners." *Id.* at 1. Plaintiff also filed a single-page motion which ostensibly seeks an order requiring the U.S. Marshals hand deliver to Defendants "each document the federal court received from [Plaintiff] in all 50 states and state filings as evidence" as well as a computer for Defendants to "actually review the evidence." *See* Dkt. No. 3.

On June 8, 2026, Magistrate Judge Paul J. Evangelista issued a Report-Recommendation and Order, granting Plaintiff's motion to proceed *in forma pauperis* and recommending that (1) Plaintiff's complaint be dismissed without prejudice and without leave to amend; and (2) Plaintiff's motion seeking to compel the U.S. Marshals to act be denied as moot. *See* Dkt. No. 5.

Plaintiff has not filed objections to the Report-Recommendation and Order. When a party declines to file objections, the Court reviews a recommendation for clear error. *See O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Because Plaintiff has not filed objections, the Court will review the Report-Recommendation and Order for clear error. [1]

1 On July 27, 2026, the Court received a letter from Plaintiff updating his address and asking that he be provided a "copy" of another case he brought in the Northern District of New York so that he can "refile the case." *See* Dkt. No. 7 at 1. Plaintiff also requested the "R&R." *Id.* On June 16, 2026, the docket indicates that the Report-Recommendation and Order sent to Plaintiff was returned as undeliverable at the address Plaintiff provided. Dkt. No. 6. The Local Rules require Plaintiff to update the address listed on the docket within 14 days of a change of address or risk dismissal of the action. *See* N.D.N.Y. L.R. 41.2(b). Plaintiff did not update his address in the nearly two months between the issuance of the Report-Recommendation and Order on June 8, 2026, and his recent letter on July 27, 2026. As such, Plaintiff has forfeited his opportunity to object, and the failure to update his address constitutes an independent ground for dismissal of the action.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has stated that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely "because of their lack of legal training." *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

***2** Here, the Court finds no clear error in Magistrate Judge Evangelista's Report-Recommendation and Order. Magistrate Judge Evangelista employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. *See* Dkt. No. 5 at 2-10.

First, Magistrate Judge Evangelista recommends that the complaint be dismissed for failure to meet the pleading requirements contemplated by Rules 8 and 10 of the Federal Rules of Civil Procedure. *See id.* at 6-7. The Court agrees that Plaintiff's complaint, which consists of two pages of broad assertions with little-to-no clarity or explanation, provides no factual context or legal support for any purported claim. *See*

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

*id.* at 7. Plaintiff has also failed to provide a " 'short and plain statement of the grounds for the [C]ourt's jurisdiction' " and the complaint does not provide sufficient notice to Defendants of any cognizable the claims. *See id.* (quoting Fed. R. Civ. P. 8). For these reasons, the Court discerns no clear error in Magistrate Judge Evangelista's recommendation that the complaint be dismissed for failure to comply with Rules 8 and 10. *See Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) ("A complaint that fails to comply with [Rules 8 and 10] 'presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of' a plaintiff's claims, and may properly be dismissed by the Court") (quoting *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y.1996)).

Moreover, Magistrate Judge Evangelista correctly determined that, in addition to failing to meet the pleading requirements of Rules 8 and 10, the complaint is subject to dismissal because it is frivolous and fails to state a claim. *See id.* at 7-10. This Court is " 'without power to entertain claims that are so attenuated and unsubstantial as to be absolutely devoid of merit[,]' " *Hines v. United States*, No. 6:19-CV-06837, 2020 WL 570605, *2 (W.D.N.Y. Feb. 5, 2020) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)), and "[n]o federal question jurisdiction exists when the complaint is ... essentially fictitious," *id.* (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)) (internal quotation marks omitted). "Claims that are 'essentially fictitious' include those that allege 'bizarre conspiracy theories, any fantastic government manipulations of [the plaintiff's] will or mind[, or] any sort of supernatural intervention.' " *Id.* (quoting *Best*, 39 F.3d at 330).

Plaintiff alleges that the People of the United States "systematically denied [him] due process and allowed people to abduct [him] while trying to ste[al] from [him,]" "got [him] to chant [']Death to America murder mutilate maul maime [sic] destroy them all['] 200 million x[,]" and "intentionally prevented [him] from accessing the computer while [he] was beaten and tortured repeatedly." Dkt. No. 1 at 1-2. As Magistrate Judge Evangelista observed, in addition to naming the People of the United States and all foreign and domestic trading partners as Defendants, Plaintiff also appears to express his intent to proceed against the United States Supreme Court, the United States Congress, and all forty-seven Presidents of the United States. *See* Dkt. No. 5 at 6. As for monetary damages, Plaintiff demands "4 trillion 671 billion 285 million dollars U.S. currency." Dkt. No. 1 at 2.

***3** Even in light of the deference afforded to *pro se* parties, the Court cannot discern from Plaintiff's complaint how the alleged conduct was committed, who committed it, nor how these allegations are connected to any legitimate claim for relief. *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic[,]' or 'delusional' ") (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)); *Hines*, 2020 WL 570605, at *2 ("The Court is mindful that complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers .... Nonetheless, the Court has the discretion to decide whether a complaint is frivolous ..., and such finding is appropriate where the facts alleged are irrational or wholly incredible") (internal citations omitted). Accordingly, the Court finds no clear error in the recommendation that Plaintiff's claims be dismissed because they are frivolous.

Finally, the Court finds no clear error in Magistrate Judge Evangelista's recommendation that leave to amend should not be granted because no better pleading could cure the defects in the complaint. *See* Dkt. No. 5 at 10. "A district court generally should not dismiss a *pro se* complaint without granting at least one opportunity to amend, but amendment should be denied where the complaint gives no 'indication that a valid claim might be stated.' " *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, *3 (2d Cir. Sept. 15, 2022) (summary order) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Indeed, because the allegations in the complaint are factually frivolous and better pleading cannot cure these defects, granting leave to replead would be futile. *See Igarashi v. Skulls & Bones*, 438 Fed. Appx. 58 (2d Cir. 2011) (summary order) ("[L]eave to amend is not necessary when it would be futile, as when the complaint, even read liberally, does not 'suggest[ ] that the plaintiff has a claim that [he] has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe' ") (citation omitted).

As the complaint is subject to dismissal, Plaintiff's motion seeking to compel the U.S. marshals to deliver certain evidence to Defendants is denied as moot. *See* Dkt. No. 3.

After carefully reviewing the Report-Recommendation and Order, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Evangelista's Report-Recommendation and Order (Dkt. No. 5) is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**; and the Court further

**ORDERS** that Plaintiff's motion seeking to compel the U.S. Marshals to act (Dkt. No. 3), is **DENIED** as moot; and the Court further

**ORDERS** that the Clerk of the Court is directed to close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 2227973

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 10246976
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Derrick Troy HILL, Plaintiff,
v.
The People of the State of NEW YORK, et al., Defendants.

9:18-CV-0005 (MAD/CFH)
|
Signed 03/01/2018

**Attorneys and Law Firms**

DERRICK TROY HILL, 18-A-0259, Plaintiff, pro se, Ulster Correctional Facility, P.O. Box 800, Berme Road, Napanoch, NY 12458.

**DECISION and ORDER**

MAE A. D'AGOSTINO, United States District Judge

## I. INTRODUCTION

***1** The Clerk has sent to the Court for review a civil rights complaint brought pro se by plaintiff Derrick Troy Hill. Dkt. No. 2 ("Compl."). This action, commenced by plaintiff in the United States District Court for the Southern District of New York, was transferred to this District by Order of Southern District Chief Judge Colleen McMahon. Dkt. No. 3. Plaintiff, who is presently confined at Ulster Correctional Facility and has not paid the filing fee, seeks leave to proceed with this action in forma pauperis. Dkt. No. 8 ("IFP Application"). [1]

1 On January 3, 2018, the Court administratively closed this case due to plaintiff's failure to submit a completed and certified application for in forma pauperis status and the required inmate authorization form. Dkt. No. 5. The case was reopened on January 11, 2018, upon receipt from plaintiff of these filings. Dkt. No. 9.

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of plaintiff's IFP Application, the Court finds that he has demonstrated economic need. Plaintiff has also filed the inmate authorization required in the Northern District of New York. Dkt. No. 7. As a result, the Court grants plaintiff's IFP Application. [2]

2 Plaintiff's earlier filed application for in forma pauperis status, Dkt. No. 6, is denied as unnecessary.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Governing Standard

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because he seeks relief from governmental entities and officials and employees thereof, the Court must now consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. Section 1915(e)(2) directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, Section 1915A directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both Sections 1915 and 1915A are available to evaluate prisoner pro se complaints). Thus, although the court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an

opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine whether plaintiff may properly proceed with this action.

***2** When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 " 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, ... prepare an adequate defense' " and determine whether the doctrine of res judicata is applicable. *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## B. Summary of the Complaint

The following facts are set forth as alleged in the complaint. [3] On approximately September 13, 2017, plaintiff was falsely arrested by officers from the Schenectady Police Department, who were acting on an "invalid warrant." Compl. at 2, 4. Plaintiff was identified by a witness through a police line-up or photographic array which was "impermissibly suggestive." *Id.* at 2. During the course of the criminal proceedings, the "prosecution" improperly withheld evidence "which could have helped [plaintiff's] case." *Id.* Several adverse evidentiary rulings were made by the presiding judge, who was "biased" against plaintiff because plaintiff "did not bribe him." *Id.*

3 The submission docketed as plaintiff's complaint consists of a two page pleading (Dkt. No. 2 at 1-2) and a three page "second amended complaint" (Dkt. No. 2 at 3-5), both of which have been reviewed.

Liberally construed, plaintiff asserts false arrest and malicious prosecution claims. In addition to the Schenectady Police Department, plaintiff names as defendants "The People of the State of New York," Schenectady County Court Acting Justice Sypniewski, Schenectady County District Attorney ("DA") Carney, and Schenectady County Assistant District Attorney ("ADA") Hughes. Compl. at 1. Plaintiff seeks an award of money damages. *Id.* at 5. For a complete statement of plaintiff's claims, reference is made to the complaint.

## C. Analysis

Plaintiff brings this action pursuant to Section 1983 of Title 42 of the United States Code ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

### 1. Claims Against "The People of the State of New York"

***3** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur*

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

*d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

Based upon the foregoing, plaintiff's claims against "The People of the State of New York" are barred by the Eleventh Amendment and are dismissed with prejudice. *See* 28 U.S.C. § 1915(e)(2)(B)(iii) and 28 U.S.C. § 1915A(b)(2).

### 2. Claims Against Acting Justice Sypniewski

Judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireless v. Waco*, 502 U.S. 9, 9-10 (1991). "Judicial immunity has been created both by statute and by judicial decision 'for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of the consequences.' " *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2005) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (citation and internal quotation marks omitted)). The law in this Circuit clearly provides that "[j]udges enjoy absolute immunity from personal liability under Section 1983 for 'acts committed within their judicial jurisdiction.' " *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quoting *Pierson*, 386 U.S. at 554). "The absolute immunity of a judge applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Id.* at 51 (internal quotations omitted). Thus, under the common law doctrine of judicial immunity, a judge is absolutely immune from a suit for monetary damages unless (1) the actions giving rise to the suit were "not taken in the judge's judicial capacity" or (2) the suit arises from actions taken by the judge "in the complete absence of all jurisdiction." *Huminski v. Corsones*, 386 F.3d 116, 137-38 (2d Cir. 2004) (citations omitted). [4]

4 Similarly, injunctive relief is not available in an action pursuant to Section 1983 against a judicial officer for acts taken in that official's judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff's allegations do not plausibly suggest that such relief is available here.

In short, the proper avenue for challenging a judicial determination is on direct appeal, not by seeking a declaration that the presiding judge's decision violated the litigant's constitutional rights. *Montesano v. State of New York*, No. 05 CV 9574, 2006 WL 944285, at *4 (S.D.N.Y. Apr. 12, 2006). "Neither damages, injunctive nor declaratory relief is available to be used as a vehicle for disgruntled litigants to reverse adverse judgments." *Id.*

Upon review of the complaint and with due regard for plaintiff's status as a pro se litigant, it appears that any claims plaintiff may have against Acting Justice Sypniewski arise solely out of the performance of his judicial duties in presiding over plaintiff's criminal proceedings and determining the issues presented therein. As a result, Acting Justice Sypniewski is absolutely immune from liability for money damages and plaintiff's claims against him are dismissed with prejudice. *See* 28 U.S.C. § 1915(e)(2)(B)(iii) and 28 U.S.C. § 1915A(b)(2).

### 3. Claims Against DA Carney and ADA Hughes

***4** Like judges, prosecutors also enjoy absolute immunity from suit under Section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to Section 1983 for their alleged malicious or selective prosecution, as well as for any misconduct in the presentation of evidence to the Grand Jury); *Shmueli v. City of New York*, 424 F.3d 231, 239 (2d Cir. 2005) (prosecutors are absolutely immune from claims for damages caused by allegedly malicious prosecution on charges known to be false). Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard*, 356 F.3d at 502-03. The initiation and pursuit of prosecution, regardless

of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006).

Here, plaintiff names DA Carney and ADA Hughes as defendants and complains of prosecutorial misconduct during his criminal proceedings. Compl. at 1-3. While the complaint clearly associates these defendants with plaintiff's criminal prosecution, the complaint does not allege facts with respect to the specific actions taken by them. As a result, it is not clear what role each defendant played in plaintiff's prosecution and whether, for example, DA Carney is named as a defendant solely by virtue of his supervisory position.

Upon review, while it appears that plaintiff's claims against DA Carney and ADA Hughes are barred by the doctrine of prosecutorial immunity, the complete absence of supporting factual allegations makes it impossible for the Court to make this finding. However, because for the reasons discussed below, the Court finds that plaintiff's malicious prosecution claim is not cognizable in this Section 1983 action, the claims against DA Carney and ADA Hughes are hereby dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

The Fourth Amendment provides the source for Section 1983 claims related to a plaintiff's arrest, detention and prosecution. *See Caidor v. M&T Bank*, No. 5:05-CV-297 (FJS/GJD), 2006 WL 839547, at *3 (N.D.N.Y. Mar. 27, 2006); *Danielak v. City of N. Y.*, No. 02-CV-2349, 2005 WL 2347095, at *11 (E.D.N.Y. Sept. 26, 2005). To make out a federal claim of malicious prosecution cognizable under Section 1983, "a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.' " *Manganiello*, 612 F.3d at 161 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). It is well-established in this Circuit that "the plaintiff can under no circumstances recover [on a claim of false arrest or malicious prosecution] if he was convicted of the offense for which he was arrested." *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986); *see also Southerland v. City of New York*, 681 F.3d 122, 124-25 (2d Cir. 2012) ("the law does not permit a convicted defendant to challenge the sufficiency of the evidence supporting his arrest") (citing *Cameron*).

***5** Here, because it appears that plaintiff was convicted of criminal charges against him in Schenectady County and is currently in DOCCS custody serving a sentence of up to three and one-half years, there is no basis in the record upon which the Court could conclude that he has a viable malicious prosecution claim.

### 4. Claims Against Schenectady Police Department

It is well-settled that municipal departments and offices which have no separate legal identity and cannot sue or be sued are not "persons" under Section 1983. *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (affirming the district court's dismissal of claims against the NYPD as a non-suable entity); *Sanchez-Martin v. Allegany Cnty. Jail*, No. 11-CV-0568, 2012 WL 360014, at *2 (W.D.N.Y. Feb. 1, 2012) (county correctional facilities do not have legal identities separate and apart from the counties and are not subject to suit under Section 1983); *Ceparano v. Suffolk County*, No. 10-CV-2030, 2010 WL 5437212, at *6 (E.D.N.Y. Dec. 15, 2010) (dismissing claims against Suffolk County Police Dep't, Suffolk County District Attorney's Office, Suffolk County Sheriff's Dep't and Suffolk County Probation Dep't because these entities are not amenable to suit).

Based upon the foregoing, plaintiff's claims against "Schenectady Police Department" are dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

In light of plaintiff's pro se status, the Court has considered whether the complaint alleges facts sufficient to plausibly suggest that plaintiff has a viable false arrest claim against Schenectady County, the real party interest, and concludes that it does not. [5]

5 "A municipality or other local government may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978)).

> However, local governments "are not vicariously liable under § 1983 for their employees' actions;" rather "local governments are responsible only for 'their *own* illegal acts.' " *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). "To plead a *Monell* claim, a plaintiff must allege the existence of a formal policy which is officially endorsed by the municipality, or a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir. 2015) (summary order).

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Jackson v. City of New York*, 939 F. Supp.2d 235, 248 (E.D.N.Y. 2013). Under both federal and New York law, the existence of probable cause " 'including probable cause based on an outstanding warrant' " is a complete defense to a false arrest claim. *Torres v. City of N.Y.*, No. 09 CIV. 9357, 2016 WL 3748492, at *3 (S.D.N.Y. July 11, 2016) (citing *Weyant*). In addition, plaintiff's false arrest claim (like his malicious prosecution claim) appears to be barred by his subsequent conviction. *See Cameron*, 806 F.2d at 387; *Southerland,* 681 F.3d at 124-25.

### D. Opportunity to Amend

***6** The Second Circuit has held that a district court "should not dismiss [a pro se plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation omitted). Although the complaint does not necessarily indicate that plaintiff might be able to state a valid claim, the Court will nonetheless give him an opportunity to present a proposed amended complaint.

Any amended complaint submitted by plaintiff in response to this Decision and Order must set forth a short and plain statement of the facts he relies on in support of his claim that defendants named in that pleading engaged in acts of misconduct or wrongdoing which violated his constitutional rights. Plaintiff's amended complaint, which shall supersede and replace in its entirety the original complaint, must be a complete pleading which sets forth all of the claims that plaintiff wants this Court to consider as a basis for awarding relief herein. Claims dismissed with prejudice shall not be reasserted in any amended complaint.

Plaintiff is advised that his failure to file an amended complaint **within thirty (30) days** of the filing date of this Decision and Order will result in dismissal of this action without prejudice without further Order of the Court.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 8) is **GRANTED**; [6] and it is further

6 Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form (Dkt. No. 7), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk provide a copy of plaintiff's authorization form (Dkt. No. 7) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that plaintiff's earlier filed application for in forma pauperis status (Dkt. No. 6) is **DENIED as unnecessary**; and it is further

**ORDERED** the plaintiff's claims for money damages against "The People of the State of New York" and Schenectady County Court Acting Justice Sypniewski are **DISMISSED with prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B)(iii) and 28 U.S.C. § 1915A(b)(2); the Clerk shall terminate "The People of the State of New York" and Schenectady


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

County Court Acting Justice Sypniewski as defendants in this action; and it is further

**ORDERED** that plaintiff's remaining claims are **DISMISSED without prejudice** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that if plaintiff wishes to proceed with this action he must file an amended complaint **within thirty (30) days** of the filing date of this Decision and Order; and it is further

**ORDERED** that upon the filing of an amended complaint as directed above, the Clerk shall return the file to this Court for further review; and it is further

**ORDERED** that in the event plaintiff fails to file a signed amended complaint **within thirty (30) days** of the filing date of this Decision and Order, the Clerk shall enter judgment dismissing this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) due to plaintiff's failure to state a claim upon which relief can be granted and to comply with the terms of this Decision and Order, without further order of this Court; and it is further

***7 ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 10246976

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 4411339
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rochelle COLEMAN, Plaintiff,
v.
SYRACUSE POLICE DEPARTMENT, et al., Defendant.

5:16-CV-00836 (LEK/TWD)
|
Signed 07/22/2016

**Attorneys and Law Firms**

ROCHELLE COLEMAN, 231 Lilac Street, Syracuse, New York 13208, Plaintiff pro se.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

***1** The Clerk has sent to the Court three complaints filed in one action at the request of pro se Plaintiff Rochelle Coleman.[1] (Dkt. Nos. 1, 1-1, and 1-2.) Each of the separate complaints has purportedly been brought pursuant to a different civil rights statute: 42 U.S.C.§ 1983 (Dkt. No. 1); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5 (Dkt. No. 1-1); and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Dkt. No. 1-2.) Plaintiff has sued the Syracuse Police Department and the 911 Administration Center.[2] *Id.* Plaintiff has also filed two motions to proceed *in forma pauperis* ("IFP application") and a motion for the appointment of counsel. (Dkt. Nos. 2, 2-1 and 4.) For the following reasons, the Court will grant Plaintiff's first IFP application (Dkt. No. 2); deny her second IFP application (Dkt. No. 2-1) as moot; recommend dismissal of her three complaints (Dkt. Nos. 1, 1-1, and 1-2) with prejudice for failure to state a claim; and deny her motion for the appointment of counsel (Dkt. No. 4) without prejudice.

1 Records from the Clerk's Office show that this lawsuit is one of five presented to the Clerk's Office for filing on July 8, 2016. Each appears to contain multiple complaints. *See Coleman v. Engle*, No. 5:16-cv-833 (MAD/DEP) (challenging the handling of her family's public assistance benefits, including charges of errors, fraud, and theft of benefits by Onondaga County Social Services workers); *Coleman v. Detter*, No. 5:16-cv-834 (MAD/DEP) (suing attorneys involved in a Family Court child protective proceeding involving Plaintiff and her children); *Coleman v. Sutkowsky*, No. 5:16-cv-837 (MAD/DEP) (claim that defendants have ignored her welfare fraud complaints against Onondaga County Social Services workers); and *Coleman v. Olinsky*, No. 5:16-cv-838 (MAD/DEP) (lawsuit against Plaintiff's attorneys claiming that benefits were unlawfully taken, overcharging on fees, and benefits wrongfully unreported). Plaintiff earlier presented two lawsuits containing multiple complaints for filing on June 22, 2016. *See Coleman v. Levandowski*, No. 5:16-cv-734 (NAM/ATB) (claims against social workers involved in child protective proceeding involving Plaintiff and her children); and *Coleman v. Hanuszczak*, No. 5:16-cv-735 (NAM/ATB) (suit against Family Court Judge in child protective proceeding).

2 Although the Syracuse Police Department is the named Defendant, Plaintiff has listed "Chief of Police" as the official position of Defendant. (Dkt. No. 1 at ¶ 3.) In light of Plaintiff's pro se status, the Court will review the complaint as though both the Syracuse Police Department and the Chief of Police had been named as Defendants. Plaintiff has also named the 911 Administration Center as a Defendant. *Id.* Plaintiff has listed the "Call Operators" as the official position of the 911 Administration Center. *Id.* Inasmuch as Plaintiff has not identified any specific call operators, the Court will treat the 911 Administration Center as the sole Defendant in its analysis. *Id.*

## I. IFP APPLICATION

***2** A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's first IFP Application, the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's IFP application (Dkt. No. 2) is granted and her second application (Dkt. No. 2-1) is denied as moot.

## II. LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds pro se, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A pro se complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. PLAINTIFF'S COMPLAINTS

### A. 42 U.S.C. § 1983 Complaint

***3** Plaintiff alleges that when she calls the police, they refuse to come, lie about coming, or refuse to investigate out of retaliation because she called the police on police officers for running someone off the road, and taped the beating by the police of a teen on Butternut Street. (Dkt. No. 1 at ¶ 4.) Plaintiff alleges that the police also refuse to help her when she walks in the police station, and that her family is victimized by police officers failure to investigate and act on her reports. *Id.* at ¶ 5. Plaintiff also alleges that the 911 center personnel try to refuse her calls. *Id.* at ¶ 4.

The relief sought by Plaintiff is to have the police officers do their jobs, take her reports, and treat Plaintiff and her family with respect. *Id.* at ¶ 6. Plaintiff also asks for $3,000,000 in damages. *Id.*

### B. Title VII Complaint

Plaintiff alleges retaliatory discrimination against her by Defendants on account of her race or color, income, retaliation, and education in violation of Title VII. (Dkt. No. 1-1 at ¶ 6.) Plaintiff claims that when she goes to the police station for assistance they refuse help and allow criminals to violate her and her family. *Id.* at ¶ 8. She further claims that the police refuse to take her reports, refuse to investigate, refuse to allow her to speak to an investigator, retaliate against her, and allow criminals to get away with violating her. *Id.* at ¶ 9. Plaintiff asks that the police officers and 911 operators be held accountable and not retaliate against her, and that she be awarded $3,000,000 in damages.

**C. ADA Complaint**

Plaintiff alleges she is disabled with post traumatic stress disorder, depression, anxiety, arthritis, migraines/brain cancer, lung and heart cancer, a joint disorder, and insomnia. (Dkt. No. 1-2 at ¶ 4.) Plaintiff claims that the police have retaliated against her by delaying or not showing up and refusing to take her report and telling her to leave when she comes to the police station. Plaintiff seeks relief in the form of an end to the retaliation and that the police officers and 911 operators be held accountable. *Id.* at ¶ 7. Plaintiff also seeks $3,000,000 in compensatory damages. *Id.*

## IV. ANALYSIS

**A. 42 U.S.C. § 1983 Claim**

1. Syracuse Police Department and the Chief of Police

Plaintiff has sued one or the other of, or both the Syracuse Police Department and the Chief of Police. (Dkt. No. 1 at ¶ 3.) Although a municipality is subject to suit pursuant to § 1983, *see Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See Krug v. County of Rennselaer*, 559 F.Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.*, 879 F.Supp. 148 (S.D.N.Y. 1995) (police department and police precincts are not suable entities separate from the City)). Therefore, the Court recommends that the Syracuse Police Department be dismissed from the action.

The Court would recommend dismissal of Plaintiff's claim even if Plaintiff had correctly named the City of Syracuse as defendant. Pursuant to the standard for establishing municipality liability laid out in *Monell*, 436 U.S. at 658, in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell,* 436 U.S. 658); *see also Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.") A municipality may be liable for deprivation of constitutional rights under § 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). To establish causation, there must "at the very least be an affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). Plaintiff has failed to identify or allege any facts showing that the alleged refusal of the unidentified Syracuse police officers to take or investigate her reports was connected in any way to the existence of any municipal policy or custom of the City of Syracuse or the result of a failure to properly train, supervise, or hire the police officers.

***4** The Court also recommends dismissal of Plaintiff's claim as against the Chief of the Syracuse Police Department. "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citations omitted). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6 (N.D.N.Y. Feb. 28, 2012)[3] (citing *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977)); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

3 The Clerk will be directed to provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873.[4] Plaintiff's complaint is devoid of allegations plausibly showing the existence of any of the *Colon* criteria in this case.

4 The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See* *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

As noted above, a pro se plaintiff should generally be granted leave to amend her or his complaint unless the problem with a claim is substantive such that a better pleading will not cure it. *Cuoco,* 222 F.3d at 112. The Court finds that allowing Plaintiff to amend his § 1983 claim against the Police Department and/or its Chief, or the City of Syracuse were it to be named as a party, would be futile in this case. Plaintiff claims that police officers refused to accept and investigate her reports. (Dkt. No. 1.) However, it is well established that "[t]here is no ... constitutional right to an investigation by government officials." *Troy v. City of New York*, No. 13-cv-5082 (AJN), 2014 WL 4804479, * 6 (S.D.N.Y. Sept. 25, 2014) (quoting *Stone v. Dept. of Investigation of City of New York,* No. 91-cv-2471 (MBM), 1992 WL 25202, at * 2 (S.D.N.Y. Feb. 4, 1992)); *see also* *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 35-36 (2d Cir. 2010) (finding that parents did not have a protected property interest in an investigation into their son's death); *Rodrigues v. Village of Larchmont*, N.Y., 608 F.Supp. 467, 472 (S.D.N.Y. 1985) (dismissal of claim against police department for refusing to allow plaintiff to file a complaint and refusal to investigate on the ground that "[t]here is certainly no constitutional right to be protected from criminal activity").

***5** In light of the foregoing, the Court recommends that the dismissal of Plaintiff's § 1983 claim against the Syracuse Police Department (City of Syracuse) and the Chief of Police be with prejudice.

2. <u>911 Call Center</u>

Plaintiff has also sued the 911 Administration Center, alleging that call officers tried to refuse to take her calls. (*See generally* Dkt. No. 1.) As with the Syracuse Police Department, the Department of Emergency Communication — 911 Center ("911 Call Center") is not an independent suable entity but rather a department of Onondaga County. *See* http:.www.ongov.net/911/ (last visited on July 20, 2016). Therefore, the proper defendant with respect to Plaintiff's claim against the 911 Call Center would be Onondaga County, and the Court recommends dismissal of the three complaints against the 911 Administration Center. *See, e.g., Pazaras v. Onondaga County*, No. 5:14-CV-1227 (DNH), 2016 WL 297423 (N.D.N.Y. Jan. 25, 2016) (Onondaga County the named defendant on a claim against the Onondaga County 911 Call Center).

The Court would recommend dismissal of Plaintiff's claim even if Plaintiff had correctly named Onondaga County as defendant. The complaint does not contain allegations plausibly showing that the alleged deprivation of Plaintiff's constitutional rights with respect to the 911 Call Center "was caused by a governmental custom, policy, or usage of [the County of Onondaga]," *Jones,* 691 F.3d at 80, or inadequate training, supervision, or hiring of 911 Call Center call operators. Plaintiff's complaint does not allege facts describing the reason or reasons for her calls to the 911 Center. (*See* Dkt. No. 1.) Moreover, the sole allegation in Plaintiff's complaint as to the 911 Center call officers is that "the 911 center personal (sic) try to refuse my calls and I am tired of the retaliation." which Plaintiff has alleged is for her reports to the police of police misconduct. Plaintiff has not alleged that she sustained any damages as a result of the call operations trying not to take her calls, and damages is an element of claims under § 1983. *See* *Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 542 (D. Conn. 2006).

Because there are no allegations in Plaintiff's complaint from which the Court could surmise that if granted leave to amend to name Onondaga County as a defendant and state a municipal liability claim against the County under § 1983, she might be able to do so, the Court recommends that Plaintiff's § 1983 claim against the 911 Administration Center (Onondaga County) be dismissed with prejudice.

**B. Title VII Claim**

In what Plaintiff has labeled a Title VII claim, she alleges that the police turn her away and refuse to take her reports, refuse to investigate, refuse to allow her to speak to an investigator, retaliate against her, and allow criminals to get away with violating her rights. (*See generally* Dkt. No. 1-1.) Under Title VII, it is unlawful for an employer to discriminate against any individual with regard to compensation and terms, conditions, or privileges of employment because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). In order to state a claim under Title VII, Plaintiff must show that she was a member of a protected class, she was qualified for a position of employment, she suffered an adverse employment action, and the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001).

***6** Plaintiff has alleged that she is a member of a protected class (race or color). However, there are no allegations in the complaint plausibly showing that the allegations against Defendants have anything whatsoever to do with an employment situation or with employment discrimination. Furthermore, individuals are not subject to liability under Title VII; thus to the extent Plaintiff intends to assert a Title VII claim, including any retaliation claim against the Syracuse Police Chief, she would be unable to do so in any event. *Sassaman v. Gamache*, 566 F.3d 307, 315-16 (2d Cir. 2009) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).

Based upon the foregoing, the Court recommends that Plaintiff Title VII complaint (Dkt. No. 1-1) be dismissed with prejudice.

### C. ADA Claim

In her ADA complaint, Plaintiff alleges numerous physical and mental disabilities. (Dkt. No. 1-2 at ¶46.) The sole allegations in the complaint are that when Plaintiff calls the police for assistance, the officers delay or do not show up, and when she goes to the police station, they refuse to take her report and tell her to leave the building. *Id.* at ¶ 6. Plaintiff does not allege facts plausibly showing a relationship between her disabilities and the police officers' actions. Although Plaintiff seeks damages from the 911 Administration Center, there are no factual allegations of wrongdoing by the 911 Call Center in the complaint. (*See generally* Dkt. No. 1-2.)

The ADA provides protection against discrimination based upon disability. 42 U.S.C. § 12101, *et seq.* Title II of the ADA, which covers public services and programs, is the only section of the ADA that could conceivably apply to Plaintiff's claim. 42 U.S.C. § 12182. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*

To state a claim under Title II of the ADA, Plaintiff "must demonstrate that (1) [she is a] qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that [she was] denied the opportunity to participate or benefit from defendants' services, programs, or activities, or [was] discriminated against by defendants, by reason of [her] disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272-73 (2d Cir. 2003). "Qualified individual with a disability" has been defined by Congress to refer to apply to "an individual with a disability who ... meets the essential eligibility requirements" established for receipt of services, programs, or activities provided by a public entity. 42 U.S.C. § 12132(2). "Public entity" is defined as "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government ...." 42 U.S.C. § 12131.

Actions of police departments have been found to fall within the scope of ADA Title II, although as discussed above, the City of Syracuse would be the proper party defendant. *See Williams v. City of New York*, 121 F.Supp. 3d 354, 364 (S.D.N.Y. 2015). The Onondaga County 911 Call Center also falls within the Title II definition of public entity, although Onondaga County would be the proper party defendant. Parties, including the Syracuse Chief of Police Department, may not be sued for violations of ADA Title II in their individual capacities inasmuch as the provision provides for suit only against public entities. *See Green v. City of New York*, 465 F.3d 65, 76 (2d Cir. 2006) (ADA claim dismissed against individual defendant because an individual is not a public entity.)

***7** Even assuming for purposes of this initial review that Plaintiff is a qualified individual with a disability and the Syracuse Police Department and Onondaga County are public entities under Title II of the ADA, Plaintiff has failed to allege facts plausibly showing that she was denied the opportunity to participate or benefit from defendants' services, programs, or activities, or was discriminated against by the Syracuse Police of the Onondaga County 911 Call Center by reason of her alleged disabilities. To the contrary, Plaintiff has

alleged in her 42 U.S.C. § 1983 complaint that the police officers' actions were acting in retaliation for her reporting of police misconduct. (Dkt. No. 1 at ¶ 4.) Her complaint under Title II of the ADA contains no factual allegations of wrongdoing whatsoever by the 911 Call Center. (Dkt. No. 1-2.) Furthermore, as with the police officers, Plaintiff attributes the 911 callers' attempts to avoid her calls to retaliation for reporting police misconduct. (Dkt. No. 1 at ¶ 4.)

Based upon the foregoing, the Court recommends dismissal of Plaintiff's third complaint for failure to state a claim. Because Plaintiff has clearly attributed the police officers' and the 911 operators' allegedly wrongful actions to retaliation for reporting police misconduct, and not her alleged disabilities, the Court recommends that the dismissal be with prejudice.

**D. Motion for Appointment of Counsel**

Plaintiff has moved for appointment of counsel and submitted correspondence from attorneys declining her request for representation in support of her motion. (Dkt. No. 4.) Even if the Court were not recommending dismissal of Plaintiff's Complaint with prejudice, a more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel). Therefore, the motion is denied. The denial is without prejudice so that Plaintiff will not be precluded from making a subsequent motion for appointment of counsel in the event the District Court allows the action to proceed.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's first IFP Application (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's second IFP Application (Dkt. No. 2-1) is **DENIED AS MOOT**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED WITHOUT PREJUDICE**; and it is

**RECOMMENDED** that Plaintiff's civil rights complaint 42 U.S.C. § 1983 complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that Plaintiff's Title VII complaint (Dkt. No. 1-1) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that Plaintiff's Title II of the ADA complaint (Dkt. No. 1-2) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e); and it is further

**ORDERED**, that the Clerk send Plaintiff a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein, in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4411339

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 4273215
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rochelle COLEMAN, Plaintiff,
v.
SYRACUSE POLICE DEPARTMENT, et al., Defendants.

5:16-CV-0836 (LEK/DJS)
|
Signed 08/12/2016

**Attorneys and Law Firms**

Rochelle Coleman, Syracuse, NY, pro se.

**ORDER**

Lawrence E. Kahn, U.S. District Judge

***1** This matter comes before the Court following a Report-Recommendation filed on July 22, 2016, by the Honorable Thérèse Wiley Dancks, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 5 ("Report-Recommendation").

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07, 306 n.2 (N.D.N.Y. 2008), overruled on other grounds by Widomski v. State Univ. of N.Y. (SUNY) at Orange, 748 F.3d 471 (2d Cir. 2014); see also Machicote v. Ercole, No. 06-CV-13320, 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." (quoting Howell v. Port Chester Police Station, No. 09-CV-1651, 2010 WL 930981, at *1 (S.D.N.Y. Mar. 15, 2010))). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).

No objections were filed in the allotted time period. See Docket. The Court has therefore reviewed the Report-Recommendation for clear error and has found none.

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 5) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that Plaintiff's Complaints (Dkt. Nos. 1, 1-1, 1-2) are **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4273215

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 8751936
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert M. VANCE, Plaintiff,
v.
ACCO BRANDS, CORPORATION, Defendants.

6:17-CV-00957 (GTS/TWD)
|
Signed 11/01/2017

**Attorneys and Law Firms**

ROBERT M. VANCE, pro se, 3 West Street, Apt. 1, Oneonta, New York 13820.

**ORDER AND REPORT-RECOMMENDATION**

Therèse Wiley Dancks, United States Magistrate Judge

***1** The Clerk has sent to the Court for review under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) the *pro se* complaint and amended complaint in this action in which Plaintiff Robert M. Vance has sued Defendant ACCO Brands, Corporation ("ACCO") for employment discrimination in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12111, *et seq.*, based upon a hearing impairment; breach of a collective bargaining agreement; violation of discharge and attendance guideline agreements; wrongful termination; defamation; and harassment.[1] (Dkt. Nos. 1, 17.) Also before the Court is Plaintiff's application for leave to proceed *in forma pauperis* ("IFP application"). (Dkt. No. 2.)

1 Plaintiff's amended complaint is not so much a pleading as a list of the exhibits attached to it. (Dkt. No. 17.) Therefore, rather than treat the amended complaint as a superseding pleading, the Court will consider Plaintiff's amended complaint as a supplement to his original complaint and consider them as a single pleading for purposes of initial review.

For reasons explained below, the Court finds that the claims alleged by Plaintiff in his complaint, as supplemented by his amended complaint, are barred under the doctrine of *res judicata*, and recommends that the complaint as supplemented be *sua sponte* dismissed with prejudice on initial review for failure to state a claim. (Dkt. Nos. 1, 17.)

## I. IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's IP application, the Court finds that he meets this standard. Therefore, Plaintiff's IFP application (Dkt. No. 2) is granted.

## II. LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

***2** To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of

pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. RELEVANT BACKGROUND

### A. Plaintiff's First ADA Lawsuit Against ACCO

On December 9, 2011, Plaintiff, represented by counsel, commenced an employment action alleging violation of the ADA entitled *Vance v. ACCO Brands USA, LLC*, No. 3:11-CV-1443 (NAM/DEP) in the Northern District of New York. ("*Vance I*").[2] In his second amended complaint in that action, Plaintiff, who was born with a high degree of neural hearing loss and a corresponding speech impediment, alleged he began working at ACCO's Sydney, New York facility in July 2004 as a third shift picker/packer in the shipping department. (*Vance I*, Dkt. No. 47 at ¶¶ 5, 12, 16.[3]) Plaintiff alleged that ACCO subjected him to disparate treatment and a hostile work environment because of his hearing impairment, retaliated against for complaining about such conduct, and ultimately terminated his employment in or about December 2011 in retaliation for his complaints. *Id.* at ¶¶ 3, 60-61.

2 Plaintiff originally named Meadwestvaco Corporation as Defendant in the action. (*See Vance I*, Dkt. No. 1.) However, according to the District Court, Meadwestvaco Corporation was acquired by ACCO, during Plaintiff's employment. *Id.*, Dkt. No. 83 at 2 n.3.

3 Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

According to Plaintiff, while other ACCO employees were being rotated through various tasks at the facility, he worked at the packing station, reach picking, and palletizing in the shipping department from 2004 through 2006. (*Vance I*, Dkt. No. 47 at ¶¶ 16-17.) Plaintiff claimed it was unusual for workers to do the same task for an extended period as he did. *Id.* In 2007, Plaintiff was, at his request, given the opportunity to work as a case thrower but was returned to his original task after one day allegedly because of hearing issues. *Id.* at ¶¶ 18-19. Plaintiff was thereafter trained on materials handling equipment, passed the tests for materials handling, and ultimately was given a materials handler license. *Id.* at ¶¶ 20-29. However, he was still not given the opportunity to perform different tasks or rotated into other departments. *Id.* at ¶ 31.

***3** Plaintiff filed his first ADA discrimination complaint against ACCO with the Equal Opportunity Employment Opportunity Commission ("EEOC") on March 10, 2008, and a settlement agreement was reached in a mediation and signed on July 7, 2008. *Id.* at ¶¶ 40-44. Plaintiff alleged in his second amended complaint in *Vance I* that Defendant maintained the exact same course of action continuing to discriminate against him by failing to rotate him to different positions, failing to offer adequate training, and failing to comply with the terms of the mediation agreement. *Id.* at ¶¶ 50-51. In addition, Plaintiff claimed he was the victim of harassment and an escalating course of retaliation because he had filed the discrimination complaint with the EEOC, creating a hostile work environment. *Id.* at ¶¶ 50, 53. The retaliation included continuous "write-ups" for bogus alleged disciplinary violations. *Id.* at ¶ 52.

Plaintiff filed a second EEOC complaint on February 13, 2009, because Defendant had ignored the terms of the mediation agreement and the discrimination against him had intensified. *Id.* at ¶ 54. The EEOC issued a right to sue letter on September 13, 2011. *Id.* at ¶ 58. Plaintiff alleged that his employment was terminated without cause on June 21, 2013, in violation of the ACCO collective bargaining agreement, and solely in retaliation for his discrimination complaints. *Id.* at ¶ 61.

In a Memorandum-Decision and Order, filed in *Vance I* on March 31, 2015, the Hon. Norman A. Mordue, Senior U.S. District Judge, granted Defendant ACCO summary judgment. (*Vance I*, Dkt. No. 83.) The District Court specifically addressed Plaintiff's ADA violation claims, including disparate treatment, retaliation, including his allegedly retaliatory termination, and hostile work environment claims, and found the Defendant entitled to judgment as a matter of law. *Id.*

Plaintiff appealed to the Second Circuit on April 29, 2015. (*Vance I*, Dkt. No. 85.) Plaintiff's motion to vacate the Second Circuit's September 2, 2015, Order dismissing his appeal was denied on September 7, 2016. (Court of Appeals, 2nd Cir., Docket No. 15-1443, Nos. 45, 62.)

**B. Complaint, as Supplemented By the Amended Complaint, Now Under Initial Review**

1. <u>Original Complaint</u>

The claims alleged by Plaintiff in the original complaint (Dkt. No. 1) in his new ADA employment discrimination action ("*Vance II*") now under review include, but are not be limited to:

> failure to promote, denial of participation in programs, failure to make alterations to accommodate a disability, retaliation, violation of an existing mediation agreement with EEOC, violation of company and union CBA (Collective Bargaining Agreement) on employment discharge, Hostile work environment, Wrongful Termination, failure to notify the union on discharge and waived rights for representation as a union paying member, and defamation of character bogus wrongful termination with assumption of committing future violence in the workplace.

(Dkt. No. 1 at ¶ 5.)

The factual allegations supporting Plaintiff's ADA claim, found in paragraphs 7 through 58 of his complaint in *Vance II* are virtually identical to those alleged in paragraphs 8 through 58 of his second amended complaint in support of the same ADA claim in *Vance I.* (*Vance I*, Dkt. 47 at ¶¶ 8-57; *Vance II*, Dkt. No. 1 at ¶¶ 7-58.) The major distinction between the two pleadings is Plaintiff's elaboration on the facts and circumstances surrounding the termination of his employment and alleged breach of the ACCO collective bargaining agreement in the present action. (*Vance II*, Dkt. No. 1 at ¶¶ 66-102.) In his second amended complaint in *Vance I*, Plaintiff simply alleged that his employment was terminated without cause, in violation of the ACCO collective bargaining agreement. (*Vance I*, Dkt. No. 48 at ¶ 61.) Plaintiff has also added a state law defamation claim in *Vance II.* (*Vance II*, Dkt. No. 1 at ¶¶ 5, 95.)

2. <u>Amended Complaint</u>

***4** On September 14, 2017, while the Court was undertaking the initial review of Plaintiff's complaint, Plaintiff filed a letter motion requesting additional time to add to the complaint. Plaintiff explained that he was waiting for the case file in his initial action to be delivered to him by his former attorney, and he would need time to review the file and add exhibits to support his claim and add to his original complaint. (Dkt. No. 7.)

The following day, Plaintiff filed a series of exhibits relating to his EEOC proceedings and an affirmation from his counsel in *Vance I* in support of a motion to recall the Second Circuit mandate dismissing the appeal and for reinstatement. (Dkt. Nos. 8, 8-1.) The Court thereafter issued text orders granting Plaintiff's letter motion (Dkt. No. 7) and subsequently giving him an extension of time to submit his amended complaint and exhibits. (Dkt. Nos. 9, 14.) Plaintiff submitted an amended complaint and exhibits on October 27, 2017, after receiving his file from *Vance I* from his former counsel. (Dkt. Nos. 17, 17-1, 17-2.)

In his amended complaint, Plaintiff describes *Vance II* as being brought pursuant to:

> Americans with Disabilities Act, 42 U.S.C. 1201 et seq., Breach of Contract with EECO (sic), CWA, CBA

> (collective bargaining agreements), Violation of Discharge agreement, Violation of Attendance Guideline agreement, Hostile Environment, Retaliation, Wrongful Termination, Slander, Defamation of Character and Harassment, and pursuant to the Constitution of the United States of America, along with the New York State Human Rights Law, and other federal and state anti-discrimination laws and policies in response to the defendants' discrimination based upon a disability, union representation, and the failure to acommodate (sic) the same.

(Dkt. No. 17 at 2-3.)

Plaintiff has submitted 134 pages of exhibits with his amended complaint, including documents from his EEOC complaints; a copy of the collective bargaining agreement between Defendant and a Local of the Communications Workers of America ("CWA"); Plaintiff's employment application and hearing test; Memorandum for Mediation submitted by Defendant in *Vance I*; documentation regarding attendance guidelines; various medical reports, excuses, and other information; correspondence between CWA Local #1416 and Defendant regarding Plaintiff's treatment and grievances; communications between Plaintiff and his attorney in *Vance I*; notes from an investigation on Plaintiff by Defendants; EEOC settlement agreement; and what appears to be Plaintiff's brief to the Second Circuit on his dismissed appeal in *Vance I.* [4] (Dkt. Nos. 17-1, 17-2.)

4 The cover letter submitted to the Court by Plaintiff, indicates that the exhibits submitted by Plaintiff were among the papers in the file of his attorney in *Vance I.* (Dkt. No. 17-3.)

## IV. ANALYSIS

The doctrine of *res judicata* applies when "1) the previous action involved an adjudication on the merits; 2) the previous action involved [the same parties or those in privity with them; and 3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000); *see also Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (under the doctrine of *res judicata*, "once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose").

***5** A district court may dismiss an action *sua sponte* on *res judicata* grounds provided it has before it all relevant data and legal records or is in the same district where the original action was filed. *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (citing *Carbonell v. Louisiana Dep't of Health & Human Resources*, 772 F.2d 185, 189 (5th Cir. 1985)); *see also Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (district court may reach the issue of *res judicata sua sponte.*); *Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995) ("Nothing ... suggests that an affirmative defense appearing on the face of a complaint may not be the basis for a *sua sponte* dismissal under section 1915(d) [section 1915(e) as amended] prior to the service of the complaint.")

The District Court granted ACCO summary judgment dismissing *Vance I* and judgment was entered in favor of ACCO. (*Vance I*, Dkt. Nos. 83-84.) Plaintiff's appeal to the Second Circuit was dismissed for failure to perfect. (Court of Appeals, 2nd Cir., Docket No. 15-1443, Nos. 45, 62.) "It is well-established that summary judgment is an adjudication on the merits for *res judicata* purposes." *Rafter v. Liddle*, 704 F. Supp. 2d 370, 375 (S.D.N.Y. 2010) (citing *Weston Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 712-15 (2d Cir. 1977)); *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 352 n.9 (E.D.N.Y. 2010) ("Summary judgment dismissal is considered a decision on the merits for res judicata purposes."). Therefore, the Court finds that *Vance I* involved an adjudication on the merits for purposes of determining the applicability of *res judicata* to *Vance II.*

*Vance I* and *Vance II* are between the same parties, thereby satisfying the second requirement for the applicability of *res judicata.* Moreover, the claims alleged by Plaintiff in *Vance II* are based on the same transactions involving Plaintiff's employment by Defendant at issue in *Vance I*, and were raised, or could have been raised, in that first action. Plaintiff's discrimination claim against ACCO under the ADA, including that his termination was in retaliation for filing ADA complaints with the EEOC, alleged in this case was clearly raised in *Vance I.* (*Vance* I, Dkt. 47; *Vance* II at 1.) Further, Plaintiff's allegation in his second

amended complaint in *Vance I* that ACCO breached the collective bargaining agreement reveals that Plaintiff, who was represented by counsel, was aware of the claim when he filed the second amended complaint and could have raised the claim in that prior action. (*Vance I*, Dkt. No. 47 at ¶ 61.) The defamation claim alleged in *Vance II* is based upon transactions related to Plaintiff's employment with Defendant and also could have been raised in *Vance I.*

Based upon the foregoing, the Court finds that this action is barred its entirety under the doctrine of *res judicata* and recommends that Plaintiff's complaint (Dkt. No. 1), as supplemented by his amended complaint (Dkt. No. 17), be *sua sponte* dismissed with prejudice for failure to state a claim on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED;** and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1), as supplemented by his amended complaint (Dkt. No. 17), be *sua sponte* **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

5 If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 8751936

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 6671559
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Brian Scott ORR, Plaintiff,
v.
UNITED STATES AIR FORCE, Air Force Research Laboratory; United States Department of Justice, FBI National Security Division; and Chester John Maciag, Air Force Special Projects Chief, Defendants.

No. 6:15–CV–1132 (GTS/TWD).
|
Signed Oct. 30, 2015.

**Attorneys and Law Firms**

Brian Scott Orr, Lompoc, CA, pro se.

***DECISION and ORDER***

GLENN T. SUDDABY, Chief Judge.

***1** Currently before the Court, in this civil rights action filed *pro se* by Brian Scott Orr ("Plaintiff") against the above-captioned entities and individual ("Defendants"), are (1) United States Magistrate Judge Thérèse Wiley Dancks' Report–Recommendation recommending that this action be *sua sponte* dismissed, with prejudice, for failure to state a claim upon which relief can be granted on the grounds that it is barred under the doctrine of *res judicata,* and (2) Plaintiff's one-page Objection to the Report–Recommendation. (Dkt.Nos.4, 5.)

When a *specific* objection is made to a portion of a magistrate judge's reportrecommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1).

1 *See also* *Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999). Similarly, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[2]

2 *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

Here, liberally construed, Plaintiff's Objection asserts only three specific challenges to Magistrate Judge Dancks' Report–Recommendation: (1) that Plaintiff's claim in the current action is not identical to his claim in the prior action; (2)

that the dismissal of his first claim was not based on the merits of his claim; and (3) that the dismissal of his first claim (based on the ground of frivolousness) was not permissible, and the dismissal of his current claim (based on the doctrine of res judicata) is not permissible, because both claims are supported by medical evidence. (Dkt. No. 5.)

After carefully reviewing the relevant filings in this action, the Court can find no error in the challenged portions of the Report–Recommendation, nor any clear error in the remaining portions of the Report–Recommendation: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report–Recommendation for the reasons stated therein. (Dkt. No. 4.) To those reasons, the Court would add only that it has carefully reviewed Plaintiff's Complaint in the first action and his Complaint in this action, and finds them to be virtually identical. Moreover, the Court finds that the dismissal of Plaintiff's first action was indeed on the merits.

***2 ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–Recommendation (Dkt. No. 4) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is ***DISMISSED.***

***ORDER AND REPORT–RECOMMENDATION***

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

The Clerk has sent Plaintiff Brian Scott Orr's pro se civil rights complaint, brought under 42 U.S.C. § 1983, together with an application to proceed in *forma pauperis* ("IFP Application") and Prisoner Authorization Form to the Court for review. [1] (Dkt. Nos. 1 and 2.)

1 While the Prisoner Authorization Form (Dkt. No. 2 at 3) submitted by Plaintiff differs in some respects from the Inmate Authorization Form generally used in the Northern District of New York, i.e., it does not include language specifically authorizing the facility in which he is incarcerated to send certified copies of statement of his trust fund when requested by the Clerk, it does set forth Plaintiffs understanding of his obligation to pay the full amount of the filing fees and authorize the prison officials to "assess, collect and forward to the Court the full amount of these fees, in monthly payments based on the average of deposits to or balance in [his] prison trust account in accordance with 28 U.S.C. Section 1915." *Id.* In addition, the Certificate setting forth the sum plaintiff has on account, found at the bottom of the IFP Application used in the Northern District of New York is contained in the Prisoner Authorization Form submitted by Plaintiff. The Court finds that the IFP Application and Prisoner Authorization Form submitted by Plaintiff are adequate for a determination of Plaintiff's entitlement to proceed *in forma pauperis* solely with respect to the Court's initial review.

## I. IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiffs IFP Application and Prisoner Authorization Form (Dkt. No. 2), the Court finds that he meets the standard and his IPF Application is granted solely for purposes of this initial review.

## II. LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis,* 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy, or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (citations and internal quotation marks omitted). Although extreme caution should

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

***3** Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiffs] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

## III. ANALYSIS

### A. Plaintiff's Complaint in this Action

Plaintiff has sued the United States Air Force, the United States Department of Justice, and Air Force Special Projects Chief, Chester John Maciag, in his complaint submitted for filing on September 21, 2015, and now before the Court for initial review. (Dkt. No. 1.) Plaintiff has alleged the following facts in his complaint:

> 4. THE DEPARTMENT OF DEFENSE INTELLIGENCE COMMUNITY (IC) KNOWINGLY, WITH INTENT TO KILL, USED BRIAN SCOTT ORR AS THE UNCONSENTING TEST SUBJECT OF AN ILLEGAL DIRECTED ENERGY EXPERIMENT, WHEN BRIAN ORR SURVIVED LONGER THAN CONVENIENT, ARFL–RIGB CHIEF MACIAG ORDERED ORR TO TAKE HIS OWN LIFE. MACIAG ALSO THREATENED ORR AND WORKED HARD TO DISCREDIT ORR STARTING RIGHT BEFORE THE TORTURE STARTED ON AUGUST 13, 2010. COL LAMAR PARKER AND LT COL WILLIAM GREGORY ALSO PLAYED A CONSPIRATORIAL ROLE AND WERE ACTIVELY INVOLVED IN PSYCHOLOGICAL OPERATIONS AGAINST ORR. PHYSICAL DAMAGE WAS APPLIED TO ORR NOT BY DIRECT CONTACT BUT BY TECHNOLOGICAL MEANS. REMOTE APPLICATION OF SAID DAMAGE WAS ALLEGEDLY FROM AIR FORCE/NATIONAL RECONNAISSANCE OFFICE SPY RADAR TECHNOLOGY. THE MAGNITUDE AND DURATION OF PAIN CAN ONLY BE ACCURATELY DESCRIBED AS TORTURE AND CAN ONLY BE UNDERSTOOD BY OTHER SURVIVORS OF CRIMES AGAINST HUMANITY. MEDICAL DOCUMENTATION THAT YOU WILL READ IN THE EXHIBITS STATE ORR'S

> INJURIES WERE MICROWAVE RADIATION INDUCED. THE INJURIES ARE IRREVERSIBLE AND ARE SYSTEM WIDE. MOST DAMAGE IS TO ORR'S NERVOUS SYSTEM (BRIAN (sic) AND PERIPHERAL NERVES). THE INTENSE ELECTROMAGNETIC RADIATION ALSO DAMAGE ORR'S HEART AND CAUSED A MYOCARDIAL INFARCT AND WEAKENED OUTPUT. THE DAMAGE TO ORR'S ENDOCRINE SYSTEM HAS LEFT HIM INFERTILE (UNABLE TO BEAR CHILDREN). ORR LEFT AFRL ROME, N.Y. ONLY LATER TO BE STALKED AND TORMENTED BY FBI NATIONAL SECURITY DIVISION AGENTS. FAMILY MEMBERS WERE ALSO STALKED, HARASSED, AND HAD THEIR COMPUTERS HACKED WITHOUT COURT ORDER. ORR'S ORDEAL WAS DOCUMENTED IN 2012 IN INQUIRIES TO SENATE MEMBERS (FEINSTEIN), A FEINSTEIN DIRECTED INVESTIGATION OF THE AIR FORCE OSI, FBI, AND POLICE REPORTS. IN 2012 THE WEBSITE HTTP://USGOVTATROCITIES.COM WAS PUT ONLINE TO EXPOSE THE HEINOUS CRIMES AGAINST ORR.

***4** *Id.* at ¶ 4.

Plaintiff seeks money damages for medical bills; permanent physical damage; government theft and property damage; stalking and intimidating Orr and his family; an 2011 assassination attempt in Arizona; hacking of Orr's families' home computer networks and phones without court order; economic loss for lost wages; and damages for PTSD. Plaintiff seeks monetary damages totaling $2,713,700.00. *Id.* at ¶ 5.

### B. Plaintiff's Complaint in *Orr v. U.S. Air Force, el al.,* United States District Court, C.D. Cal., No. 2:15–cv–01800

Prior to submitting his complaint for filing in this action, Plaintiff commenced an action against the same three Defendants asserting the identical claim and seeking essentially the same damages in the United States District Court, C.D. Cal. (*See Orr v. U.S. Air Force, et al.* (*"Orr* I"), No. 2:15–cv–01800–MMM–MRW, Dkt. No. 1.) In his complaint in *Orr* I, Plaintiff alleged:

> 5. THE DOD INTELLIGENCE COMMUNITY (IC), KNOWINGLY WITH INTENT TO KILL, USED BRIAN SCOTT ORR AS THE UNCONSENTING TEST SUBJECT IN AN ILLEGAL TORTURE EXPERIMENT. WHEN ORR SURVIVED LONGER THAN EXPECTED, ARFL–RIGB BRANCH CHIEF MACIAG ORDERED ORR TO TAKE HIS OWN LIFE. MACIAG ALSO THREATENED ORR AND HAD CAPT BRIAN SESSLER TAKE RR INTO THE COTF TO DISTRACT ORR TO MANAGE AN ILLEGAL IMPLANT ON ORR'S IPHONE. OTHER PSY–OP PARTICIPANTS INCLUDED AIR FORCE INTEL OFFICER WILLIAM GREGORY AND COLONEL LAMAR PARKER. PHYSICAL TORTURE WAS APPLIED BY HIGH POWER RADAR AND NOT NECESSARILY CONFINED TO ROME, NY. MEDICAL DOCUMENTATION STATES ORR'S INJURIES WERE MICROWAVE RADIATION INDUCED AND IRREVERSIBLE. DAMAGE IS TO ORR'S BRAIN, NERVOUS SYSTEM, AND HE IS INFERTILE. ORR LEFT AFRL TO BE STALKED AND TORMENTED BY DOJ AGENTS. FAMILY MEMBERS WERE ALSO STALKED AND THEIR COMPUTERS

HACKED ALL WITHOUT COURT ORDER. ORR'S ORDEAL WAS DOCUMENTED IN 2012 BY SENATORIAL INQUIRIES, AFOSI INVESTIGATIONS, POLICE REPORTS, AND, OF COURSE, HTTP:// USGOVTATROCITIES.COM. EVIDENCE CAN BE FOUND AT HTTP://TINYURL.COM/ SAVEBRIANSCOTT. ANOTHER WEBSITE THAT BRIAN SCOTT IS IN PRISON [2] AS RETALIATION FOR SPEAKING OUT: HTTP:// HUMANCIVILRIGHTSFIRST.ORG.

2 In *Orr* I, the court took judicial notice that Plaintiff was convicted of theft and computer hacking charges related to his former employment at the Air Force base. (*Orr* I, Dkt. No. 3 at 2 n. 1.); *see also United States v. Orr,* CR–13–872 (C.D.Cal.)

*Id.* at ¶ 5.

In *Orr* I, Plaintiff sought money damages for medical bills; permanent brain and nervous system damage; government theft, property damage and vandalism; stalking Orr and his family; failed assassination attempts in Arizona and by repeated torture; hacking without court order; being forced to leave the Country after his term of imprisonment to escape persecution; interference with employment; loss of federal assistance; and damages for PTSD. *Id.* at 6. Plaintiff sought monetary damages totaling $2,713,700.00. *Id.*

### C. *Res Judicata*

*Orr* I was dismissed on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B) on the grounds that the action was frivolous and failed to state a claim upon which relief could be granted. (*Orr* I, Dkt. No. 3 at 1–2.) On March 18, 2015, the Hon. Michael R. Wilner, M.J., wrote that “Plaintiff's claims are too fanciful to warrant service on any of the named defendants” and recommended dismissal. *Id.* at 2. On March 19, 2015, the Hon. Margaret M. Morrow, U.S. District Judge, ordered that Plaintiff's IFP Application be denied and that the case be dismissed. *Id.* at 2.

***5** “The doctrine of *res judicata,* or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.” *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 284–85 (2d Cir.2000) (internal quotation marks and citation omitted). *Res judicata* precludes a party from asserting a claim in subsequent litigation if “(1) the previous action involved an adjudication on the merits; (2) the previous action involved plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been raised in the prior action. *Id.*

A district court may sua sponte raise the issue of *res judicata.* *See Rollock v. LaBarbera,* 383 F. App'x 29, 30 (2d Cir.2010) (citing *Scherer v. Equitable Life Assurance Soc'y of U.S.,* 347 F.3d 394, 398 n. 4 (“[A] court is free to raise [the] defense [of *res judicata* ] *sua sponte”* )). In *Denton v. Hernandez,* 504 U.S. 25, 34, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), the Supreme Court held that, while a dismissal under § 1915(e) “does not prejudice the filing of a paid complaint making the same allegations,” it “could, however, have a *res judicata* effect on frivolousness determinations for future *informa pauperis* petitions.” In *Cieszkowska v. Gray Line New York,* 295 F.3d 204, 205 (2d Cir.2002), the Second Circuit agreed with the reasoning of various circuits that had found *res judicata* applicable to subsequent actions brought *in forma pauperis. See also McRae v. Norton,* No. 12–CV–1537 (KAM), 2012 WL 1268295, at * 3, 2012 U.S. Dist. LEXIS 52494, at * 8, 2012 WL 1268295 (E.D.N.Y. April 13, 2012) [3] (finding *res judicata* applied to plaintiffs *informa pauperis* action asserting the same claims as his previous action which had been dismissed pursuant to § 1915(e)).

3 Copies of the unpublished decision will be provided to Plaintiff in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam). [Editor's Note: Copies of unpublished decisions have been deleted for Westlaw purposes.]

*Orr* I and the present action involve the same parties, and the facts alleged by Plaintiff and claims asserted in the two actions are virtually identical. Furthermore, Plaintiff seeks to bring this action *in forma pauperis.* Because *Orr I* was dismissed pursuant to § 1915(e)(2)(B) on the grounds that it was frivolous and failed to state a claim, the Court finds, based upon the *Denton* and *Cieszkowska* decisions, that this action is barred under the doctrine of *res judicata.*

"When an *informa pauperis* action is *res judicata,* it fails to state a claim upon which relief may be granted and thus § 1915(e)(2)(B) compels its dismissal." *Lopez v. Jet Blue Airways,* No. 12–CV–0057 (JG), 2012 WL 213831, at * 1, 2012 U.S. Dist. LEXIS 8162, at * 2 (E.D.N.Y. Jan.24, 2012). Therefore, the Court recommends that Plaintiff's complaint be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii).

**ACCORDINGLY,** it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED;** and it is

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on the grounds that it is barred under the doctrine of *res judicata;* and it is further

***6 ORDERED,** that the Clerk send Plaintiff a copy of this Order and ReportRecommendation, along with copies of the unpublished decisions cited herein, in accordance with the Second Circuit decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

Filed Sept. 28, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 6671559

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue-Striped Flag
Appeal Filed by Adams v. City of Syracuse, 2nd Cir., October 17, 2025

2025 WL 2772081
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert ADAMS, Jr., Plaintiff,
v.
CITY OF SYRACUSE et al., Defendants.

5:21-cv-00650 (AMN/MJK)
|
Signed September 29, 2025

**Attorneys and Law Firms**

A. CABRAL BONNER, ESQ., CHARLES A. BONNER, ESQ., LAW OFFICES OF BONNER & BONNER, 3060 Kerner Boulevard – Suite A, San Rafael, California 94901, Attorneys for Plaintiff.

JESSE P. RYDER, ESQ., RYDER LAW FIRM, 6739 Myers Road, East Syracuse, New York 13257, Attorneys for Plaintiff.

DANIELLE R. SMITH, ESQ., TODD M. LONG, ESQ., CITY OF SYRACUSE, CORPORATION COUNSEL, 233 East Washington Street, Room 300 City Hall, Syracuse, New York 13202, Attorneys for Defendants.

## MEMORANDUM-DECISION AND ORDER

Anne M. Nardacci, United States District Judge:

## I. INTRODUCTION

***1** On June 3, 2021, Robert Adams, Jr. ("Plaintiff"), commenced this civil rights action against Police Officers Joseph Tolone,[1] Aaron Cecile, and Lashonda Russell (the "Responding Officers"); Detectives Ryan Brimmer and Jeffrey Beauchine (the "Detectives" and together with the Responding Officers, the "Individual Defendants"); the City of Syracuse ("Defendant City," and, together with the Individual Defendants, "Defendants"); Does 1-100 (the "Doe Defendants"); and others, alleging violations of federal and state law arising from his arrest and subsequent monthslong detention during a since-dismissed criminal prosecution. Dkt. No. 1 ("Complaint").

1 The Complaint incorrectly spells Officer Tolone's last name as "Toltone." Dkt. No. 77-55 at 1 n.1. Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the document's internal pagination.

Presently before the Court[2] is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Dkt. No. 77 ("Motion"), Plaintiff's opposition, Dkt. No. 85, and Defendants' reply in further support, Dkt. No. 90. For the reasons set forth below, the Motion is granted in part and denied in part.

2 This case was reassigned to the undersigned on January 19, 2023. Dkt. No. 34.

## II. BACKGROUND[3]

3 Unless otherwise indicated, the following facts have been asserted by the parties in their statements of material facts with accurate record citations, and expressly admitted or not denied with a supporting record citation in response. *See* N.D.N.Y. L.R. 56.1. The Court has also considered the parties' other submissions and attached exhibits. *See generally* Dkt. Nos. 77, 85-86, 90.

### A. The Parties

Plaintiff is a black man who has lived in Syracuse for most of his life. *See, e.g.,* Dkt. No. 77-44 at 16:5-17:4. In May 2019, he was 55 years old, approximately 5'7" in height and 160 pounds in weight, and lived in an apartment building located at 941 James Street. Dkt. No. 90-1 at ¶ 515; Dkt. No. 77-23. At that time, Plaintiff's medical diagnoses included, *inter alia*, alcoholism, depression, and schizophrenia. Dkt. No. 77-42 at 2-3; Dkt. No. 77-55 at ¶ 454.

Defendant City is a large municipality in New York State with a police department that employs the Individual Defendants. As of May 2019, Officer Cecile had been a patrol officer for approximately two years, Dkt. No. 77-47 at 21:24-22:15; Officer Russell had been a patrol officer for approximately three years, Dkt. No. 77-46 at 9:17-25; Officer Tolone had been a patrol officer for approximately three years, Dkt. No. 77-48 at 9:24-10:2; Detective Brimmer had been a detective for less than three years, Dkt. No. 77-49 at 12:11-13:8; and Detective Beauchine had been a detective for approximately nine years, Dkt. No. 77-51 at 16:21-17:17.

### B. Relevant Events

#### 1. May 1, 2016

Shortly after 7:30 p.m. on May 1, 2019, police (apparently including Officer Russell) and emergency medical services found Plaintiff intoxicated and lying on the side of a road in Syracuse. Dkt. No. 77-42 at 2, 50-51; Dkt. No. 77-46 at 104:15-25. Plaintiff was covered in feces and urine and reported drinking six to seven "Na[tt]y Daddy beverages," a brand of malt liquor. Dkt. No. 77-42 at 2, 51; Dkt. No. 77-43 at 49:11-13. Plaintiff was transported to a local hospital emergency room for treatment, where his blood alcohol level ("BAC") was measured at 0.422 percent later that night. [4] Dkt. No. 77-55 at ¶ 311; Dkt. No. 77-42 at 25.

4 A person with a BAC of 0.08 percent is considered intoxicated *per se* under New York's Vehicle and Traffic Law ("VTL"). *See* N.Y. Veh. & Traf. Law § 1192(2); *see also* *Dalmasi v. City of Mount Vernon*, No. 13-cv-8672, 2014 WL 6645827, at *1 n.3 (S.D.N.Y. Nov. 24, 2014) (noting that a court may "take judicial notice of the VTL in deciding" summary judgment) (citations omitted).

#### 2. May 6, 2016

##### a. 941 James Street

***2** At around 3:00 p.m. on May 6, 2019, Plaintiff began drinking in and in front of his apartment building at 941 James Street. Dkt. No. 77-55 at ¶¶ 407, 410. By 4:00 or 5:00 p.m., he had consumed three or four 24-ounce cans of Natty Daddy. *Id.* at ¶ 411. Around that time, a younger man, Charles Jones, came over to socialize with Plaintiff. *Id.* The two had known each for several years and, while they were not actually related, Plaintiff referred to Mr. Jones as his nephew and Mr. Jones called Plaintiff uncle. Dkt. No. 77-43 at 71:8-15; Dkt. No. 77-44 at 59:1-7, 98:16-23. Plaintiff and Mr. Jones walked to a store to purchase four of five more 24-ounce cans of Natty Daddy that they could share. Dkt. No. 77-55 at ¶¶ 414, 416. Plaintiff paid for the alcohol because Mr. Jones had no money. *Id.* at ¶ 415. The two returned to 941 James Street, where a woman (Vanessa Goldych) and an unnamed man were outside the building. *Id.* at ¶¶ 417, 419, 421-22, 424. Plaintiff continued drinking Natty Daddy and joined Mr. Jones, Ms. Goldych, and the unnamed man in front of 941 James Street. *Id.* at ¶¶ 419-20. At some point, Mr. Jones and the unnamed man got into a verbal altercation, which then turned physical. *Id.* at ¶¶ 421, 424.

##### i. 911 call

Shortly before 7:30 p.m., a young woman (Arianna Jordan Bailey) was walking down James Street with her siblings. *Id.* at ¶¶ 1, 339. At that time, Ms. Bailey observed the physical altercation between Mr. Jones and the unnamed man. *Id.* at ¶ 340. Mr. Jones swung a stick at the unnamed man; that man grabbed the stick and proceeded to knock Mr. Jones to the ground. *Id.* The unnamed man then discarded the stick, smashed Mr. Jones' cell phone on the ground, and took off running down the sidewalk. Dkt. No. 85-10 at 4. Mr. Jones was not moving and did not get up, and Plaintiff went to check on him. *Id.* at 5. Plaintiff asked Ms. Bailey to call 911. *Id.* At approximately 7:25 p.m., Ms. Bailey did so. Dkt. No. 77-55 at ¶ 1.

The roughly three and a half minute recording of that 911 call reflects that Ms. Bailey informed the dispatcher that two people had been fighting; one was unconscious on the ground; and "a big type log looking thing" had been involved as a weapon. *Id.* at ¶¶ 2-4; *see also* Dkt. No. 77-5. When the dispatcher asked whether the assailant was still there, Ms. Bailey said "no" and explained that "he got up out of here." Dkt. No. 77-55 at ¶ 5.

When the dispatcher asked for a description of the assailant, Ms. Bailey said "he was African-American" and she had "just seen him running off." *Id.* at ¶¶ 6-7. Ms. Bailey then switched to providing a description of Mr. Jones, whom she described as approximately 25 years old and 5'7". *Id.* at ¶¶ 8-9. When the dispatcher clarified that he needed the description of the assailant, Ms. Bailey stated that he was "kind of bigger, he's gotta be like 6'3", like medium build[.]" *Id.* at ¶ 10.

When the dispatcher asked what the assailant was wearing, Ms. Bailey said "a green lookin' sweatsuit thing" and then explained that "officers [a]re right here on site and I'm just gonna tell them what happened." *Id.* at ¶¶ 10-11. Ms. Bailey can then be heard saying "he got in a fight with somebody, the other dude ran off but he got knocked out... he was, he was hit too in the whole altercation, you see that stick he was hit with that ... he was." *Id.* at ¶ 12; *see also* Dkt. No. 77-16 at 0:05.

##### ii. Police response

Officers Russell, Cecile, and Tolone were the officers who initially responded to 941 James Street between

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

approximately 7:27 and 7:28 p.m. *Id.* at ¶¶ 14-15. The 911 call notes indicated "2 PEOPLE FIGHTING – ONE PERSON NOW UNC[ONSCIOUS] ON THE GROUND – COMPL[AINANT] SAW A VERY LG STICK." Dkt. No. 77-4 at 3; Dkt. No. 77-55 at ¶¶ 16-17. The 911 call notes also reported that the assailant was " 'a black male,' 25-35 years old, six feet 3 inches, last seen wearing a green sweat[suit]." Dkt. No. 90-1 at ¶ 18. Soon after 7:30 p.m., four other officers arrived at the scene. *See, e.g.,* Dkt. No. 77-4 at 1-2.

After arriving, each of the Responding Officers activated and de-activated their body worn cameras ("BWC") at different times. *See* Dkt. Nos. 77-15, 77-16, 77-17. Officer Russell's BWC footage initially shows her standing over Mr. Jones, next to Plaintiff (who is also on the ground) and Ms. Bailey, as Officer Cecile exits his police vehicle and walks over. Dkt. No. 77-16 at 0:00. Ms. Bailey, who was still on the phone with 911 at this time, is visible pointing down at Mr. Jones and saying "he got into a fight with somebody" and "the other dude run off." *Id.*; Dkt. No. 77-55 at ¶ 21. Plaintiff says words to the same effect. Dkt. No. 77-16 at 0:00.

***3** Officer Russell proceeded to ask Plaintiff, who had some blood on his lip, "what happened to you, why you bleeding?" Dkt. No. 77-55 at ¶ 29. Ms. Bailey explained "he was hit too" and "you see that stick he was hit with that." Dkt. No. 77-55 at ¶ 12; Dkt. No. 77-16 at 0:05. Ms. Bailey subsequently slowly walked down the sidewalk, as Officer Tolone walked past her to join Officers Russell and Cecile by Mr. Jones. Dkt. No. 77-16 at 0:15; Dkt. No. 77-55 at ¶ 32. Officer Tolone tended to Mr. Jones, who remained unconscious, with labored, gasping breaths and blood coming from the left side of his head. Dkt. No. 77-55 at ¶¶ 40-42.

Plaintiff remained near the Responding Officers during this time. *See generally* Dkt. Nos. 77-16, 77-17. In response to Officer Cecile's question about who had hit Mr. Jones, Plaintiff said "some motherfucker." Dkt. No. 77-16 at 1:10. In response to Officer Russell's question about what that person looked like, Plaintiff pointed down James Street and said it was a "black guy" whom he did not know. Dkt. No. 77-16 at 1:15. Following further questions, Plaintiff stated words to the effect of "y'all acting like we did something wrong." *Id.* at 1:58. Officer Russell responded "no, no, we just trying to get that information, so that way we can put out a point of information regarding the guy who did it." *Id.* at 2:03. Officer Russell again asked about Plaintiff's lip; Plaintiff responded that it was "a long story" and unrelated to Mr. Jones. *Id.* at 2:28. In response to Officer Russell's question, Plaintiff confirmed that he, Mr. Jones, and Ms. Goldych had been drinking with a fourth person. *Id.* at 2:54. Plaintiff also stated that the fourth person hit Mr. Jones, and that this person's name was "Pete." *Id.* Officer Russell then confirmed this version of events with Ms. Goldych. *Id.* at 3:00. In response to further questioning from Officer Russell, Plaintiff provided his name, address, and birthdate. *Id.* at 3:47, 4:10. Plaintiff again stated words to the effect "y'all acting like we done something," to which Officer Russell responded "no, we just need your info so that way you can help us, that's all." *Id.* Soon after, Officer Russell again asked "were you two fighting each other," to which Plaintiff responded "no." *Id.* at 5:45.

Approximately thirty seconds later, at 7:34 p.m., Officer Tolone directed Plaintiff to stand up and turn around, quickly patted him down, and informed Ms. Goldych "you're gonna get detained too dear." Dkt. No. 77-17 at 4:34. Officer Tolone then told Plaintiff "you're being detained right now" and placed Plaintiff in handcuffs. *Id.* at 4:53. Officer Tolone walked Plaintiff over to a police vehicle and said "stand right here; don't move," before unlocking the vehicle and directing Plaintiff into the backseat. *Id.* at 5:10.

The Responding Officers proceeded to put up police tape around the scene. *See, e.g.,* Dkt. No. 77-16 at 7:43. At approximately 7:38 p.m., Officer Russell remarked to Officers Tolone and Cecile that "we don't have anything to put out a point for, except for it was a black man." *Id.* at 9:54. Officer Tolone responded, "it's the guy we have in the car, I can almost guarantee it," Dkt. No. 77-17 at 8:27, and Officer Cecile agreed, saying "it's definitely him."[5] Dkt. No. 77-15 at 1:41.

5 During his deposition, Office Cecile characterized this statement as "police banter." Dkt. No. 77-47 at 74:13-17 ("Q. So, it's definitely him doesn't mean -- it doesn't mean that you were sure it was him? A. Right. That's police banter. I wasn't sure.").

At approximately 7:39 p.m., Officer Tolone asked various officers "have we started a canvas yet guys?" Dkt. No. 77-17 at 9:54. Officer Russell responded "yeah, we'll do that right now. I wish we would have got those people that were ..." and gestured down the sidewalk in the direction Ms. Bailey and her siblings had walked. Dkt. No. 77-16 at 11:27. At approximately 7:40 p.m., the Responding Officers spoke with two non-party officers who arrived after they did. *See, e.g.,* Dkt. No. 77-17 at 10:14. One of the non-party officers asked "what's up with the guy with the busted lip," to which Officer

Tolone responded "yeah, I'm thinking that's gonna, like you said, that's gonna be our guy." *Id.*

***4** At approximately 7:41 p.m., Officer Cecile called the Criminal Investigations Division of the Syracuse Police Department ("CID"). Dkt. No. 77-15 at 4:55. Officer Cecile reported that "we've got possible suspects, I don't know, they're totally drunk, I don't know if someone wants to show up down here or not." *Id.* at 5:35. During the course of this call, Officer Cecile asked Officer Russell for the name of "the guy, the suspect ... the guy that we got detained right now," and then provided Plaintiff's name as "the possible suspect." *Id.* at 8:19.

At approximately 7:45 p.m., Officer Russell asked Officer Tolone, "did anyone contact those people back," Dkt. No. 77-16 at 17:21, presumably again in reference to Ms. Bailey and her siblings, to which Officer Tolone responded that he tried but they did not want to meet, Dkt. No. 77-17 at 15:51. Officers Tolone and Russell then canvased the area for additional eyewitnesses, without success. *See, e.g.,* Dkt. No. 77-55 at ¶ 76; Dkt. No. 77-17 at 18:30.

At approximately 7:47 p.m., seemingly while on hold with CID, Officer Cecile stated to other officers on the scene that "I'm just going to call back the [911] caller, because they obviously saw it, and see if they want to talk and give us the, uh, a statement of what happened, once I'm done with CID." Dkt. No. 77-15 at 10:57. After the call with CID resumed, Officer Cecile reiterated to the person with whom he was speaking that "he's totally, he's totally wasted, so how much that would do, I don't know" before saying words to the effect that he would "try and give the [911 caller] a call" and "see if she witnessed who did it ... and maybe she'll give us a statement." *Id.* at 12:39.

At approximately 7:50 p.m., Officer Cecile again informed one of the other officers at the scene that he was going to contact the 911 caller "to see if they could give us a statement since they're all wasted, and then, you know, to [see] who hit him with it, because obviously they saw the whole thing." *Id.* at 14:16. Officer Cecile then spoke with Ms. Bailey and asked if she could provide "an ID of who the suspect is, because right now all we've got is three people that are intoxicated, nobody's owning up to hit, hitting this, uh, gentlemen with a stick." *Id.* at 14:50. Officer Cecile went on to ask "do you remember what the, uh, what the guy that hit him with a stick was wearing," before repeating "a green shirt." *Id.* at 16:01. Officer Cecile then clarified "the guy that got knocked out was, like, in his mid to late 20s, and it was, like, an older guy, like 35 to 40, that hit him?" *Id.* at 16:43. After the call ended, Officer Cecile shared with other officers on the scene that he had spoken with Ms. Bailey, and said that Mr. Bailey had said the assailant "was wearing a green shirt, he's got a green vest on," to which another officer responded "yeah, it's this guy," presumably in reference to Plaintiff. *Id.* at 17:20. Officer Cecile then tried to call Ms. Bailey again, and asked if she would come back to identify the person she had seen fighting with Mr. Jones. *Id.* at 18:30. Ms. Bailey did not agree to do so, in part because she had just "seen a fight, I don't want nobody looking for me or anything." *Id.* at 18:45.

While officers identified numerous video cameras that could contain footage of the incident, no such footage was retrieved. *See, e.g.,* Dkt. No. 77-16 at 24:15; Dkt. No. 77-55 at ¶¶ 86, 134, 316, 383-84.

Shortly before 8:00 p.m., Plaintiff was removed from the police vehicle to be photographed by a non-party officer. Dkt. No. 77-16 at 31:11; Dkt. No. 77-55 at ¶ 113. During this process, Officer Russell walked over and asked Plaintiff "you being good Robert" and "how'd that thing go the other day when you shit your pants?"[6] *Id.* at 31:22. Plaintiff appears to have mumbled that he "got drunk." *Id.* at 31:29. The non-party officer photographing Plaintiff directed him to ball his hands up behind his back. *Id.* at 31:38. After leaning down to examine Plaintiff's hands and knuckles—presumably for blood or injuries—this officer did not photograph them. *Id.*

6 Officer Russell testified during her deposition that she already knew Plaintiff from "[p]rior incidents," none involving violence. Dkt. No. 77-46 at 104:16-25.

***5** Plaintiff then exclaimed "I want to know what I did," to which Officer Russell responded "we're trying to figure that out too." *Id.* at 31:50. As the non-party officer placed Plaintiff back in the vehicle, Officer Russell asked Plaintiff "you nervous," to which he responded "yeah." *Id.* at 32:00.

**3. Criminal Investigations Division**

Officers Tolone and Cecile transported Plaintiff and Ms. Goldych from 941 James Street to CID. Dkt. No. 77-6 at 5. Officer Tolone placed Plaintiff in a holding room, where he remained detained for several hours. Dkt. No. 77-8 at 3.

At some point during the hours that Plaintiff was detained at CID, Detective Brimmer and a non-party detective appear to

have traveled to 941 James Street to investigate the scene. *See* Dkt. Nos. 77-13, 77-19. Detective Brimmer's police report indicates that he also reviewed the 911 call notes at this time. Dkt. No. 77-19 at 2. The non-party detective assisting Detective Brimmer in canvassing the apartment building documented that one of the witnesses "stated that he did not know the men who drank in the parking lot, but stated that he observed three men and one woman drinking beer in the lot this afternoon." Dkt. No. 77-13 at 2. Once back at CID, Detective Brimmer tried to speak with Ms. Goldych, but determined that she "appeared extremely intoxicated" and "was unable to speak due to apparent intoxication."[7] Dkt. No. 77-19 at 2. Detective Brimmer's police report states that "[b]ased on the 911 caller[']s description of the incident" and Plaintiff's presence at the crime scene, "he was being considered a likely suspect." *Id.* at 3.

7 Seemingly in the early morning of May 7, 2019, Detective Brimmer again tried to speak with Ms. Goldych, who "still seemed too intoxicated" and "could speak a little but was talking about outlandish things not related to this incident." Dkt. No. 77-19 at 3. When Detective Brimmer spoke with Ms. Goldych a third time, at some point later on May 7, 2019, she "seemed much less intoxicated." *Id.* While in that state, Ms. Goldych apparently told Detective Brimmer, *inter alia*, that she was "drunk[ ] at the time of the incident and does not remember all of the details" and that "she was unaware that Jones had been injured." *Id.* Detective Brimmer did not take a written statement from Ms. Goldych. *Id.*; *see also* Dkt. No. 77-30 at 2 (non-party detective's report stating that when he subsequently spoke with Ms. Goldych "[i]t should be noted throughout our conversation V. Goldych referred to 'spiritual incidents' as well as being visited by 'higher powers' on several different occasions. She often had a difficult time organizing her thoughts and at times did not directly answer questions. Based upon her actions and statements her mental health status is unknown to me at this time.").

Once Detective Brimmer returned to CID, he and Detective Beauchine moved Plaintiff into a small interrogation room at approximately 10:30 p.m. Dkt. No. 77-55 at ¶ 141; Dkt. No. 77-21 at 0:00. Plaintiff remained in this room until he was placed back in handcuffs at approximately 1:00 a.m. *See generally* Dkt. No. 77-21. Shortly after 10:30 p.m., Detective Brimmer read Plaintiff his *Miranda* rights. Dkt. No. 77-55 at ¶ 154. Plaintiff proceeded to speak with the Detectives. In response to Detective Brimmer's initial question about "[w]hat happened over there, man," Plaintiff stated "[w]ell, what happened -- my nephew got into it with some guy. You know, and - - you know, they was fighting and stuff, you know. And I'm drunk. You know what, hey, here I am. That's what happened." Dkt. No. 77-22 at 6:18-23.

***6** The parties dispute the extent of Plaintiff's intoxication during the approximately two and half hours that he remained in the interrogation room. Sometime after approximately 1:00 a.m. on May 7, 2019, when Plaintiff's booking process began, his BAC was measured at 0.15 percent, or nearly twice the legal limit to operate a motor vehicle. Dkt. No. 77-24; *see also supra* n.4. According to one of Defendants' retained experts (Robert L. Weisman, D.O.), the physiological effects of such a BAC are that "[m]otor function, speech, and judgment are all severely affected at this height of blood alcohol. Staggering, and slurred speech, may be observed."[8] Dkt. No. 77-52 at 10.

8 Dr. Weisman further opined that "[t]o help determine typical reductions in human BAC, clinical services often utilize a declination rate of 0.015% per hour." Dkt. No. 77-52 at 11. This suggests that Plaintiff had a higher BAC several hours prior, when Detective Brimmer read Plaintiff his *Miranda* rights. Dkt. No. 77-55 at ¶ 154. Presumably, the corresponding physiological effects identified by Dr. Weisman would have been more severe at that time and during the interrogation.

Based on Dr. Weisman's review of numerous record materials and his examination of Plaintiff in June 2024, his expert psychiatric report contains several other findings that are relevant for purposes of summary judgment. *See generally id.* First, Dr. Weisman determined that—when sober—"Mr. Adams has deficits in his *Miranda* understanding, particularly regarding legally acceptable deceptive police practices as well as other specific aspects of remaining silent versus talking to the police." *Id.* at 7, 9. Based on certain of Mr. Adams' test scores—again, when sober—Dr. Weisman also concluded that Plaintiff's "basic understanding of *Miranda*" ranked in the eighteenth percentile of pretrial defendants. *Id.* at 8-9. Defendants take the position in the Motion that "Dr. Weisman's opinions are unrebutted." Dkt. No. 77-56 at 20.

Beyond the extent of Plaintiff's intoxication, the parties also dispute the voluntariness and significance of various statements Plaintiff made during his interrogation by the Detectives. In sum, the Detectives refused to accept Plaintiff's version of events, and instead told Plaintiff that video evidence, forensic evidence, and numerous witnesses all established that he had fought Mr. Jones; Plaintiff just needed to provide the details. *See generally* Dkt. No. 77-22. For example:

Det. Beauchine: Okay. Hit the reset button. All right, okay.

Det. Brimmer: Why don't we start at the beginning and tell the truth?

Plaintiff: That's the truth.

Det. Brimmer: No.

Det. Beauchine: No, it's not. Listen, listen. It's not. We can do this over --

Plaintiff: Okay. Then you tell the truth, then. Okay?

Det. Beauchine: I don't need to tell the truth. You're the one that needs to --

Plaintiff: Well, well, I'm telling you what I -- I'm telling you what as far as I know.

Det. Brimmer: You were there. You were part of this.

Det. Beauchine: Yes.

Det. Brimmer: So you should --

Plaintiff: That's what I'm saying.

Det. Brimmer: -- you should know, then.

Plaintiff: Okay. That's what I'm saying. Okay, I'm trying to tell y'all what happened. You telling me I'm lying.

Det. Beauchine: Well, let me put it to you like this. Okay?

Plaintiff: Oh, man. That --

Det. Beauchine: We got several people saying that you, all right, got into an argument with this guy, and that you hit him with a stick. All right? Just hear me out. Hear me out. Okay? And that you hit him with a stick, and that you hit him so hard that he got knocked out and went to the ground.

Plaintiff: No.

Det. Beauchine: And so we're trying to verify whether or not you intentionally hit him --

***7** Plaintiff: No. No, no, no, no, no.

Det. Beauchine: -- because you're a predatory person who wants to go out there and hurt people and do bad things to people, or if this is just a family argument that went awry and --

Plaintiff: No.

Det. Beauchine: Okay.

Det. Brimmer: He ended up falling and hitting his head or something.

Det. Beauchine: Right. And that's exact --

Plaintiff: Oh, no.

Det. Beauchine: -- that's (indiscernible).

Plaintiff: No.

Det. Beauchine: Okay. That's what we're facing, so did -- was this something where you are a predator? You intentionally attack people with things --

Plaintiff: No.

Det. Beauchine: -- or whatever -- whatever you have available to you? Or is this just something that just --

Plaintiff: I don't hurt nobody.

Det. Beauchine: -- listen, listen. Or is this something where you, a couple guys are having a couple drinks and some shit is said, and it's a family matter and shit went south, and it was more of an accident than anything else, or are you intentionally going around doing stuff like this? This is --

Plaintiff: No.

Det. Beauchine: Okay. Which of the --

Plaintiff: No.

Det. Beauchine: -- which of the two is it?

Plaintiff: Nothing. Not one.

Det. Beauchine: No, no. Which -- no, no, no. I'm --

Plaintiff: I just happened to be there.

Det. Beauchine: You didn't just happen to be there. Okay?

Plaintiff: I didn't even hit the guy.

Det. Beauchine: Not with your hand.

Plaintiff: I hit nobody.

Det. Beauchine: You say not with your hands, because you're showing us your hands. We know that. All right? We know that.

Det. Brimmer: Listen, it was a mistake, and you didn't mean for him to get hurt like that, that's a big difference than if you go out there trying to hurt people.

Plaintiff: I ain't hit him.

Det. Brimmer: It's a huge difference.

Plaintiff: I didn't. Man, I swear to God I didn't. I didn't.

Det. Brimmer: It's a huge difference.

Plaintiff: I just happened to be there.

Det. Brimmer: No.

Plaintiff: I witnessed the thing.

Det. Brimmer: That story is not going to fly.

Det. Beauchine: Right. When people --

Det. Brimmer: It's not going to hold up.

Det. Beauchine: -- when people see the video and they talk to someone --

....

They're going to see you in a certain fashion. And that's without you saying anything, right? So if you give your side of the story, and give your thoughts, and what was going through your head at the time, listen, it puts people in your perspective and in your shoes. Now, it doesn't -- and here's what I would say. It --

Plaintiff: I didn't do nothing.

Det. Beauchine: Hold on, listen to me. It doesn't always make it right.

Plaintiff: I'm telling you. I didn't do this.

Det. Beauchine: People will understand if you put them in your shoes, and you can only do that by talking.

Plaintiff: I don't give a --

Det. Beauchine: By telling us.

Plaintiff: Well, I'm telling you.

Det. Beauchine: Yeah.

Plaintiff: I'm telling you how it happened. Okay? I didn't --

Det. Beauchine: Were you shooing him away with the stick, or did you mean to hurt him with the stick?

Plaintiff: No. No.

Det. Beauchine: What were you doing?

***8** Plaintiff: Wait a minute. You put -- you put words --

Det. Beauchine: No, no, no. I'm asking you. It's a question.

Det. Brimmer: We're trying to get to the --

Plaintiff: -- you're putting words in my mouth.

Det. Brimmer: -- we're trying to get to the bottom of this.

Plaintiff: I'm telling you. Charles was fighting this guy. Okay? Next thing I know --

Det. Beauchine: We're past that. We're past that. Alright? We're past that. We know.

Plaintiff: And --

Det. Beauchine: We're past that. All right? Listen, relax.

Det. Brimmer: Just help us understand.

Det. Beauchine: Help us understand what happened. All right? Between you and Charles.

Det. Brimmer: I mean, you got a wound on your face. That could be a defensive wound, you know. It could --

Plaintiff: No. I ran into a tree being drunk.

Det. Beauchine: Okay. So is it safe -- how often do you drink?

Plaintiff: Hmm? Every day.

Det. Beauchine: Okay. Could this be --

Plaintiff: All day. (laughs)

Det. Beauchine: -- could this -- listen, could this be a mistake between you and Charles --

Plaintiff: No.

Det. Beauchine: -- because you were intoxicated and --

Plaintiff: No, no, no no.

Det. Beauchine: -- he was intoxicated?

Plaintiff: No, no, no, no, no, no, no. No, no, no, no. Really, me and Charles ain't got no problem at all.

Det. Beauchine: Well, you did tonight.

Plaintiff: No. Hmm-mm.

Det. Beauchine: You did.

Plaintiff: No. No. No. Huh-uh.

Det. Beauchine: You might not want to think that you might have had a problem, but --

Plaintiff: No, man.

Det. Beauchine: -- you get -- you had a problem with him tonight.

Plaintiff: No.

Det. Beauchine: Or he had a problem with you, and you were defending yourself, tell us.

Plaintiff: No, no, no, no.

Det. Brimmer: Did he start talking about Vanessa and upset you?

Plaintiff: No.

Det. Brimmer: No?

Det. Beauchine: You had a problem with him tonight.

Plaintiff: Me and Vanessa had walked up. They happen to over sitting -- sitting down, drinking. And still we was drinking. Okay, next thing I know, they fighting. Really. Really, man. Period.

Det. Beauchine: Was this an accident or did you mean to hurt him?

Plaintiff: Man -- I didn't hurt him.

Det. Beauchine: You meant to hurt him?

Plaintiff: I never hurt him at all.

Det. Beauchine: It was an accident?

Plaintiff: Why do you -- why are you trying to put words in my mouth? Okay? Huh?

Det. Brimmer: We're not trying to. We just want to get to the bottom of this.

Plaintiff: Man, where -- well, where the bottom -- we're at the bottom of [sic]. I was telling you.

Det. Brimmer: We're just going in circles.

Plaintiff: I didn't do nothing. I was a witness. That don't -- this they got --

Det. Brimmer We're just going in circles here....

*Id.* at 51:2-59:19.

During the interrogation, Plaintiff's cellular phone rang. The Detectives instructed Plaintiff not to answer the phone, to turn it off, and to place it on the table. *Id.* at 27:6-20. At approximately 11:14 p.m., just prior to the first break taken during the interrogation, Detective Brimmer said that he was going to take Plaintiff's phone outside the room. *Id.* at 60:24-25; *see also* Dkt. No. 77-21b at 13:50. Plaintiff responded, “[m]an, give me my phone,” to which Detective Brimmer replied “[n]o, it's going to sit out here.” Dkt. No. 77-22 at 61:1-3. During this break, Plaintiff is visible talking to himself and unsuccessfully trying to open the interrogation room's door, which appears to have been deadbolted from the outside. Dkt. No. 77-21b at 14:00-17:00. Plaintiff subsequently informed the Detectives that he was not currently working because he had a “dual diagnosis” and that his psychiatrist, counselor, and primary care doctor were all at the same local healthcare provider. *Id.* at 102:16-103:16; *see also* United States v. Moran, 778 F.3d 942, 951 (11th Cir.

2015) ("[D]ual diagnosis patients are those suffering from both substance abuse *and* acute mental disorders.").

***9** Plaintiff contends that he denied assaulting Mr. Jones nearly 200 times before the Detectives coerced him into providing a false confession around midnight. Dkt. No. 85-2 at ¶¶ 570-71. During the subsequent break, Plaintiff can be heard saying "I'm going to jail for something I didn't do,"[9] Dkt. No. 77-21c at 8:49, and further talking to himself, *see, e.g., id.* at 9:10, 11:23.

9 The transcript Defendants provided inaccurately characterizes Plaintiff's statement as "[m]umbles incoherently." Dkt. No. 77-22 at 105:7.

Defendants contend that Plaintiff's eventual confession was not coerced and not false. Dkt. No. 77-56 at 9, 25. Presumably to support this position, Defendants requested that Dr. Weisman opine on Plaintiff's capacity during the May 2019 interrogation. Dkt. No. 77-52 at 11, 12. As relevant here, Defendants requested that Dr. Weisman determine whether Plaintiff had the "proper requisite intellectual capacity and base intelligence level" and the "proper requisite psychological state and mental health capacity" to have:

> ....
>
> (c) understood the significance and context of the questions being asked regarding the assault of Charles Jones; ...
>
> ....
>
> (f) understood [the] significance and context of his answers to those questions with respect to the assault of Charles Jones; ....
>
> (g) observed the events for which he was being questioned, illustrated the ability to recall those same observations, and provided answers based upon those observations and recollections (even if, under certain circumstances, Plaintiff was deceptive in his response); ....
>
> (h) [had] the ability (or exhibited the ability) to communicate his answers truthfully, effectively, clearly and coherently; ..... and
>
> (i) provided the answers of his own accord.

*Id.* at 11-12, 12-13. In response to every one of these items, Dr. Weisman concluded:

> Initially, yes, but towards the latter part of the ~1.5-hour interview, Mr. Adams being under the combination of duress, fatigue, limitations of his legal knowledge, and some level of alcohol intoxication, became emotionally and cognitively distressed, resigned, and compelled to offer the narrative of the crime being demanded of him.

*Id.* at 11-12, 12-13.

#### 4. Police Reports

##### a. Detective Brimmer

According to the arrest report prepared by Detective Brimmer, he and Detective Beauchine arrested Plaintiff at 12:00 a.m. on May 7, 2019. Dkt. No. 77-23. The arrest report listed Plaintiff as 55 years old, 5'7" tall, 160 pounds, and described his apparent condition as "Appeared Normal." *Id.* The arrest report included criminal charges against Plaintiff. *Id.*

Detective Brimmer also prepared a police report regarding events on May 6 and 7, 2019, including his telephone conversation with Ms. Bailey. Dkt. No. 77-19. The parties dispute what was said during this conversation on May 7, 2019.

According to Detective Brimmer's report, Ms. Bailey corroborated certain key details of Plaintiff's confession during this conversation, including that the day before "she observed 2 unknown black males yelling at each other[;]" "one male punched the other, and the one that got punched was hitting the other with a stick[;]" and "one of the subjects went down to the ground unresponsive and the other male was saying something about his nephew[.]" *Id.* at 3. Detective Brimmer also wrote that Ms. Bailey stated that "she called 911 but walked away prior to EMS and Police arrival." *Id.*

***10** According to a sworn affidavit provided by Ms. Bailey, she never said many of the statements Detective Brimmer attributed to her, including that she "never used the word 'punch' because I did not see either of the two individuals punching[;]" "never told Detective Brimmer that the man helping the victim was the who hit the victim. The person who

hit the victim ran away. The victim was unresponsive and the older man told me the victim was his nephew. The older man asked me to call 911[;]" "never told Detective Brimmer that the older man was involved in this fight[;]" and "[t]he police arrived while I was on the phone with 911 and I spoke to a lady officer. I did not tell Detective Brimmer that I left before the police arrived." Dkt. No. 85-10 at ¶¶ 6-9. Ms. Bailey further stated that Detective Brimmer's report "contains false statements. I never told him that I witnessed anyone punching. I never told him that the older man who called the victim his nephew was involved in the fight. I never told him that I left before the police arrived." *Id.* at ¶ 10.

**b. Officer Cecile**

Officer Cecile's police report, dated May 6, 2019, listed Plaintiff as 55 years old, 5'7" tall, 160 pounds, and described his apparent condition as "Impaired Alcohol." Dkt. No. 77-6 at 2.

In the narrative portion of his report, Officer Cecile stated that "while in route, dispatch notes read that there was a fight in progress between two people with one person [ ] unconscious on the ground, the other person was wearing a green sweat suit and there is a very large stick involved." *Id.* at 5. With respect to Plaintiff's detention, Officer Cecile wrote "[b]ased on the notes from dispatch and lack of cooperation for Goldych and Adams, both were detained at this time." *Id.* As for his call with Ms. Bailey, Officer Cecile wrote:

> Bailey stated that she witnessed the fight between the victim and suspect ... Bailey stated that the suspect was an old black male wearing a green jump suit. Bailey stated that she saw the male in the jump suit dodge a punch from the victim and then swing the large stick at [t]he victim's head which connected and knocked him to the ground.

*Id.* As for Plaintiff's appearance, Officer Cecile described him as "an older black male in a grayish/teal puffy jacket and green pants[.]" *Id.*

**c. Officer Tolone**

Officer Tolone's police report, dated May 6, 2019, listed Plaintiff as 55 years old, provided no height or weight, and described his apparent condition as "Normal." Dkt. No. 77-8 at 4.

In the narrative portion of his report, Officer Tolone wrote that "[p]rior to our arrival dispatch advised us that our caller, Jordan Bailey who refused to speak with us regarding this incident, stated to the call taker that she saw two males fighting, one wearing a green jump suit, and then saw someone get struck with a stick and then saw the man on the ground." *Id.* at 2. With respect to Plaintiff's detention, Officer Tolone wrote that "Adams was detained at this time for suspicion that he was in deed [sic] the suspect in this incident however, when we initially arrived on scene Adams stated there was another male that started a fight with Jones." *Id.* As for Plaintiff's appearance, Officer Tolone wrote that "Adams, at the time contact was made, was wearing green pants and a grey / green vest." *Id.*

**d. Other Police Reports**

Officer Russell prepared a short report, also dated May 6, 2019, with a brief narrative that does not mention Ms. Bailey or Plaintiff, or Officer Russell's interactions with either of them. Dkt. No. 77-7 at 2.

Following Plaintiff's interrogation at CID, a non-party officer photographed Plaintiff in the interrogation room and collected his clothing early in the morning of May 7, 2019. Dkt. No. 77-10. This officer catalogued Plaintiff's clothing as consisting of a "Black winter coat[,]" "Grey pants with belt[,]" "Blue/green/white striped shirt[,]" "Blue Puma sneakers[,]" and a "Baseball Hat (Grey, green Bird Game logo)[.]" *Id.* at 3.

**5. Criminal Prosecution**

In the weeks after the events of May 6, 2019, Officer Cecile, Detective Brimmer, and Ms. Bailey testified before a grand jury in Onondaga County. Dkt. No. 77-25. The grand jury subsequently indicted Plaintiff[10] for (i) assault in the first degree in violation of N.Y. Penal Law § 120.10(1); (ii) assault in the second degree in violation of N.Y. Penal Law § 120.05(2); and (iii) criminal possession of a weapon in the third degree in violation of N.Y. Penal Law § 265.02(1). Dkt. No. 77-26 at 1. Plaintiff remained detained in jail pending trial. Dkt. No. 77-55 at ¶¶ 309, 382.

10 Members of the Onondaga County District Attorney's Office ("DA's Office") have since identified deficiencies with the process that led to this result. Dkt. No. 85-7 at 1 (" 'While it seems counterintuitive that someone would confess to something they did not do, it happens,' [Onondaga County District Attorney ("DA") William] Fitzpatrick said. 'And in this case, I hope all involved analyze the root causes of why this happened. We have done that in my office.' .... 'I have discussed the case with the prosecutor initially assigned and pointed out mistakes that were made,' Fitzpatrick said. 'The prosecutor who presented it to the grand jury and missed several red flags is no longer with the office.' "); Dkt. No. 85-11 at 9 (Syracuse Police Department report stating that, according to Onondaga County Assistant District Attorney ("ADA") Joe Coolican, "when the grand jury proceeding occurred, there was no identification process done by the Assistant District Attorney overseeing the case. Therefore, the witness [Ms. Bailey] was unaware Mr. Adams was the one who was in custody and accused of these crimes.").

***11** Mr. Jones died in the hospital on August 18, 2019. Dkt. No. 85-15. A medical examiner ruled Mr. Jones' death a homicide as a result of complications from being struck in the head "with a large stick containing imbedded nails." *Id.* at 1, 2. After Mr. Jones' death, it appears that the criminal charges against Plaintiff could have been increased from assault to manslaughter. [11] Dkt. No. 77-55 at ¶¶ 372-74.

11 From the record before the Court, it is not clear whether these charges were ever increased. *Compare* Dkt. No. 77-33, *with* Dkt. No. 77-38.

On August 19 and 20, 2019, ADA Michael Manfredi offered Plaintiff, through his court-appointed counsel, "a plea to Manslaughter in the first with a sentence of 12 years Determinate." Dkt. No. 77-28 at 2, 1. On October 8, 2019, ADA Manfredi reiterated to Plaintiff's court-appointed counsel that the "[o]ffer remains Man 1st with 12 years determinate." *Id.* at 1.

On January 9, 2020, Plaintiff's court-appointed counsel made a bail application on behalf on Plaintiff, in part on the basis that:

> We have had an opportunity to review much of the evidence against [Plaintiff] and the defense believes there is significant evidence that the People have the wrong man in jail. Despite what the People have presented as a "confession", the defense believes that the evidence will show that it is a psychologically coerced false confession. There is no indication there are any witnesses identifying him at the scene. In fact the opposite. The People's case is weak.

Dkt. No. 77-39 at ¶ 22.

Soon after, an investigator from the DA's Office contacted Ms. Bailey. Dkt. No. 77-34 at 1. On January 16, 2020, Ms. Bailey provided a voluntary affidavit that stated in relevant part:

> [Investigator Tim Galanaugh] asked if I would be willing to come down to his office and meet with Mr. Coolican, the prosecutor, and see if I would watch some video footage that they had. He also made me aware that the police had made an arrest of an individual the day of the [May 6, 2019] incident. I told him that I would be willing to come down and speak to them, and help in any way because I was unaware that the victim had died.
>
> Back in May, when everything had happened, I initially called 911 for a man that was trying to assist the victim. That man that I am speaking about was African American and told me that the victim was his nephew. I stayed on the scene with my siblings until the police officers arrived. I gave information to the 911 person telling them that the suspect that was responsible had run down James Street towards downtown. I told the dispatch person that the suspect was African American and over 6 foot tall and was wearing dark green. As the officers showed up they started talking to the older guy that was kneeling next to his nephew. They wanted him to step back from the victim. I told the female officer that he had nothing to do with it. There was a[ ]lot going on at the time and I didn't want to get more involved so I walked away with my siblings. At the time, I felt that I had cooperated enough by reporting it

and I didn't want to involve myself or my siblings in what appeared to me at the time to be a fight between two guys that ended with one being knocked out with a stick. When the police officers contacted me 30 minutes or so later to see if I would come back to the scene to try to identify someone, I didn't want to get involved. I was scared that it would jeopardize my safety and my siblings['] safety so I told the police officers that I didn't want to do anymore than what I had done to help already.

***12** ....

This is what I remember about the incident today: That I had been leaving Bryant and Stratton on James Street and observed two African American men that appeared to be about to fight. Me and my siblings w[ ]ere almost walking right through where this was occurring. The victim had a long branch in his hand and starts to run up on the suspect. As the victim tries to swing on the suspect, the suspect grabs the stick and snatches the stick from the victim. The suspect then swings the stick at the victim with one hand towards his upper body. I couldn't tell where it connected or if he followed up with an elbow. All I seen is the victim stumble and drop to the ground. Suspect then tosses the stick. The suspect then goes to the pa[ ]nts pocket of the victim, takes a cell phone out and smashes it onto the pavement. Then the suspect takes off running down the sidewalk on James Street towards downtown.

I didn't see where the suspect had run to because I then focused my attention on the victim on the ground. That's the same time when I noticed the older man get off the stones by the Chestnut Apartments sign and walk over to his nephew to check on him. I remember telling him that he should help get him up off the ground. The victim wasn't moving and looked like he had been knocked out, but after a few moments of looking at him more closely I told the older man that he, the victim, didn't look so good. That[']s when the uncle asked me to call 911, so I did. I stayed with the uncle until the police arrived, but like I said, I walked off shortly after with my siblings because we didn't want to get more involved.

Today, at around 1045 AM, I met Mr. Coolican and Investigator Galanaugh at the D.A.'s Office. They had me watch some video footage from one of the officer's body cameras when they showed up at the scene. In the video I saw the victim on the ground and the African American man, who told me the victim was his nephew, kneeling next to him wearing a gray baseball hat. You can hear me talking in the video telling the female officer that the victim was hit with the stick.

I showed Mr. Coolican w[here] the victim's cell phone can be seen in the video laying on the pavement, smashed. I was told by Mr. Coolican and Investigator Galanaugh that the person that was arrested in this incident, was the man that told me that the victim was his nephew. The person that the police arrested was not the suspect that I saw fighting with the victim, and causing the victim to be hurt with the stick. I saw that suspect run from the scene after smashing the victim's phone on the ground.

*Id.* at 1-2; *see also* Dkt. No. 77-55 at ¶¶ 380-81.

Plaintiff was not released from jail until February 12, 2020, more than nine months after his arrest on May 6, 2019. Dkt. No. 77-55 at ¶ 382. The charges against Plaintiff were not dismissed until September 15, 2020. *Id.* at ¶ 404.

**a. Plaintiff's Capacity**

On February 13, 2020, the judge presiding over Plaintiff's criminal prosecution ordered Plaintiff's capacity evaluated pursuant to New York Criminal Procedure Law § 730. Dkt. No. 77-35 at 1 (stating that "the Court being of the opinion that the defendant may be an incapacitated person" an examination is ordered "to determine whether said defendant, as a result of mental disease or defect, lacks capacity to understand the proceedings against him or to assist in his own defense").

***13** Two physicians subsequently examined Plaintiff and issued their reports on August 27, 2020. Dkt. No. 77-55 at ¶¶ 391-92, 395. As relevant here, the first physician concluded that "although suffering from Alcohol Use Disorder," Plaintiff "at the time of this evaluation, did not as a result of mental disease or defect lack the capacity to understand the proceedings against him or to assist in his own defense." *Id.* at ¶ 394. The second physician similarly concluded that Plaintiff "is not currently suffering from a mental illness which would cause him to lack the capacity to understand the proceedings against him or to assist his counsel in his own defense" and that Plaintiff, "at the time of this evaluation, did not as a result of mental disease o[r] defect lack the capacity to understand the proceedings against him or to assist in his own defense." *Id.* at ¶ 398.

**6. Additional Investigation by CID**

On January 29, 2020, prior to Plaintiff's release from jail, two non-party detectives returned to 941 James Street to obtain video footage of the incident that had occurred nearly nine months earlier. *Id.* at ¶ 383. Their investigation obtained no such footage, *id.* at ¶ 384, and determined that none of a dozen nearby businesses retained such footage for longer than three months, Dkt. No. 77-31 at 2. The two detectives also made efforts at this time to locate individuals previously mentioned by Plaintiff and Ms. Goldych, including "the 'Pete' mentioned in BWC [footage from the Responding Officers], but without success." Dkt. No. 77-55 at ¶¶ 385-86.

Forensic evidence recovered from items collected at 941 James Street—apparently including multiple drink containers as well as Mr. Jones' smashed phone—was linked to an individual whose first name is Pierre. Dkt. No. 85-1 at ¶ 56; Dkt. No. 85-4; Dkt. No. 85-14 at 9, 28; Dkt. No. 85-11 at 28. A non-party detective testified during his deposition that "[w]e do have forensic evidence indicating that he may have been present at the time of the incident or in the hours preceding it." Dkt. No. 77-50 at 123:24-124:9.

A September 2020 internal memorandum from the Syracuse Police Department ("Memo") states that such evidence "strongly suggests, at a minimum, Pierre [ ] was onscene at some point that day [May 6, 2019], and drinking with the group" and notes that Pierre "is listed as much bigger than Adams ([ ] - 6'00", 220 lbs.), and closer resembles that of the suspect description initially provided to 911 by Jordan Bailey." Dkt. No. 85-11 at 28. When provided with the opportunity to speak with CID, Pierre apparently declined to do so. *Id.* Another internal document from the Syracuse Police Department indicates that while Pierre had been identified as "a person of interest," "there is no proof beyond a reasonable doubt suggesting [Pierre] is the primary suspect at this time." *Id.* at 7-8. The Memo notes that the investigation of Mr. Jones' death "will now be considered 'unsolved'." *Id.* at 30.

### C. Prior Proceedings

#### 1. Citizen Review Board

In April 2021, Plaintiff filed a complaint with Defendant City's Citizen Review Board in connection with his arrest and interrogation. Dkt. No. 85-11 at 14-21. The Syracuse Police Department's Internal Affairs Division assigned a sergeant to investigate Plaintiff's complaint and prepare a case report. *Id.* at 1-13 ("Report"). The sergeant's investigation included an interview with a deputy police chief. *Id.* at 8-9. The sergeant included the following information from that conversation in the Report:

> I addressed the complaints made by Mr. Adams of the false arrest as well as being interviewed while intoxicated. Deputy Chief [ ] was able to explain there is case law which supports interviewing a person who is intoxicated. The only limitation to this is if the person being interviewed is intoxicated to the point of being in a manic state. Deputy Chief [ ] also informed me it is a matter of training that detectives are trained on the fact that interviewing an intoxicated person is lawful, unless in this manic state.... Therefore, the actions by [the D]etectives during that interview were lawful and proper.

***14** *Id.* at 9. The Report ultimately concluded that:

> Mr. Adams['] claim that he was arrested and charge[d] for a crime he did not commit is true. However, after reviewing this case and based on the evidence shown, there is no evidence to show wrong doing on behalf of any of the Syracuse Police Officers involved. The interview conducted by Det. Beauchine and then Det. Brimmer was lawful and proper. There was no violation of any rules and regulations by Det. Beauchine or Det. Sgt. Brimmer, or any officer. The basis for Mr. Adams being charged with this crime was due to his own admission and the lack of cooperation from the original eye witness. Therefore, this complaint is unsubstantiated.

*Id.* at 12.

In the course of reaching these conclusions, the sergeant also briefly spoke with the Detectives. *Id.* at 11-12. According to Detective Brimmer, "Mr. Adams did not appear excessively intoxicated during the interview" that began on May 6, 2019. *Id.* at 11. Detective Beauchine similarly "stated [that] he did not feel Mr. Adams was excessively intoxicated" during the interview. *Id.* at 12. Detective Brimmer also shared that "Mr. Adams would not have been under arrest without the confession." *Id.* at 11.

The sergeant, the sergeant's supervisor, a bureau chief, the first deputy chief, and the chief of police are all listed as March 2022 signatories to the Report. *Id.* at 13.

**2. New York Court of Claims**

Plaintiff previously filed a notice of claim in the New York Court of Claims. Dkt. No. 63-1. Defendants examined Plaintiff on January 22, 2021. Dkt. No. 77-43.

**D. Procedural History**

Plaintiff commenced this action in June 2021. Dkt. No. 1. Defendants moved to dismiss the Complaint in July 2021. Dkt. No. 7. Plaintiff voluntarily dismissed his claims against one individual defendant and otherwise opposed the motion. Dkt. Nos. 9, 16.

In March 2022, United States Senior District Judge Lawrence E. Kahn partially granted and partially denied Defendants' motion to dismiss. Dkt. No. 19. Judge Kahn observed that "[i]f the facts alleged by Plaintiff are true, Plaintiff's detainment amounts to a substantial miscarriage of justice." *Id.* at 1. Judge Kahn dismissed Plaintiff's second, sixth, seventh, and ninth claims, as well as another individual defendant, and denied the balance of Defendants' motion. *Id.* at 1-18. Discovery proceeded, with the parties requesting and receiving numerous extensions. *See generally* Docket Sheet.

In January 2024, United States Magistrate Judge Mitchell J. Katz denied Plaintiff's motion to amend the Complaint to add two individual defendants, but granted Plaintiff's request to dismiss his claims against three other individual defendants. Dkt. No. 64.

The Motion was fully submitted in April 2025. Dkt. Nos. 77, 85, 90.

**E. Plaintiff's Claims**

Plaintiff's remaining claims,[12] *see* Dkt. No. 19, are as follows: pursuant to Section 1983, (i) false arrest against the Individual Defendants, Dkt. No. 1 at ¶¶ 41-47; (ii) malicious prosecution against Defendants, *id.* at ¶¶ 63-71; (iii) fabricated evidence against Defendants, *id.* at ¶¶ 72-80; (iv) a *Monell* claim against Defendant City, *id.* at ¶¶ 52-62; and, pursuant to New York law, (v) false arrest against Defendants, *id.* at ¶¶ 91-93; and (vi) negligent supervision, etc., against Defendants, *id.* at ¶¶ 97-100.

12 The Complaint also contains various requests for relief. *See, e.g.,* Dkt. No. 1 at ¶¶ 105-114; Dkt. No. 77-56 at 9 n.2.

**III. STANDARD OF REVIEW**

***15** Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also* *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993). A court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Galeotti v. Cianbro Corp.*, No. 12-cv-00900, 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

Defendant, in seeking summary judgment, "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *accord* *Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *accord* *R.B. Ventures, Ltd.*

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

*v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia, Anderson*, 477 U.S. at 249-50, 106 S.Ct. 2505).

**IV. DISCUSSION**

The Court addresses the parties' specific arguments with respect to the remaining claims below. Given the disputed factual record as to many aspects of Plaintiff's claims, the Court finds it appropriate to reiterate the Second Circuit's guidance in another case involving Section 1983 claims for false arrest, malicious prosecution, fabricated evidence, and related *Monell* liability:

> We write because the district court improperly granted summary judgment to defendants. The record before us reveals evidence from which a jury could find that certain of the individual police officers prepared a false report and initiated a prosecution of plaintiff[ ] predicated on this manufactured evidence. We also write to emphasize a larger issue raised by this case. Plaintiff[ ] allege[s] that the defendant police officers lied and fabricated evidence. While we do not know whether the accusations can be sustained, we do know that such accusations must be carefully reviewed. Lying is wrong, and if the police lie while acting in their official capacity, they also violate the public trust. Courts must ensure that such serious accusations receive appropriate scrutiny lest our Court appears to endorse such official misconduct, which would weaken the public's respect for the administration of justice. In making these remarks, we emphasize that we have reached no conclusions about whether the plaintiff['s] accusations can be substantiated. It will be for a jury to determine at trial whether plaintiff[ ] ha[s] proved [his] very serious charges.

***16** *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 125 (2d Cir. 1997). While the Court addresses the parties' significant factual disputes in detail below, it similarly reaches no conclusions at this stage regarding whether Plaintiff will ultimately be able to prove his surviving claims.

**A. False Arrest under Section 1983 and New York law**

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures[,] is substantially the same as a claim for false arrest under New York law." *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (alteration in original) (quoting *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021)). And "[u]nder New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id.* (quoting *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021)). "Under both federal and New York state law, probable cause is a complete defense to a false arrest claim." *Carruthers v. Colton*, 153 F.4th 169, 179 (2d Cir. 2025) (quoting *Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022)); *see also Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) ("[Plaintiff]'s unlawful arrest claim fails because his handcuffing was an 'investigatory detention' (otherwise known as a '*Terry* stop') that never ripened into an arrest and was supported by reasonable suspicion."). "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Hawkins*, 37 F.4th 854, 858 (2d Cir. 2022) (quoting *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990)).

As detailed earlier, after several minutes of questioning by numerous officers, Plaintiff was handcuffed and put into the back of a police vehicle in front of 941 James Street at approximately 7:34 p.m. on May 6, 2019. *See supra* Section II.B.2. Plaintiff was eventually transported to CID shortly after 8:00 p.m., where he remained detained until his custodial interrogation began at approximately 10:30 p.m. *See supra*

Section II.B.3. Plaintiff was held in the interrogation room until approximately 1:00 a.m. on May 7, 2019, when he was placed back in handcuffs and his booking process began. *Id.* Plaintiff was then detained for more than nine months, until his eventual release on February 12, 2020. *See supra* Section II.B.5.

Plaintiff's opposition to the Motion does not challenge his detention and questioning by officers prior to being handcuffed at approximately 7:34 p.m.[13] *See, e.g.,* Dkt. No. 85 at 10; *see also* Dkt. No. 77-56 at 12-13. And Defendants only seek summary judgment on the portions of Plaintiff's false arrest claims that relate to his "pre-confession detainment" and "post-confession arrest," not his subsequent months-long detention. *Compare* Dkt. No. 77-56 at 12, *with* Dkt. No. 1 at ¶¶ 43, 92-93; *see also* Dkt. No. 7-2 at 13-14; Dkt. No. 19 at 9-10. The Court thus focuses its analysis on Plaintiff's detention at 941 James Street on May 6, 2019, his formal arrest at CID on May 7, 2019, and the five or so hours that he remained detained in between.

13 To the extent that the Complaint states a claim for false arrest prior to this time, any such claim is dismissed as abandoned, as is any claim for declaratory judgment. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."); *see also* Dkt. No. 1 at ¶¶ 101-04; Dkt. No. 77-56 at 9 n.2.

**1. Plaintiff's Detention at 941 James Street**

***17** Defendants first contend that Plaintiff's false arrest claims should fail because—although Plaintiff was handcuffed, placed in the back of a police vehicle, transported from his home to a police station approximately 30 minutes later, and detained for hours—he was not actually under arrest during this time. Instead, Defendants argue, the approximately five-hour seizure of Plaintiff prior to his formal arrest merely constituted an investigative stop and only required reasonable suspicion. Dkt. No. 77-56 at 13, 16 (stating that "only reasonable suspicion was required" to detain Plaintiff at 941 Adams Street and Defendants "had ample reasonable suspicion to detain Plaintiff"); *id.* at 17, 18 (stating that "Plaintiff's pre-confession detainment at CID was merely a continuation of his on-scene detainment" and "the detainment was supported by reasonable suspicion"); Dkt. No. 90 at 6 (stating that, as to Plaintiff's interrogation, "Defendants maintain that Plaintiff was being *detained* requiring only reasonable suspicion").

This is a particularly weak argument given applicable law and the facts of this case.[14] *See, e.g., United States v. Lefebvre*, 117 F.4th 471, 475 (2d Cir. 2024) ("There were several factors present during th[is] seizure that, in many situations, this Court would consider to be evidence that a seizure had indeed become a de facto arrest. [Plaintiff]'s 'freedom of movement was restrained' and 'handcuffs were used.' ... [T]he encounter lasted roughly 20 minutes.... [Plaintiff]'s transportation to a police station, instead of some of other reasonable third location, would in many situations clearly establish that the seizure had ripened into a de facto arrest.") (citations omitted) (collecting cases). The Court agrees with Plaintiff, Dkt. No. 85 at 8-9, that Defendants' maximalist position regarding their multi-hour detention of Plaintiff is unsupported by Fourth Amendment jurisprudence, *see, e.g., United States v. Candelario*, 486 F. App'x 907, 908 (2d Cir. 2012) ("It is well established that 'a police officer may *briefly detain* an individual for questioning if the officer has a reasonable suspicion that the individual is, has been, or is about to be engaged in criminal activity.' ") (emphasis added) (quoting *United States v. Padilla*, 548 F.3d 179, 186 (2d Cir. 2008)). *See also Grice*, 873 F.3d at 167 ("In general, to determine whether a *Terry* stop is so intrusive as to become an arrest, we look to: [']the amount of force used by police, the need for such force, and the extent to which the individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used.[']") (quoting *United States v. Perea*, 986 F.2d 633, 645 (2d Cir. 1993)).

14 It also contradicts a position that Defendants took in support of their prior dispositive motion, wherein they argued that Plaintiff's "alleged drunken confession – insofar as it could possibly be construed as 'false' – did not result in Plaintiff's loss of liberty as he had already been arrested and confined." Dkt. No. 7-2 at 16.

By approximately 7:34 p.m., Plaintiff had already been questioned for several minutes by multiple officers at the scene. *See supra* Section II.B.2.a.ii. Plaintiff had informed officers that he did not assault Mr. Jones (which Ms. Bailey had also said); that the person who assaulted Mr. Jones had run down James Street (which Ms. Bailey had said as well);

that the assailant was a black man named "Pete" (which Ms. Goldych had also said); and that Plaintiff lived in one of the apartments at 941 James Street. *Id.* Defendants acknowledge that "the entire interaction was peaceful" prior to Plaintiff's handcuffing, Dkt. No. 77-56 at 15, and Officer Tolone testified that he did not feel his safety was at issue, Dkt. No. 90-1 at ¶ 510. Throughout this time, Plaintiff did not interfere with the investigation, continued answering questions from officers, and made no effort to leave the scene. *See supra* Section II.B.2.a.ii. Indeed, BWC footage shows Plaintiff sitting down and speaking with Officer Russell seconds before Officer Tolone directed him to stand up and turn around. Dkt. No. 77-17 at 4:34. Officer Tolone then handcuffed Plaintiff and informed Plaintiff that he was being detained. *Id.* Officer Tolone proceeded to place Plaintiff into the back of one of the multiple police vehicles parked in front of Plaintiff's home. *Id.* at 5:08.

***18** Given this factual record, a reasonable juror could conclude that Plaintiff was arrested at this time. *Grice*, 873 F.3d at 167. As the authority upon which Defendants rely, Dkt. No. 77-56 at 15, makes clear, "[h]andcuffing is ordinarily not incident to a *Terry* stop, and tends to show that a stop has ripened into an arrest," *Grice*, 873 F.3d at 167. *See also United States v. Newton*, 369 F.3d 659, 676 (2d Cir. 2004) ("Handcuffs are generally recognized as a hallmark of a formal arrest.") (collecting cases). Moreover, Defendants have failed to demonstrate the applicability of any of the "certain unusual circumstances" when "handcuffing a suspect to investigate a reasonable suspicion does not transform a *Terry* stop into an arrest." *Grice*, 873 F.3d at 168 (collecting cases); *see also* Dkt. No. 77-56 at 15-16. As just discussed, nothing in the record indicates concern about officer safety. The balance of Defendants' cursory arguments about why Plaintiff purportedly needed to be handcuffed and placed in the back of a police vehicle are unpersuasive. *United States v. Fiseku*, 915 F.3d 863, 870 (2d Cir. 2018) ("[T]o satisfy the reasonableness standard, officers conducting stops on less than probable cause must employ the least intrusive means reasonably available to effect their legitimate investigative purposes.") (quoting *Newton*, 369 F.3d at 674).

### 2. Probable Cause

Defendants next argue that, regardless of when Plaintiff was arrested, they had probable cause to arrest him for assault [15] within moments of arriving at 941 James Street. Dkt. No. 77-56 at 12-18.

15 Defendants do not contend that they had probable cause to arrest Plaintiff for any other offense. Dkt. No. 77-56 at 14.

This argument is also unconvincing, again given applicable law and the facts of this case. "To assess probable cause, a court considers only the facts 'available to the officer at the time of the arrest and immediately before it.' " *Ashley*, 992 F.3d at 136 (quoting *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013)). The parties largely agree on the basic information known to the Responding Officers at the time Plaintiff was handcuffed: [16] the 911 call notes, Plaintiff's presence at the scene, and some blood on Plaintiff's lip. Dkt. No. 77-56 at 13-14; Dkt. No. 85 at 14-15. The parties dispute the factual contours of much of that information, however, as well as its legal significance.

16 The parties further agree that the "collective or imputed knowledge doctrine" applies. *See, e.g.*, Dkt. No. 77-56 at 12 ("[T]he relevant inquiry is whether the collective knowledge of the Syracuse Police Department ('SPD') constituted probable cause, not whether a specific arresting officer had probable cause."); Dkt. No. 85 at 14. Under that doctrine, an arrest "is permissible where the actual arresting ... officer lacks the specific information to form the basis for probable cause ... but sufficient information to justify the arrest ... was known by other law enforcement officials initiating ... the investigation" and "the other officers 'have communicated the information they possess individually, thereby pooling their collective knowledge to meet the probable cause threshold.' " *Brown v. City of New York*, 798 F.3d 94, 99 (2d Cir. 2015) (alterations in original) (first quoting *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007); and then quoting *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008)).

Defendants' arguments regarding probable cause miss the forest for the trees. When evaluating probable cause, the Second Circuit has "consistently held, as relevant here, that 'an officer may not disregard plainly exculpatory evidence.' " *Washington v. Napolitano*, 29 F.4th 93, 107 (2d Cir. 2022) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Defendants were repeatedly informed that the black man who assaulted Mr. Jones was no longer present at the scene. *See supra* Section II.B.2.a. Ms. Bailey told the 911 dispatcher that this third man had assaulted the victim and had run off, but that the victim and his uncle were still there.

*Id.* The 911 call notes indicated that the suspect was "last seen wearing" a green sweatsuit. Dkt. No. 90-1 at ¶ 18. Ms. Bailey again told Officer Russell—as Officer Russell stood next to Plaintiff, possibly within earshot of Officer Cecile as he approached—that the assailant who hit Mr. Jones was someone other than Plaintiff and had run off. *See supra* Section II.B.2.a. Plaintiff separately told Responding Officers that the assailant had run off, that his name was Pete, and that he was a black man. *Id.* Ms. Goldych also indicated that the man's name was Pete. *Id.* Defendants simply ignore the existence of this third man, identified by multiple eyewitnesses at the scene (and subsequently confirmed by forensic evidence). *See* Dkt. No. 77-56 at 12-18; *see also* Dkt. No. 77-50 at 123:24-124:9; Dkt. No. 85-11 at 28.

***19** Instead, Defendants argue that Plaintiff "was the only individual on scene that matched Ms. Bailey's description." Dkt. No. 77-56 at 14. But a reasonable juror could readily conclude that Plaintiff did not match Ms. Bailey's description. As the parties agree, the 911 call notes described the assailant as 25 to 35 years old, 6'3" tall, with a "med[ium] build," and "black male." Dkt. No. 90-1 at ¶ 18; Dkt. No. 77-4 at 3. At the time, Plaintiff was 55 years old, 5'7" tall, and weighed approximately 160 pounds. *See, e.g.,* Dkt. No. 90-1 at ¶ 515. Defendants' own observations and descriptions of Plaintiff are consistent with these attributes. *See, e.g.,* Dkt. No. 77-6 at 2 (Officer Cecile's police report listing Plaintiff's age as 55, height as 5'7," and weight as 160); Dkt. No. 77-23 (Detective Brimmer's arrest report listing the same); Dkt. No. 77-8 at 4 (Officer Tolone's police report listing Plaintiff's age as 55); Dkt. No. 77-16 at 4:11 (Officer Russell's BWC footage showing her asking Plaintiff for his birthdate, prior to his arrest, and being told the date in 1964), 18:26 (Officer Russell's BWC footage showing her providing Plaintiff's birthdate to another officer); Dkt. No. 77-25 at 7:5-11 (Officer Cecile testifying that he thought Plaintiff was in his "[l]ate 50s or early 60s" "just going by looking at [him]").

The only portion of Plaintiff's physical attributes that "matched" Ms. Bailey's description of the suspect is that Plaintiff was also "a black male." Dkt. No. 90-1 at ¶ 18. A reasonable juror could conclude that this fails to provide reasonable suspicion to briefly detain Plaintiff, let alone probable cause to arrest him. *See, e.g., United States v. Walker,* 965 F.3d 180, 186 (2d Cir. 2020) ("As we have repeatedly said, 'race, when considered by itself and sometimes even in tandem with other factors, does not generate reasonable suspicion for a stop.' ") (quoting *United States v. Swindle,* 407 F.3d 562, 569-70 (2d Cir. 2005)); *Zuniga-Perez v. Sessions,* 897 F.3d 114, 124 (2d Cir. 2018) ("As the Supreme Court has made abundantly clear, stopping and interrogating people based solely on race or ethnicity violates the Fourth Amendment.") (citing *United States v. Brignoni-Ponce,* 422 U.S. 873, 885-86, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)); *Dancy v. McGinley,* 843 F.3d 93, 109 (2d Cir. 2016) ("[A] description of race and gender alone will rarely provide reasonable suspicion justifying a police search or seizure.") (quoting *Brown v. City of Oneonta,* 221 F.3d 329, 334 (2d Cir. 2000)); *Jenkins,* 478 F.3d at 90 ("It has long been established, however, that when that description could have applied to any number of persons and does not single out the person arrested, probable cause does not exist.") (collecting cases); *see also supra* n.13.

Defendants also claim that Plaintiff's clothing "matched" the description Ms. Bailey had provided, in that "his hat, shirt, and pants all appeared to be different shades of green." Dkt. No. 77-56 at 13-14. This characterization is unsupported by the BWC footage from the Responding Officers, which a reasonable juror could conclude shows Plaintiff wearing a grey hat, a white striped shirt, grey pants, and a puffy black patterned jacket, none matching. *See generally* Dkt. Nos. 77-15, 77-16, 77-17. Defendants' claim is also contradicted by the assessment from the non-party officer who cataloged Plaintiff's clothing as consisting of a "Baseball Hat (Grey, green Bird Game logo)[,]" "Blue/green/white striped shirt[,]" "Grey pants with belt[,]" and a "Black winter coat[.]" Dkt. No. 77-10 at 3. In any event, the varied articles of clothing Plaintiff wore on May 6, 2019 are not indisputably a "green sweatsuit," like Ms. Bailey had described. Dkt. No. 90-1 at ¶ 18. And Ms. Bailey never described the suspect wearing any hat at all, Dkt. No. 77-5, let alone a hat with prominent neon lettering, like the one Plaintiff had on his head when Officer Russell arrived, walked over to Plaintiff and Ms. Bailey, and began speaking with them, Dkt. No. 77-16 at 0:00. Given this factual record, Defendants have not established that Plaintiff's clothing "matched" the description of the suspect such that they are entitled to judgment as a matter of law.

***20** At best, Defendants' argument is that they had probable cause to arrest Plaintiff because some of his clothing may have had some green. The Court finds this argument unpersuasive given the Second Circuit's analysis in *Dancy v. McGinley*. In that Section 1983 case, police officers received a description of a robbery suspect as simply "[t]hin black male, brown jacket." 843 F.3d at 99. Minutes later, officers stopped, and ultimately arrested, two teenagers near the crime scene, one of whom was wearing a "camouflage-patterned coat, with

green, light green, and brown patches." *Id.* at 100, 101. As relevant here, the panel reasoned that there was not even reasonable suspicion to stop this teenager, who "was indeed thin, black, and male. But, unlike the description, he was wearing a camouflage-patterned coat." *Id.* at 109. The Circuit went on to explain that "[w]hile such a discrepancy does not necessarily defeat a finding of reasonable suspicion ... the remaining description—thin, black, and male—is too vague in the circumstances here to justify a stop of anyone meeting it[.]" *Id.* (citations omitted) (collecting cases).

A reasonable juror could reach a similar conclusion here. Plaintiff's age, height, and build were nothing like the physical description Defendants received for the suspect. Further, Plaintiff's clothes, in color and type, did not constitute a "green sweatsuit," and thus did not provide Defendants reasonable suspicion to detain him, let alone probable cause to arrest him. *See* *Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) ("Viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find that the police arrested [plaintiff] based on little more than a witness's statement that he wore a similar shirt to that of one of [the victims'] attackers. Although a jury could also interpret the evidence differently, the record presents genuine issues of material fact that preclude the conclusion that there was probable cause as a matter of law and that, instead, require a trial on the merits."); *see also supra* n.13.

Defendants' argument regarding Plaintiff's presence at the scene fares no better. *See, e.g.,* *United States v. Delossantos*, 536 F.3d 155, 160 n.4 (2d Cir. 2008) ("[A] person's presence at a crime scene or association with criminal suspects do not, without more, amount to probable cause to arrest."); *Dufort*, 874 F.3d at 350 ("Police do not have particularized probable cause to make an arrest simply because a suspect has suspicious acquaintances, or happens to be at the scene of a crime[.]") (citation omitted); *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) ("[A]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.") (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). Plaintiff was present in front of the apartment building where he lived and, as detailed earlier, Defendants were repeatedly informed that the assailant was another man who had already left the scene. *Mitchell v. City of New York*, 841 F.3d 72, 78 (2d Cir. 2016) ("[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.") (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248, 1250 (1983)).

As to the blood on Plaintiff's lip, in response to Officer Russell's question, Ms. Bailey can be heard explaining that "he was hit too in the whole altercation, you see that stick he was hit with that." Dkt. No. 77-55 at ¶ 12; *see also* Dkt. No. 77-16 at 0:05.

In sum, the totality of the circumstances proffered by Defendants fails to establish an undisputed factual record on which to grant summary judgment. *Delossantos*, 536 F.3d at 161. A reasonable juror could find that Defendants lacked probable cause to arrest Plaintiff at approximately 7:34 p.m. on May 6, 2019.

### 3. Subsequent Information

Defendants go on to argue that, between handcuffing Plaintiff and formally arresting him approximately five hours later, they obtained additional information that provided them probable cause to arrest Plaintiff. Dkt. No. 77-56 at 15-21. Because a reasonable juror could conclude that Plaintiff had been arrested at approximately 7:34 p.m., however, this subsequent information is not relevant to analyzing probable cause. *See, e.g.,* *Carruthers*, 153 F.4th at 179 ("To assess probable cause, a court considers only the facts 'available to the officer at the time of the arrest and immediately before it.' ") (quoting *Ashley*, 992 F.3d at 136); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) ("The inquiry is limited to 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.' ") (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)). Nonetheless, for the avoidance of doubt, a reasonable juror could conclude that none of the subsequent information identified by Defendants, in combination with the earlier information discussed above, provided probable cause to formally arrest Plaintiff at approximately 1:00 a.m. on May 7, 2019.

#### a. Plaintiff's Continued Detention Prior to His Interrogation

***21** Defendants first argue that the Responding Officers "performed many investigative tasks" after handcuffing Plaintiff at approximately 7:34 p.m., and that Detective Brimmer "performed several investigative tasks" prior to interrogating Plaintiff at approximately 10:30 p.m. Dkt. No. 77-56 at 15, 17.

With respect to the Responding Officers, however, the only additional information Defendants identify is Officer Cecile's subsequent call with Ms. Bailey. *Id.* at 15-16. During that call, Ms. Bailey appears to have again stated that the man who hit Mr. Jones was "wearing a green jump suit," Dkt. No. 77-55 at ¶ 100, and was "like 35 to 40" years old, Dkt. No. 77-15 at 16:43, not the "[l]ate 50s or early 60s" that Officer Cecile perceived Plaintiff to be, Dkt. No. 77-25 at 7:5-11. Such information is largely consistent with—and duplicative of—the information Responding Officers already had. *See supra* Section IV.A.2. Thus, a reasonable juror could conclude that Plaintiff still did not match the description that Ms. Bailey provided.

Defendants further contend that the Responding Officers undertook various investigative efforts at 941 James Street after handcuffing Plaintiff. Dkt. No. 77-56 at 15-16. But Defendants identify no relevant additional information from these efforts. *Id.* Instead, Defendants take the position that the Responding Officers had "ample" probable cause to arrest Plaintiff because "[a]t the conclusion of th[eir] investigation, nothing excluded Plaintiff as the assailant. In other words, no eye-witness exonerated Plaintiff ... and there was no available surveillance evidence." *Id.* at 16. Defendants cite no legal authority for the proposition that unless a person is "exonerated" by an eyewitness or video evidence at the scene of a crime, there is probable cause to arrest them. *Cf. Ricciuti*, 124 F.3d at 130 ("This argument—an ill-conceived attempt to erect a legal barricade to shield police officials from liability—is built on the most fragile of foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society."). Defendants identify nothing from these investigative efforts that even suggested that Plaintiff had committed a crime. *Hawkins*, 37 F.4th at 858.

With respect to Detective Brimmer's investigation prior to Plaintiff's interrogation, Defendants similarly contend that Detective "Brimmer did not discover any evidence that suggested Plaintiff *was not* the assailant." Dkt. No. 77-56 at 17. More importantly, Defendants again fail to identify any additional information developed by Detective Brimmer that indicated Plaintiff *was* the assailant. *Id.* Moreover, a reasonable juror could conclude that the factual record belies Defendants' claim. The results of the canvas conducted by Detective Brimmer and his colleague further indicated that there had been three men drinking at the scene of the assault, not just Plaintiff and Mr. Jones, and thus further supported the possibility that Plaintiff was not the assailant. Dkt. No. 77-13 at 2; *see also* Dkt. No. 77-56 at 12.

**b. Plaintiff's Interrogation**

Defendants next argue that Plaintiff's statements during his interrogation by the Detectives provided probable cause for his arrest, and that "Plaintiff voluntarily waived his rights and was not coerced into a confession." Dkt. No. 77-56 at 18-21.[17]

[17] Defendants do not dispute that *Miranda* warnings were necessary. *See id.*; *Jackson v. Conway*, 763 F.3d 115, 136 (2d Cir. 2014) ("The *Miranda* safeguards apply only to 'custodial interrogations.' ").

***22** "Challenges to the voluntariness of a confession are based on two overlapping constitutional provisions: (1) due process protections under the Fifth (or Fourteenth) Amendment, and (2) the Fifth Amendment privilege against self-incrimination." *United States v. Mendonca*, 88 F.4th 144, 163 (2d Cir. 2023) (citing *Dickerson v. United States*, 530 U.S. 428, 433, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)). "As a general matter, courts' descriptions of statements as 'compelled' (invoking the text of the Self-Incrimination Clause) and/or 'involuntary' (invoking, arguably, the Due Process Clause) are often used interchangeably and the words often treated synonymously." *United States v. Allen*, 864 F.3d 63, 82 n.84 (2d Cir. 2017) (collecting cases). As a practical matter, courts "look at the totality of circumstances surrounding a *Miranda* waiver and any subsequent statements to determine knowledge and voluntariness." *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (citation omitted). "To be effective, a waiver of a defendant's *Miranda* rights must be both knowing and voluntary." *United States v. LaPorte*, 779 F. App'x 63, 65 (2d Cir. 2019) (citing *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011)). In the *Miranda* context, " 'knowing' means with full awareness of the nature of the right being abandoned and the consequences of abandoning it, and 'voluntary' means by deliberate choice free from intimidation, coercion, or deception." *Taylor*, 745 F.3d at 23 (quoting *Plugh*, 648 F.3d at 127). Even if a waiver is knowing and voluntary, courts "must nonetheless determine whether the [subsequent] inculpatory statements themselves were voluntary." *Id.* (citing *Dickerson*, 530 U.S. at 444, 120 S.Ct. 2326).

Defendants make various factual arguments as to why "there is no evidence that Plaintiff was not of sound mind or so


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

intoxicated as to render his confession involuntary." Dkt. No. 77-56 at 19-20. Given the present factual record, however, Defendants are not entitled to summary judgment on this issue.

As an initial matter, Defendants' own expert contradicts Defendants' position. *Id.* at 20. Dr. Weisman has repeatedly opined that, over the course of the interrogation, "Mr. Adams being under the combination of duress, fatigue, limitations of his legal knowledge, and some level of alcohol intoxication, became emotionally and cognitively distressed, resigned, and compelled to offer the narrative of the crime being demanded of him." Dkt. No. 77-52 at 11-13.

Further, the parties agree that Plaintiff consumed in excess of one hundred ounces of malt liquor in the hours before his interrogation. Dkt. No. 77-55 at ¶¶ 410-11, 414, 420. Plaintiff stated "I'm drunk" shortly after the interrogation began, Dkt. No. 77-22 at 6:22, and repeatedly referenced his drunkenness thereafter, Dkt. No. 90-1 at ¶ 522. Nearly three hours after the interrogation began, Plaintiff's BAC, as measured by Defendants, was still almost twice the legal limit. Dkt. No. 77-24; *see also supra* n.4. Dr. Weisman opined that, even at this lower BAC, "[m]otor function, speech, and judgment are all severely affected" and that "[s]taggering, and slurred speech, may be observed." Dkt. No. 77-52 at 10. A reasonable juror could conclude that Plaintiff's body movements, speech, and demeanor during the videotaped interrogation demonstrate a significant level of intoxication, and also that they are consistent with Dr. Weisman's opinion. *See generally* Dkt. No. 77-21.

Defendants' suggestion that Plaintiff's mental health during the interrogation was not at issue because he did not share any hallucinations with the Detectives proves too much. Dkt. No. 77-56 at 20 ("[A]t no point during the interview did Plaintiff indicate that he was hearing voices.... Similarly, at no point during the interview did Plaintiff indicate that he could see things that the Defendant Detectives could not see."). Plaintiff's medical diagnoses at the time included schizophrenia, depression, and alcoholism. Dkt. No. 77-42 at 2-3; Dkt. No. 77-55 at ¶ 454. During the interrogation, Plaintiff explained that he was not currently working because he had a dual diagnosis and that his primary care doctor, psychiatrist, and counselor were at the same local healthcare provider. Dkt. No. 77-22 at 102:16-103:16. As for Defendants' argument that Plaintiff was determined not to be incapacitated more than a year after the interrogation, that does little to establish the voluntariness of Plaintiff's waiver on May 6, 2019. Dkt. No. 77-55 at ¶¶ 390-98.

***23** Given this record, a reasonable juror could determine that Plaintiff's *Miranda* waiver was not voluntary.

Even if Defendants had established that Plaintiff's waiver was voluntary, they have not demonstrated that it was also knowing. *LaPorte*, 779 F. App'x at 65. Defendants do not appear to make any express arguments on this second requirement for waiver. *See, e.g.,* Dkt. No. 77-56 at 18 ("[A]s discussed below, Plaintiff voluntarily waived his rights and was not coerced into a confession."); *id.* at 25 ("[F]or the reasons stated above, Plaintiff voluntarily waived his *Miranda* rights and his confession was freely given."). In any event, Dr. Weisman's opinions also include his assessment that—when sober—Plaintiff's "basic understanding of *Miranda*" ranks in the eighteenth percentile of pretrial defendants and that Plaintiff "has deficits in his *Miranda* understanding, particularly regarding legally acceptable deceptive police practices as well as other specific aspects of remaining silent versus talking to the police." Dkt. No. 77-52 at 7, 8-9. Because "knowing" for purposes of *Miranda* means "made *with a full awareness of both the nature of the right being abandoned* and the consequences of the decision to abandon it," a reasonable juror could find that Plaintiff's waiver was not knowing. *United States v. O'Brien*, 926 F.3d 57, 73 (2d Cir. 2019) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 382-83, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010)).

A reasonable juror could also find Plaintiff's subsequent confession, after extensive interrogation by the Detectives, involuntary for similar reasons. *See, e.g., Taylor*, 745 F.3d at 24 ("An individual's mental state should be considered in the voluntariness inquiry to the extent it allowed law enforcement to coerce the individual.... It is clear, however, that when 'a person is unconscious or drugged or otherwise lacks capacity for conscious choice,' a confession cannot be voluntary.") (first citing *Colorado v. Connelly*, 479 U.S. 157, 164-65, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); then citing *United States v. Salameh*, 152 F.3d 88, 117 (2d Cir. 1998) (*per curiam*); and then quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 224, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Again, Defendants' expert has repeatedly opined that, during the interrogation, "Mr. Adams being under the combination of duress, fatigue, limitations of his legal knowledge, and some level of alcohol intoxication, became emotionally and cognitively distressed, resigned, and compelled to offer the narrative of the crime

being demanded of him." Dkt. No. 77-52 at 11-13. The Court also notes that, prior to Plaintiff's confession, the Detectives removed Plaintiff's phone from his person and then from the room. Dkt. No. 77-22 at 27:6-20, 60:24-61:3. During the subsequent break, and prior to Plaintiff's confession, Plaintiff is visible in the video talking to himself and trying to open the locked door keeping him in the interrogation room. Dkt. No. 77-21b at 14:00-17:00; *cf. Poventud v. City of New York*, 750 F.3d 121, 145 & n.6 (2d Cir. 2014) (Lynch. J., concurring) ("[W]e know that false confessions have been obtained by pressures much less imposing than those to which [plaintiff] was subjected.") (collecting authorities).

***24** Because a reasonable juror could determine that Plaintiff's confession was involuntary, based in part on his intoxication, capacity, and the length and nature of his detention and interrogation, the Court finds Defendants' argument that the Detectives permissibly used "falsehoods" during the interrogation to be somewhat beside the point. Dkt. No. 90 at 7 (citing *Frazier v. Cupp*, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) ("The fact that the police misrepresented statements that [a witness] had made is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible.")); *see also United States v. Caraballo*, 282 F. App'x 910, 914 (2d Cir. 2008) ("We have held that '[w]hether a confession is a product of coercion may only be determined after a careful evaluation of the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of the interrogation, and the conduct of law enforcement officials.' ") (alteration in original) (quoting *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991)).

For all of these reasons,[18] the Motion is denied as to Plaintiff's federal and state claims for false arrest following his handcuffing at approximately 7:34 p.m. on May 6, 2019.

18 Defendants' argument that no Individual Defendants was personally involved in all of the events resulting in Plaintiff's arrest and monthslong detention is unpersuasive. Dkt. No. 77-56 at 13, 21 n.6. As detailed above, Plaintiff has sufficiently established the personal involvement of every Individual Defendant in the events giving rise to his false arrest claims. *See, e.g., Legree v. City of Waterbury*, No. 22-cv-00659, 2024 WL 3964944, at *7 (D. Conn. Aug. 28, 2024) ("However, 'personal involvement' in an arrest is not limited to officers who were physically involved in taking someone into custody. Courts in this Circuit have upheld false arrest liability for non-arresting officers.") (collecting cases).

**B. Malicious Prosecution under Section 1983**

"To prevail on a malicious prosecution claim under New York law, a plaintiff must show '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding[,] and (4) actual malice.' " *Alexander*, 132 F.4th at 158 (alteration in original) (quoting *Kee*, 12 F.4th at 161-62). Section 1983 requires these same four elements, "but it also imposes an additional one: '(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.' " *Id.* (first quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); and then citing *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562, 144 S.Ct. 1745, 219 L.Ed.2d 262 (2024)).

Defendants challenge only the probable cause element of Plaintiff's Section 1983 claim for malicious prosecution. Defendants argue that this claim fails because (i) "the probable cause supporting Plaintiff's arrest was overwhelming;" (ii) "[t]hat probable cause only increased in the day following Plaintiff's arrest;" and (iii) the DA's Office sought and obtained Plaintiff's indictment. Dkt. No. 77-56 at 21-24.

Defendants' first argument is unpersuasive for the reasons detailed previously. *See supra* Section IV.A. Given the current record, a reasonable juror could find that Defendants did not have probable cause to either arrest or prosecute Plaintiff based on the events that transpired between approximately 7:30 p.m. on May 6, 2019, and 1:00 a.m. on May 7, 2019. *See, e.g., Walsh v. City of New York*, 742 F. App'x 557, 562 (2d Cir. 2018) (" 'Probable cause, in the context of a malicious prosecution, has ... been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty.' ... Because a reasonable juror could believe that probable cause did not exist for [plaintiff]'s arrest, as noted above, we conclude that it follows that a reasonable juror could also believe that probable cause did not exist for [plaintiff]'s prosecution.") (first alteration in original) (citing *Stansbury*, 721 F.3d at 95). Summary judgment is thus not appropriate on this ground.

***25** Defendants' second argument relies on disputed facts that are also not appropriately resolved at summary judgment.

Defendants contend that, later on May 7, 2019, Detective Brimmer received additional information from Ms. Bailey and Ms. Goldych. Dkt. No. 77-56 at 22-23. But, as detailed earlier, the parties dispute what Ms. Bailey actually said to Detective Brimmer. *See supra* Section II.B.4.a. Moreover, Ms. Bailey's sworn statement suggests that she provided significant exculpatory information to Detective Brimmer. *See, e.g.,* Dkt. No. 85-10 at ¶¶ 7-8, 10; *Napolitano*, 29 F.4th at 107 ("[W]e have also consistently held, as relevant here, that 'an officer may not disregard plainly exculpatory evidence.' ") (quoting *Panetta*, 460 F.3d at 395). Because there is a genuine dispute of material fact as to what information Ms. Bailey provided Detective Brimmer—including whether it was exculpatory—such information is not an appropriate basis on which to find the existence of probable cause as a matter of law. Nor is the information that Ms. Goldych apparently provided Detective Brimmer on May 7, 2019, during his third attempt to speak with her. Dkt. No. 77-19 at 2-3. Given Ms. Goldych's intoxication, memory, and the absence of a written statement from her, the information attributed to her does not establish probable cause entitling Defendants to judgment as a matter of law. *See supra* n.7.

Defendants' third argument rests on the presumption of probable cause created by a grand jury indictment. *See, e.g., Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 103 (N.D.N.Y. 2023) ("[I]ndictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.") (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). The parties agree that such a presumption applies in this case, but dispute whether the factual record rebuts it. Dkt. No. 77-56 at 23; Dkt. No. 85 at 28-29.

A reasonable juror could conclude that the current factual record rebuts such a presumption. Not only was the prosecution against Plaintiff dismissed, senior prosecutors in the DA's Office have indicated that the basis for the prosecution was deeply flawed. Dkt. No. 85-7 at 1; Dkt. No. 85-11 at 9. A reasonable juror could find, for example, that Plaintiff's prosecution was initiated by (i) the arrest report charging Plaintiff that Detective Brimmer prepared; (ii) the allegedly false confession obtained by Detectives Brimmer and Beauchine, *see, e.g., Ekukpe v. Santiago*, 823 F. App'x 25, 32 (2d Cir. 2020) ("A jury 'may permissibly find that a defendant initiated a prosecution where he filed the charges or prepared an alleged false confession and forwarded it to prosecutors.' ") (quoting *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010)); *Dufort*, 874 F.3d at 353 ("The 'initiation' requirement is met when the plaintiff can establish that police officers forwarded statements to a prosecutor without sharing that the statements were suspect.") (citing *Manganiello*, 612 F.3d at 163); and/or (iii) the purportedly false statements in the police reports prepared by Detective Brimmer, Officer Cecile, Officer Tolone, and Officer Russell,[19] *see, e.g., Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("[G]enerally in malicious prosecution actions alleging that a police officer provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior.") (collecting cases); *Werkheiser*, 655 F. Supp. 3d at 103 ("A defendant could have initiated a prosecution 'by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor.' ") (first quoting *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 605 (E.D.N.Y. 2017); additional citations omitted).

19 Each report was affirmed under penalty of perjury. *See, e.g.,* Dkt. No. 77-19 at 2-3; Dkt. No. 77-6 at 5; Dkt. No. 77-8 at 2; Dkt. No. 77-7 at 2.

Moreover, Plaintiff is correct that a "jury examining Detective Brimmer's police report alongside Ms. Bailey's statements could conclude that Det. Brimmer fabricated what [Ms.] Bailey told him to support, rather than contradict, Mr. Adams' false confession." Dkt. No. 85 at 27; *see also Manganiello*, 612 F.3d at 162 ("Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.") (quoting *Ricciuti*, 124 F.3d at 130); N.Y. Crim. Proc. Law § 60.50 ("A person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed."); N.Y. Crim. Proc. Law § 70.10(1) ("[E]vidence is not legally sufficient when corroboration required by law is absent.").

***26** The Court also agrees with Plaintiff that a reasonable juror could conclude that the police reports from the Responding Officers contained "false or misleading information that wrongfully inculpated Mr. Adams and failed to include key exculpatory information." Dkt. No. 85 at 28; *see also Manganiello*, 612 F.3d at 162 ("Where there is some indication in the police records that, as to a fact crucial to

the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable cause created by the indictment may be overcome.") (quoting *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003)); *Werkheiser*, 655 F. Supp. 3d at 104 ("Alternatively, the presumption 'can be overcome by a showing by claimant that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures.' ") (quoting *Hill v. Melvin*, No. 05-cv-6645, 2006 WL 1749520, at *13 (S.D.N.Y. June 27, 2006)).

For instance, Officer Cecile's report states that Ms. "Bailey stated that the suspect was an old black man." Dkt. No. 77-6 at 5. But this assertion is contrary to the actual description of the suspect contained in the 911 call notes, Dkt. No. 90-1 at ¶ 18 (indicating that Ms. Bailey stated the suspect was only 25 to 35 years old) and the similar description Ms. Bailey appears to have provided to Officer Cecile during their subsequent phone conversation, Dkt. No. 77-15 at 16:43 (Officer Cecile clarifying "the guy who got knocked out was, like, in his mid to late 20s, and it was, like, an older guy, like 35 to 40, that hit him?"). Officer Cecile also noted in his report that the suspect had been described as wearing "a green sweat suit," while Plaintiff was wearing "a grayish/teal puffy jacket and green pants[.]" Dkt. No. 77-6 at 5. As detailed earlier, while there is presently a factual dispute as to whether Plaintiff's pants were green, Defendants do not contend that Plaintiff's jacket was green. *See supra* Section IV.A.2 (Defendants arguing that Plaintiff's "hat, shirt and pants all appeared to be different shades of green") (quoting Dkt. No. 77-56 at 14); *see also* Dkt. No. 77-10 at 3 (report from non-party officer stating that Plaintiff had a "Black winter coat"). Similarly, Officer Tolone's report states that the suspect was wearing "a green jump suit," while Plaintiff "was wearing green pants and a grey / green vest." Dkt. No. 77-8 at 2. As also detailed earlier, Defendants do not contend that Plaintiff was wearing a vest at all. *See supra* Section IV.A.2; *see also* Dkt. No. 77-10 (report from non-party officer listing Plaintiff's items of clothing, none of which are a vest). Given all this, a reasonable juror could find that Officers Cecile and Tolone fabricated portions of their reports to align their descriptions of Plaintiff with that of the suspect.

Additionally, Officers Cecile and Russell omitted any mention of the exculpatory facts that Ms. Bailey,[20] Ms. Goldych, and Plaintiff all indicated that a third man had assaulted Mr. Jones and left the scene. Dkt. Nos. 77-6, 77-7; *see also* *Werkheiser*, 655 F. Supp. 3d at 103; *Napolitano*, 29 F.4th at 107. For his part, Officer Tolone's report states only that "when we initially arrived on scene Adams stated there was another male that started a fight with Jones." Dkt. No. 77-8 at 2.

20 Defendants contend that Officer Russell was "unaware of the fact" that Ms. Bailey was still on the scene when Officer Russell arrived. Dkt. No. 77-56 at 14. This assertion is contradicted by Officer Russell's BWC footage. *See* Dkt. No. 77-16 at 0:01 (Officer Russell responding to Ms. Bailey's statement that "he got into a fight with somebody, the other dude ran off, but he got knocked out" with "the other dude knocked out?"); *id.* at 11:27 (Officer Russell stating "I wish we would have got those people that were ..." and gesturing towards the sidewalk in the direction Ms. Bailey and her siblings had walked); *id.* at 17:21 (Officer Russell stating "did anyone contact those people back," presumably again in reference to Ms. Bailey and her siblings).

***27** With respect to each Individual Defendant, then, a reasonable juror could find that the indictment "was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith,' " or "that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures," *Werkheiser*, 655 F. Supp. 3d at 104 (first quoting *Savino*, 331 F.3d at 72; and then quoting *Hill*, 2006 WL 1749520, at *13). Given the current factual record, a reasonable juror could find that the presumption of probable cause is rebutted. *Hicks v. Marchman*, 719 F. App'x 61, 65 (2d Cir. 2018) ("[T]he presumption can be rebutted by showing 'that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith[.]' ") (second alteration in original) (quoting *Colon*, 468 N.Y.S.2d 453, 455 N.E.2d at 1250-51). Accordingly, the Court denies the Motion as to Plaintiff's Section 1983 claim for malicious prosecution against the Individual Defendants.[21]

21 To the extent that the Complaint states a distinct claim for malicious prosecution against Defendant City individually, or pursuant to New York law,


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

any such clam is dismissed as abandoned. *Compare* Dkt. No. 77-56 at 22 & n.7, 24, *with* Dkt. No. 85 at 23-30; *see also Jackson*, 766 F.3d at 195. Plaintiff's separate *Monell* claim against Defendant City is addressed further below. *See infra* Section IV.D.

**C. Fabricated Evidence under Section 1983**

In order to prevail on "a Section 1983 fabrication of evidence claim, a plaintiff must demonstrate that '(1) [an] investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Ortiz v. Stambach*, 137 F.4th 48, 67 (2d Cir. 2025) (alterations in original) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

Defendants first argue that Plaintiff's fabricated evidence claim is limited to his allegedly false confession and should thus be dismissed against the Responding Officers, "who were not present for Plaintiff's interview and were not involved in his confession." Dkt. No. 77-56 at 25, Dkt. No. 90 at 8. The Court agrees with Plaintiff that this claim is not so limited, and that "there are disputed issues of fact from which a reasonable juror could find that" each of the Responding Officers "fabricated inculpatory evidence [or] suppressed exculpatory evidence to implicate [Plaintiff] wrongly." Dkt. No. 85 at 30; *see also supra* Section IV.B.

As to the confession, Defendants' renewed argument that Plaintiff voluntarily waived his *Miranda* rights and voluntarily confessed remains unpersuasive for the reasons previously set forth. Dkt. No. 77-56 at 25; *see also supra* Section IV.A.3.b.

Defendants' final argument that the Detectives did not know Plaintiff's confession was false is similarly insufficient to grant summary judgment on this claim. Dkt. No. 77-56 at 25-26. A reasonable juror could view the videotaped interrogation of Plaintiff and conclude that the Detectives knew Plaintiff's eventual confession was false because, for example, Plaintiff was visibly intoxicated; Plaintiff denied assaulting Mr. Jones nearly 200 times, Dkt. No. 85-2 at ¶ 570; Plaintiff "became emotionally and cognitively distressed, resigned, and compelled to offer the narrative of the crime being demanded of him," as Defendants' expert opined after viewing the videotaped interrogation, Dkt. No. 77-52 at 11-13; or, as Detective Brimmer noted in his police report, because Plaintiff "provided several different versions about what occurred," Dkt. No. 77-19 at 2, some of which were implausible, *see, e.g.,* Dkt. No. 77-22 at 86:22-87:22 (Plaintiff stating that he was able to hit Mr. Jones in the head three of four times with a stick before Mr. Jones fell down); *id.* at 100:8-21 (Plaintiff stating that Mr. Jones punched him twice over the course of the day, both times on the "same place" on his lip and Detective Brimmer responding "[y]eah, he knows where to get you, man. He's got aim on that thing, huh"). *See also Ortiz*, 137 F.4th at 62, 67-68 ("[T]he law does not require a plaintiff to prove that police officers fabricated evidence or engaged in bad faith through any particular type of evidence and, thus, a plaintiff may do so entirely through circumstantial evidence.... 'The jury, of course, was not required to believe [the defendant's] testimony denying knowledge. Issues relating to state of mind, such as knowledge and intent, may be influenced by assessments of credibility and often must be established by circumstantial evidence.' ") (last alteration in original) (quoting *United States v. Ocampo-Guarin*, 968 F.2d 1406, 1410 (1st Cir. 1992)). Moreover, if a jury were to believe Ms. Bailey that Detective Brimmer fabricated various statements he attributed to her in his police report, they could also conclude that he did so knowingly.

***28** Accordingly, the Court denies the Motion as to Plaintiff's Section 1983 claim for fabricated evidence against the Individual Defendants.[22]

22 To the extent that the Complaint states a distinct claim for fabricated evidence against Defendant City individually, any such clam is dismissed as abandoned. *Compare* Dkt. No. 77-56 at 26, *with* Dkt. No. 85 at 30; *see also Jackson*, 766 F.3d at 195. Plaintiff's separate *Monell* claim against Defendant City is addressed next. *See infra* Section IV.D.

**D. *Monell* Claim**

Section 1983 "does not impose vicarious liability on a municipality for the actions of its employees." *Alexander*, 132 F.4th at 160 (citing *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023)). Instead, "[t]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (second alteration in original) (first quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); and then citing *Monell v. Dep't. of Soc. Servs. of the City of New York*, 436 U.S. 658,

690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). As to the first element, a plaintiff can establish the existence of an official policy or custom in four ways:

> (1) a formal policy endorsed by the municipality, ...; (2) actions directed by the government's “authorized decisionmakers” or “those who establish governmental policy,” ...; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware, ...; or (4) a “constitutional violation[ ] resulting from [policymakers’] failure to train municipal employees[.]”

*Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019) (final alteration added) (first citing *Turpin v. Mailet*, 619 F.2d 196, 199 (2d Cir. 1980); then quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); then citing *Turpin*, 619 F.2d at 199; and then quoting *City of Canton v. Harris*, 489 U.S. 378, 380, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

Defendants first argue that Plaintiff's *Monell* claim should be dismissed because there is no underlying constitutional violation. Dkt. No. 77-56 at 26. Given that Plaintiff's constitutional claims survive summary judgment, this argument is unavailing. *See supra* Section IV.A-C.

Defendants next argue that the purportedly similar arrests referenced in one paragraph of the Complaint do not establish a *Monell* claim. Dkt. No. 77-56 at 27-28. Those alleged instances appear to relate to excessive force and racial profiling claims against non-party officers in the Syracuse Police Department over a span of some years. Dkt. No. 1 at ¶ 61. In part because Plaintiff has not brought an excessive force claim, the Court agrees with Defendants that these alleged instances are insufficiently similar to the constitutional deprivations Plaintiff allegedly suffered. *See Campo v. City of New York*, No. 19-cv-04364, 2022 WL 970730, at *12 (E.D.N.Y. Mar. 31, 2022) (“A plaintiff may also plead the existence of *de facto* customs or policies ‘by citing to complaints in other cases that contain similar allegations.’ ”) (quoting *Gaston v. Ruiz*, No. 17-cv-1252, 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018)). As Defendants correctly point out in reply, Plaintiff also has not opposed the Motion on this narrow issue. Dkt. No. 90 at 8-9; *see also Jackson*, 766 F.3d at 195. Accordingly, any *Monell* claim based on these dissimilar cases or racial profiling is dismissed.

***29** For whatever reason, Defendants do not squarely address the core of Plaintiff's *Monell* claim. *Compare* Dkt. Nos. 77-56, 90, *with* Dkt. No. 1 at ¶¶ 52-60 (alleging, *inter alia*, that Defendant City “has a policy, custom, practice and pattern of conduct in place that enables its agents and employee[ ] police officers to act with deliberate indifference to the constitutional rights of individuals[,]” including “inadequate guidelines for conducting interrogations, obtaining false confessions and corroborating false confessions with eye witness accounts”). Plaintiff's opposition to the Motion argues that Defendant City was deliberately indifferent to his constitutional rights by failing “to supervise and/or train its officers to undertake constitutionally lawful detentions, interrogations, and practices to forego the fabrication of evidence.” Dkt. No. 85 at 31-33 (citing Dkt. No. 1 ¶¶ 53, 54, 58).

“A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.” *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion)). The Second Circuit has set forth the following requirements before a municipality's failure to train or supervise constitutes deliberate indifference:

> “First, the plaintiff must show that a policymaker knows ‘to a moral certainty’ that her employees will confront a given situation.” ... “Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation.” ... “Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.” ... “In addition, at the summary judgment stage, plaintiffs must ‘identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.’ ”

*Jenkins*, 478 F.3d at 94 (first quoting *Walker v. City of New York*, 974 F.2d 293, 297, 298 (2d Cir. 1992); and then quoting *Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006)).

Regardless of whether Plaintiff has satisfied the first three of these requirements, his assertions with respect to the Responding Officers' training lack the necessary factual detail and are too conclusory. Dkt. No. 85 at 31. He fails to identify any "specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury[,]" *Green*, 465 F.3d at 81. Accordingly, any *Monell* claim based on the training of the Responding Officers is dismissed. For similar reasons, any *Monell* claim based on training related to fabricated evidence generally is also dismissed.

Plaintiff's arguments as to the training the Detectives received warrant a different outcome however. Plaintiff contends that the Detectives received inadequate "training on how to avoid false confessions" and "improperly interrogated" Plaintiff, leading to his allegedly false confession. Dkt. No. 85 at 33. Unlike with the Responding Officers and fabricated evidence more generally, Plaintiff also sets forth various facts regarding the Detectives' interrogation training, facts which Defendants largely do not deny. Dkt. No. 90-1 at ¶¶ 523-28, 531-33, 587-88.

Additionally, the Report that Plaintiff includes in his opposition to the Motion states that a deputy police chief at the Syracuse Police Department "was able to explain there is case law which supports interviewing a person who is intoxicated. The only limitation to this is if the person being interviewed is intoxicated to the point of being in a manic state." Dkt. No. 85-11 at 9. The Report further states that "it is a matter of training that detectives are trained on the fact that interviewing an intoxicated person is lawful, unless in this manic state." *Id.* The Report indicates that neither Detective thought Plaintiff was "excessively intoxicated" during the interview on May 6, 2019. *Id.* at 11, 12. Seemingly because of such training, the Report determined that "[t]herefore, the actions by [the D]etectives during that interview were lawful and proper." *Id.* 9.

***30** The Report went on to conclude that Plaintiff's "claim that he was arrested and charge[d] for a crime he did not commit is true[,]" and that while Plaintiff was charged "due to his own admission[,]" "[t]he interview conducted by Det. Beauchine and then Det. Brimmer was lawful and proper. There was no violation of any rules and regulations by Det. Beauchine or Det. Sgt. Brimmer, or any officer." *Id.* at 12.[23] Following that conclusion are signatures for the chief of police, the first deputy chief, a bureau chief, a supervisor, and the investigating sergeant. *Id.* at 13. *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights."); *Donovan v. Norwich City Sch. Dist.*, No. 19-cv-1638, 2022 WL 623904, at *11 (N.D.N.Y. Mar. 3, 2022) ("An official's title, though not dispositive of his authority to make policy, is relevant for the interferences fairly to be drawn therefrom.") (quoting *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983)).

23 This portion of the Report makes clear that Detective Brimmer was subsequently promoted to Detective Sergeant, a position in which he supervises other detectives. *See also* Dkt. No. 77-49 at 12:20-13:1.

Drawing all reasonable inferences in Plaintiff's favor for purposes of summary judgment, a reasonable juror could find the requirements for deliberate indifference satisfied with respect to the Detectives' training for interrogating intoxicated individuals. First, the apparent existence of this very training reflects "a moral certainty" that detectives will need to interview such individuals. *Jenkins*, 478 F.3d at 94 (citation omitted). Second, Detective Brimmer's own testimony suggests that interviewing intoxicated individuals presents a "difficult choice." *Id.* (citation omitted); Dkt. No. 77-49 at 25:16-24 (Detective Brimmer testifying with respect to intoxication and mental capacity during custodial interviews that "I can't think of any exact incident where that has occurred but I do understand how, you know, severe intoxication or, you know, severe mental health where someone's having a schizophrenic outbreak, or something to that effect, is certainly going to affect what they're telling us. *And it would be a judgment call and we likely would not interview that person if they're under extreme intoxication or having an emotional and/or mental health crisis*.") (emphasis added). Third, Defendants' own expert indicates that the "wrong choice" can result in a false confession, and thus a deprivation of constitutional rights. *Jenkins*, 478 F.3d at 94 (citation omitted); Dkt. No. 77-52 at 11-13; *see also* Dkt. No. 85-7 at 1 ("The district attorney said the case shows police and prosecutors need better training in identifying the dynamics of false confessions. 'While it seems counterintuitive that someone would confess to something they did not do, it happens,' [DA] Fitzpatrick said. 'And in this case, I hope all involved analyze the root causes of why this happened. [']"). Finally, the Report identifies a "specific deficiency in the city's training program," *Jenkins*, 478 F.3d at 94

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

(citation omitted), in that the only limitation on interrogating intoxicated individuals appears to be when they are "in a manic state,"[24] Dkt. No. 85-11 at 9.

24 It is unclear from the current record how this limitation operates in practice, given that alcohol is a depressant while "[m]ania is a condition in which you have a period of abnormally elevated, extreme changes in your mood or emotions, energy level or activity level. This highly energized level of physical and mental activity and behavior must be a change from your usual self and be noticeable by others." *Mania*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/21603-mania (last visited September 29, 2025). Neither the Report nor the Motion identify the referenced caselaw. *See generally* Dkt. Nos. 77, 85-11, 90.

***31** At bottom, Plaintiff contends that the Detectives' training caused them to violate his constitutional rights, by interrogating him while he was intoxicated and coercing him into providing a false confession. Plaintiff may well ultimately fail to prove such a claim. *See, e.g., Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) ("[D]eliberate indifference is a stringent standard of fault.") (alteration in original) (quoting *Connick*, 563 U.S. at 61, 131 S.Ct. 1350). But he has done enough to survive summary judgment—particularly in the absence of more specific argument from Defendants regarding deliberate indifference. According, the Motion is denied as to Plaintiff's *Monell* claim based on the Detectives' interrogation training.

### E. Negligent Supervision and Retention under New York law

In general, "[t]o state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show[, *inter alia*,] (1) that the tort-feasor and the defendant were in an employee-employer relationship ...; [and] (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence[.]" *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (first citing *D'Amico v. Christie*, 71 N.Y.2d 76, 524 N.Y.S.2d 1, 518 N.E.2d 896, 901-02 (1987); and then quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 654 N.Y.S.2d 791, 793 (N.Y. App. Div. 1997)). Additionally, "[w]hen a negligence claim is asserted against a municipality or its employees, the threshold inquiry is 'whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose.' " *Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013) (quoting *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 972 N.Y.S.2d 169, 995 N.E.2d 131, 134 (2013)). "Providing police protection has long been recognized as a quintessential governmental function" and when "a municipality undoubtedly acts in a governmental capacity, a plaintiff may not recover without proving that the municipality owed a 'special duty' to the injured party." *Id.*, 972 N.Y.S.2d 169, 995 N.E.2d at 135 (citing *Valdez v. City of New York*, 18 N.Y.3d 69, 936 N.Y.S.2d 587, 592, 960 N.E.2d 356 (2011)).

Defendants argue, *inter alia*, that this negligence claim should be dismissed (i) against the Individual Defendants because they were all employees and cannot be held liable as an employer; and (ii) against Defendant City because its employees were acting in the scope of their employment as police officers. Dkt. No. 77-56 at 28-30. Plaintiff provides no persuasive response. Dkt. No. 85 at 33-34. The Court also notes that Plaintiff offers no evidence regarding any of the Individual Defendants' "propensity for the conduct which caused the injury," *Ehrens*, 385 F.3d at 235 (citation omitted), nor any evidence that Defendant City owed him "a special relationship beyond the duty that is owed to the public generally," *Velez*, 730 F.3d at 135. Accordingly, the Court grants the Motion as to Plaintiff's tenth claim.

### F. Qualified Immunity for the Individual Defendants

Defendants argue that (i) the Individual Defendants are entitled to qualified immunity on Plaintiff's false arrest and malicious prosecution claims because of the collective knowledge doctrine and because of "plausible instructions from a superior officer;" (ii) the Individuals Defendants are entitled to qualified immunity on Plaintiff's pre-interrogation detention because the multi-hour detention was "objectively reasonable;" (iii) the Individual Defendants are entitled to qualified immunity because they had arguable probable cause to arrest Plaintiff; and (iv) the Detectives are entitled to qualified immunity with respect to Plaintiff's confession because "there is no evidence that Plaintiff was not of sound mind or so intoxicated as to render his confession involuntary[.]" Dkt. No. 77-56 at 30-38. Defendants do not appear to contend that they are entitled to qualified immunity as to the balance of Plaintiff's fabricated evidence claim. *See id.*

***32** "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78-79, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017) (*per curiam*) (citation modified). The application of qualified immunity requires the Court to undertake a two-pronged inquiry: whether "(1) ... the official violated a statutory or constitutional right, and (2) ... the right was 'clearly established' at the time of the challenged conduct." *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (alterations in original) (quoting *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016)). Under the "clearly established" prong, the law does not require "a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)); *see, e.g., Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) ("The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right."); *Ricciuti*, 124 F.3d at 128, ("The right to be free from arrest or prosecution in the absence of probable cause is a long established constitutional right."); *Weaver v. Brenner*, 40 F.3d 527, 533-34 (2d Cir. 1994) ("It is clear that [in 1989] ... a criminal suspect could not lawfully be compelled to be a witness against himself.... It was also clearly established in 1989 that police could not lawfully coerce incriminating statements from an in-custody criminal suspect."); *Zahrey v. Coffey*, 221 F.3d 342, 345 (2d Cir. 2000) ("We hold that there is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity .... [and] that this right was clearly established in 1996[.]"); *Morse v. Fusto*, 804 F.3d 538, 541 (2d Cir. 2015) ("[T]he actions of the defendants upon which [plaintiff] bases his claims were the knowing creation of false or misleading evidence by a government officer acting in an investigative capacity. We have held that such activity by a government official qualifies as an unconstitutional deprivation of the victim's rights. This right was, moreover, clearly established at the time of the defendants' conduct."); *Horn v. Adger*, Nos. 24-1034, 24-1038, 2025 WL 1618761, at *3 (2d Cir. June 9, 2025) (summary order) ("On appeal, the Detectives do not contest our clearly established caselaw holding that police officers are liable under § 1983 for 'creat[ing] false information likely to influence a jury's decision and forward[ing] that information to prosecutors.' ") (alterations in original) (citation omitted). "Courts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) (citation omitted).

At this stage, the Court need only address the "constitutional violation" prong. As detailed above, whether any Defendant violated Plaintiff's constitutional rights depends on numerous disputed issues of material fact. The parties dispute, for example, when Plaintiff's detention ripened into an arrest, *see supra* Section IV.A.1; whether the Individual Defendants had probable cause to arrest Plaintiff prior to his interrogation, *see supra* Section IV.A.2-3.a; the extent of Plaintiff's intoxication during the interrogation, as well as the voluntariness and veracity of his statements, *see supra* Section IV.A.3.b; and whether the Individual Defendants improperly initiated Plaintiff's prosecution, *see supra* Section IV.B. Such factual disputes preclude a finding of qualified immunity at this stage. *See, e.g., Dufort*, 874 F.3d at 343 ("We conclude that the district court's grant of summary judgment as to [plaintiff]'s false arrest and malicious prosecution claims was premature, because disputed questions of material fact remain regarding key aspects of the criminal investigation and subsequent prosecution. We further conclude that those same questions of material fact preclude a grant of qualified immunity at the summary judgment stage.").

The Court reaches the same conclusion with respect to Defendants' arguments regarding reliance on "plausible instructions" from a superior officer and arguable probable cause. As to the former, the limited record evidence cited by Defendants is insufficient to establish, as a matter of law, that such instructions were given. Dkt. No. 77-55 at 34-35. In any event, as the authority on which Defendants rely makes clear, *id.* at 35, even if such instructions were given, that does not end the inquiry. *See Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) ("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists (*e.g.*[,] a warrant, probable cause, exigent circumstances).") (first quoting *Bilida v. McCleod*, 211 F.3d 166, 174-75 (1st Cir. 2000); additional citations omitted). And the disputed factual record precludes reaching a determination with respect to this inquiry.

As to arguable probable cause, the current factual record also precludes summary judgment. *See, e.g., Napolitano*, 29 F.4th at 105 ("A police officer has arguable probable cause 'if either (a) it was objectively reasonable for the officer to believe

that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.' ") (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016)); *Jenkins*, 478 F.3d at 88 ("[U]nder both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable.... If, however, on the undisputed facts the officer would be unreasonable in concluding that probable cause existed, or if the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims.") (first citing *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001); and then citing *Dillard v. City of Syracuse*, 51 A.D.2d 432, 381 N.Y.S.2d 913, 915 (N.Y. App. Div. 1976)).

***33** In sum, the disputed factual record precludes summary judgment based on qualified immunity. *See, e.g., Eaton v. Estabrook*, 144 F.4th 80, 89 (2d Cir. 2025) ("In the qualified immunity context, '[p]re-trial resolution of the defense [of qualified immunity] ... may be thwarted by a factual dispute.' ... 'Any disputed questions of material fact —such as the acts of the defendant and their effects on the plaintiff—are to be determined by the factfinder.' ") (final alteration added) (first quoting *Warren v. Dwyer*, 906 F.2d 70, 74 (2d Cir. 1990); and then quoting *Walker v. Schult*, 45 F.4th 598, 617 (2d Cir. 2022)). Given the current factual record, Defendants have not carried their burden to demonstrate that no rational juror could conclude that they violated Plaintiff's constitutional rights. *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) ("Thus, a decision dismissing a claim based on qualified immunity at the summary judgment stage may only be granted when a court finds that an official has met his or her burden demonstrating that no rational jury could conclude '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.' ") (quoting *al-Kidd*, 563 U.S. at 735, 131 S.Ct. 2074).[25]

25 Because factual disputes preclude summary judgment on the first prong of the qualified immunity inquiry, the Court makes no determination as to the second prong, as noted earlier. *Id.* at 219-220; *see also Linton v. Zorn*, 135 F.4th 19, 32 (2d Cir. 2025) ("But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.") (quoting *Tolan*, 572 U.S. at 656, 134 S.Ct. 1861). For similar reasons, the Court also does not address the parties' competing expert reports. Dkt. Nos. 77-53, 77-54, 85-14.

### G. John Does 1-100

Defendants also argue that because Plaintiff has not amended his Complaint, the Doe Defendants should be dismissed without prejudice. Dkt. No. 77-56 at 30. Plaintiff responds with a single sentence "reassert[ing] his request to amend the complaint to include additional defendants" and no authority in support of such a request. Dkt. No. 85 at 34.

Almost two years ago, Magistrate Judge Katz considered and denied Plaintiff's request to amend the Complaint to include two additional defendants. Dkt. No. 64. Since that time, Plaintiff has not sought a review of that decision and has not undertaken any further efforts to amend the Complaint. Plaintiff now offers no authority and no new arguments in support of his cursory request. Plaintiff's renewed request is denied for the reasons set forth by Magistrate Judge Katz, Dkt. No. 64, and all claims against the Doe Defendants are dismissed, *see, e.g., Kaczmarek v. City of Schenectady*, No. 10-cv-1193, 2013 WL 5506276, at *2 (N.D.N.Y. Oct. 4, 2013) ("Because plaintiffs have failed to timely identify and serve the John Doe defendants, plaintiffs' claims against both John Doe defendants are dismissed.").

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, Dkt. No. 77, is **GRANTED in part and DENIED in part**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### All Citations

Slip Copy, 2025 WL 2772081

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 5603578
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Robert M. VANCE, Plaintiff-Appellant,
v.
ACCO BRANDS, Headquarters & Corporate Office, Manufacturing/Office Supply, MeadWestVaco Corporation, Defendants-Appellees.

18-1258
|
October 3, 2018

N.D. New York, 17-cv-957, Suddaby, C.J., Dancks, M.J.

**Attorneys and Law Firms**

Robert M. Vance, Oneonta, NY, pro se.

Albert John Millus, Jr., Esq., Hinman, Howard & Kattell, LLP, Binghamton, NY, for Defendants-Appellees.

MeadWestVaco Corporation, Sidney, NY.

Present: José A. Cabranes, Robert D. Sack, Barrington D. Parker, Circuit Judges.

**Opinion**

***1** Appellees move for summary affirmance. Upon due consideration, it is hereby ORDERED that the motion is GRANTED. *See United States v. Bonilla*, 618 F.3d 102, 107–08 (2d Cir. 2010).

**All Citations**

Not Reported in Fed. Rptr., 2018 WL 5603578

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.